**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| STAGE STORES, INC., *et al.*,[1] | ) | Case No. 20-32564 (DRJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket Nos. 24, 78** |

**RESPONSE OF GALLERIA 2425 OWNER, LLC TO DEBTORS' EMERGENCY MOTION SEEKING ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING USE OF CASH COLLATERAL AND AFFORDING ADEQUATE PROTECTION, (II) MODIFYING THE AUTOMATIC STAY, (III) SCHEDULING A FINAL HEARING, AND (IV) GRANTING RELATED RELIEF**

Galleria 2425 Owner, LLC ("**Landlord**"), the lessor of Debtors' headquarters at 2425 West Loop South, Houston, Texas, hereby files its limited objection to *Debtors' Emergency Motion Seeking Entry of Interim and Final Orders (I) Authorizing Use of Cash Collateral and Affording Adequate Protection, (II) Modifying the Automatic Stay, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief* [Docket No. 24] ("**Cash Collateral Motion**")[2] and, in support thereof, respectfully states as follows:

### I.   FACTUAL AND PROCEDURAL BACKGROUND

1. Debtor Specialty Retailers, Inc., as tenant, and Landlord, as landlord, are parties to that certain Office Lease Agreement dated May 27, 2015, as subsequently amended (the "***Lease***") with respect to certain portions of the building located at 2425 West Loop South, Houston, Texas

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Stage Stores, Inc. (6900) and Specialty Retailers, Inc. (1900). The Debtors' service address is: 2425 West Loop South, Houston, Texas 77027.

[2] This limited objection is filed pursuant to an extension of time to respond to June 5, 2020 granted by Debtors' counsel.

(the "*Headquarters Premises*"), utilized by Debtors as their corporate headquarters. Monthly rent and charges under the Lease are currently $477,868.25.

2.  On or May 10, 2020 (the "*Petition Date*"), the Debtors each filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "*Bankruptcy Code*"). On May 11, 2020, this Court entered its order authorizing joint administration and procedural consolidation of these Chapter 11 cases [Docket No. 45]. No trustee or examiner has been appointed and Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.[3]

3.  On May 10, 2020, as part of its "first day" motions, Debtors filed their Cash Collateral Motion, seeking use of cash collateral from its Prepetition Lenders[4] during these Chapter 11 cases. The Cash Collateral Motion describes certain "Milestones" upon which the use of cash collateral is conditioned, including the commencement of Store Closing Sales. According to Debtors, prior to the Petition Date, there was approximately $10.3 million in remaining availability under the Prepetition Credit Agreement that—along with the anticipated proceeds of the Store Closing Sales—will be sufficient to fund these Chapter 11 cases. *Cash Collateral Motion* at ¶¶ 23-24. Significantly, Debtors are liquidating their assets, not reorganizing as a going concern, and the Prepetition Lenders are not currently contributing any "new money" to the administration of these cases.

4.  On May 11, 2020, this Court entered its *Agreed Interim Order (I) Authorizing Use of Cash Collateral and Affording Adequate Protection, (II) Modifying the Automatic Stay, (III)*

---

[3] Unless otherwise noted, section (§) references are to the Bankruptcy Code.
[4] Capitalized terms not otherwise defined shall have the same meaning as set forth in the Cash Collateral Motion.

*Scheduling a Final Hearing, and (IV) Granting Related Relief* [Docket No. 78] ("**Interim Order**").

5.  As provided in the Cash Collateral Motion and paragraph H of the Interim Order, the Prepetition Lenders seek "a waiver of the provisions of Section 506(c) of the Bankruptcy Code and any 'equities of the case' claims under Section 552(b) of the Bankruptcy Code."

## II. THIS COURT SHOULD NOT APPROVE THE PROPOSED WAIVERS OF 11 U.S.C. §§ 506(c) AND 552(b)

6.  Section 506(c) allows a debtor to charge the costs of preserving or disposing of a secured lender's collateral to the collateral itself. 11 U.S.C. § 506(c). This provision ensures that the cost of liquidating a secured lender's collateral is not paid out of unsecured creditors' recoveries, but is instead borne by the secured creditor. *See, e.g.*, *Precision Steel Shearing v. Fremont Fin. Corp. (In re Visual Indus., Inc.)*, 57 F.3d 321, 325 (3d Cir. 1995) ("[S]ection 506(c) is designed to prevent a windfall to the secured creditor"); *Kivitz v. CIT Group/Sales Fin., Inc.*, 272 B.R. 332, 334 (D. Md. 2000) (stating that "the reason for [section 506(c)] is that unsecured creditors should not be required to bear the cost of protecting property that is not theirs"); *In re Codesco Inc.*, 18 B.R. 225, 230 (Bankr. S.D.N.Y. 1982) ("The underlying rationale for charging a lienholder with the costs and expenses of preserving or disposing of the secured collateral is that the general estate and unsecured creditors should not be required to bear the cost of protecting what is not theirs.").[5]

7.  Similarly, the "equities of the case" exception in § 552(b) allows a debtor, creditors' committee or other party-in-interest to exclude post-petition proceeds from pre-petition collateral

---

[5] It is well-settled, however, that administrative claimants do not have an independent right to seek payment of otherwise unsatisfied claims under § 506(c) from property encumbered by a secured creditor's lien since the statute reserves that right to a trustee (or debtor-in-possession in a Chapter 11 case). *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S. Ct. 1942, 1947 (2000).

3

on equitable grounds, including to avoid having unencumbered assets fund the cost of a secured lender's foreclosure or other disposition of assets. 11 U.S.C. § 552(b). This statutory provision "is intended to prevent secured creditors from receiving windfalls and to allow bankruptcy courts broad discretion in balancing the interests of secured creditors against the general policy of the Bankruptcy Code …." *In re Cafeteria Operators, L.P.*, 299 B.R. 400, 409-410 (Bankr. N.D. Tex. 2003).

8. Debtors failed to pay May 2020 rent and charges in full under the Lease for the Headquarters Premises. Nevertheless, Debtors have unquestionably used, occupied, and enjoyed the benefit of the Headquarters Premises consistently through and after the commencement of these cases in support of the filing of these Chapter 11 cases and the management and operation of Debtors' businesses. Throughout this period, and despite Debtors' failure to timely pay rent, Landlord has continued to provide services to Debtors after the Petition Date, including utilities, cleaning, security, maintenance and repairs, and insurance.

9. Although the Fifth Circuit has not yet weighed in, bankruptcy courts in both the Northern and Southern District of Texas have endorsed the so-called "billing date" theory with respect to rent for the "stub" period from the Petition Date to the end of the first month of the case (in this case, May 10-31). *See*, *e.g.*, *In re Imperial Beverage Grp., LLC*, 457 B.R. 490, 501 (Bankr. N.D. Tex. 2011); *In re Appletree Markets, Inc.*, 139 B.R. 417, 420 (Bankr. S.D. Tex. 1992); *see also In re Simbaki, Ltd.*, Case No. 13-36878, 2015 WL 97167, at *6 (Bankr. S.D. Tex. Apr. 6, 2015) (Isgur, J.) (adopting the billing date theory). Under the billing date theory, May rent and charges under the Lease are considered due prior to the Petition Date on May 1, and are therefore not captured within Debtors' obligation to "timely perform" rent and other Lease obligations under under § 365(d)(3). Instead, Landlord is left with a substantial administrative expense claim for

stub rent under § 503(b)(1)(A) for Debtors' use and occupancy of the Headquarters Premises during the stub rent period (May 10-31) as an actual, necessary cost of preserving Debtors' estates. *See In re Imperial Beverage Grp., LLC*, 457 B.R. at 501-02.

10. At this point, there should be little doubt that these Chapter 11 cases are now being run for primary benefit of Debtors' Prepetition Lenders. The Prepetition Lenders benefit from the continued operation of Debtors' business through the Store Closing Sales (i.e., the liquidation of their Collateral) to satisfy their secured claims. The postpetition operations, which continue to be based out of the Headquarters Premises even as many of Debtors' retail stores remain closed, are an integral part of that effort. As a result, the Lenders must accept the costs and risks associated with those benefits, including payment of necessary administrative expenses incurred by Debtors in this Chapter 11 case, including the satisfaction of administrative priority claims for "stub rent." *See, e.g.*, *In re Scopetta-Senra P'ship III,* 129 B.R. 700, 701 (Bankr. S.D. Fla. 1991) (landlord that leased auto dealership premises to debtor, without payment of administrative rent, provided benefit to secured creditors through the continued use of the premises to sell the vehicles to enable repayment to the secured creditors); *In re So Good South Potato Chip Co.*, 116 B.R. 144, 146 (Bankr. E.D. Mo. 1990) (where the trustee declined to pursue a Section 506(c) surcharge claim, the failure of secured creditor to pay for storage of collateral at premises leased by debtor would otherwise "result in a windfall benefit to the secured creditor to the detriment of a third party."); *In re Isaac Cohen Clothing Corp.*, 39 B.R. 199, 201 (Bankr. S.D.N.Y. 1984) (granting surcharge because lender "clearly benefited from the property being stored on the [landlord's] premises").[6] It has been observed that bankruptcy courts "should not ignore the basic injustice of an agreement

---

[6] In denying a Section 506(c) waiver in *In re Sports Authority Holdings, Inc.*, Case No. 16-10527 (MFW) (Bankr. D. Del.), Judge Walrath observed that where a Chapter 11 case is being run for the "benefit of the lenders," then "the lenders are going to have to pay the cost of that. And that includes all administrative. It includes the rent." April 26, 2016 hearing transcript [Docket No. 1463] at 194:10 to 195:16.

in which a debtor, acting out of desperation, has compromised the rights of unsecured creditors." *In re FCX, Inc.*, 54 B.R. 833, 838 (Bankr. E.D.N.C. 1985); *accord, In re Defender Drug Stores, Inc.*, 145 B.R. 312, 317 (9th Cir. BAP 1992) (recognizing that debtors-in-possession "generally enjoy little negotiating power" with secured lenders, "particularly where the lender has a prepetition lien on cash collateral.").

11. At a minimum, under these circumstances Landlord is entitled to adequate protection under § 363(e) with respect to the payment of postpetition occupancy costs. The purpose of adequate protection "is to [e]nsure that the creditor receives the value for which [he] bargained prebankruptcy." *MBank Dallas, N.A. v. O'Connor* (*In re O'Connor*), 808 F.2d 1393, 1396 (10th Cir. 1987). It is well-settled that real property lessors are entitled to seek adequate protection. *See, e.g.*, *Memphis-Shelby County Airport Authority v. Braniff Airways, Inc. (In re Braniff Airways, Inc.),* 783 F.2d 1283, 1286-87 (5th Cir. 1986) (recognizing landlord's right to adequate protection); *In re P.J. Clarke's Restaurant Corp.*, 265 B.R. 392, 404 (Bankr. S.D.N.Y. 2001) (noting that a "landlord's right to adequate protection seems to follow clearly from the language of § 363(e)…"); *In re Ernst Home Center, Inc.*, 209 B.R. 955, 965-66 (Bankr. W.D. Wash. 1997); *In re MS Freight Dist., Inc.*, 172 B.R. 976, 980 n.4 (Bankr. W.D. Wash. 1994) ("Section 363(e) by its express terms authorizes an entity whose property is to be leased by the debtor to seek adequate protection."); *In re RB Furniture, Inc.*, 141 B.R. 706, 713 (Bankr. C.D. Cal. 1992) (adequate protection under § 363(e) may even be broader that the rights provided lessors under § 365(d)(3) given that it "is a fluid concept that reflects all the circumstances surrounding a debtor's use of property.").

12. As it currently stands, however, Landlord has no such protection—adequate or otherwise. The Budget attached to the Interim Cash Collateral Order neither makes provision nor

reserves for payment of stub rent. Debtors' recently-filed *Disclosure Statement for the Joint Chapter 11 Plan of Stage Stores, Inc. and Specialty Retailers, Inc.* (the "**Disclosure Statement**") projects the recovery for allowed general unsecured claims to be "less than 1%," *see* Disclosure Statement at III.D., leaving little margin for error with respect to the satisfaction of administrative expenses. Indeed, the Disclosure Statement candidly states "***[i]t is likely there will not be sufficient Distributable Cash to satisfy all administrative and priority claims*** in full upon the Effective Date." Disclosure Statement at XI(C), at p. 44 ("Feasibility") (emphasis added).

13. As adequate protection, provision for the payment of stub rent is preferred. Barring that, the mere assurance of an allowed administrative expense for accruing postpetition rents is de facto inadequate. 11 U.S.C. § 361(3) *In re Attorneys Office Management, Inc.*, 29 B.R. 96, 99 (Bankr. C.D. Cal. 1983) ("In §361(3) it is made clear that an administrative claim under § 503(b)(1) in itself will not constitute adequate protection."). In the absence of such a clear commitment to administrative solvency, the only meaningful alternative form of adequate protection is to preserve the Debtors' ability to surcharge its lenders for the cost of disposing of its lenders' collateral (including postpetition occupancy costs for the Headquarters Premises). Debtors should not be allowed to waive their statutory ability to compel their Prepetition Lenders to "pay to play" in these Chapter 11 cases. Any final order approving the Cash Collateral Motion must therefore not waive Debtors' rights under §§ 506(c) and 552(b). *See Interim Order* ¶ H.

### III.     RESERVATION OF RIGHTS

14. Landlord reserves its rights to further object to the relief sought by the Cash Collateral Motion based upon any new information provided by Debtors or the Prepetition Lenders or upon any different relief requested by Debtors.

## IV.   JOINDER

15.   To the extent not inconsistent with the foregoing, Landlord joins in the objections to the Cash Collateral Motion and entry of a final order thereon filed by Debtors' other landlords.

## V.   CONCLUSION

16.   For the foregoing reasons, Debtors should not be permitted to waive their statutory rights and remedies under §§ 506(c) and 552(b) to the detriment of Landlord.  Approval of any final order approving the Cash Collateral Motion in these cases should therefore be conditioned upon the preservation of all such rights under §§ 506(c) and 552(b).

Dated:  June 5, 2020

Respectfully submitted,

**REED SMITH LLP**

By: */s/ Michael P. Cooley*
Keith M. Aurzada (SBN 24009880)
Michael P. Cooley (SBN 24034388)
REED SMITH LLP
2850 N. Harwood, Suite 1500
Dallas, Texas 75201
T: 469.680.4200
F: 469.680.4299
kaurzada@reedsmith.com
mpcooley@reedsmith.com

*and*

**BALLARD SPAHR LLP**
Leslie C. Heilman (*admitted pro hac vice*)
Laurel D. Roglen (*admitted pro hac vice*)
919 N. Market Street, 11th Floor
Wilmington, DE 19801
T: 302.252.4465
F: 302.252.4466
heilmanl@ballardspahr.com
roglenl@ballardspahr.com

**ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP**
Ivan M. Gold (*admitted pro hac vice*)
3 Embarcadero Center, 12th Floor
San Francisco, CA 94111-4074
T: 415.837.1515
F: 415.837-1516
igold@allenmatkins.com

*Counsel for Galleria 2425 Owner, LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that, on June 5, 2020, a true and correct copy of the foregoing document was served via the Electronic Case Filing system upon all parties registered to receive electronic notices in these cases.

        /s/  Michael P. Cooley
        Michael P. Cooley