**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

ENTERED
08/14/2020

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| STAGE STORES, INC., *et al.*,[1] | ) | Case No. 20-32564 (DRJ) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) |  |

---

**ORDER CONFIRMING THE JOINT SECOND AMENDED CHAPTER 11
PLAN OF STAGE STORES, INC. AND SPECIALTY RETAILERS, INC.**

---

The above-captioned debtors (collectively, the "Debtors") having:

a.   commenced, on May 10, 2020 (the "Petition Date"), these chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");[2]

b.   continued to operate their businesses and manage their properties as debtors in possession in accordance with sections 1107(a) and 1108 of the Bankruptcy Code;

c.   filed, on the Petition Date, the *Declaration of Elaine D. Crowley, Chief Restructuring Officer of Stage Stores Inc., in Support of Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 26] (the "First Day Declaration"), detailing the facts and circumstances of these Chapter 11 Cases;

d.   filed, on May 21, 2020, the Plan [Docket No. 296], the *Disclosure Statement for the Joint Chapter 11 Plan of Stage* Stores*, Inc. and Specialty Retailers, Inc.* [Docket No. 295], and the *Debtors' Motion for Entry of an Order Approving (I) the Adequacy Of the Disclosure Statement, (II) Solicitation and Notice Procedures, (III) Forms of Ballots and Notices in Connection Therewith, and (IV) Certain Dates With Respect Thereto* [Docket No. 297];

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Stage Stores, Inc. (6900) and Specialty Retailers, Inc. (1900).  The Debtors' service address is: 2425 West Loop South, Houston, Texas 77027.

[2]   Capitalized terms used but not otherwise defined in these findings of fact, conclusions of law, and order (collectively, the "Confirmation Order") have the meanings given to them in the *Joint Amended Chapter 11 Plan of Stage Stores, Inc. and Specialty Retailers, Inc.* (as may be amended, supplemented, or otherwise modified from time to time, and including all exhibits and supplements thereto, the "Plan").  The rules of interpretation set forth in Article I.B of the Plan apply to this Confirmation Order.

e.      filed, on June 30, 2020, the *Joint Amended Chapter 11 Plan of Stage Stores, Inc. and Specialty Retailers, Inc.* [Docket No. 519] (the "First Amended Plan") and the *Disclosure Statement for the Joint Chapter 11 Plan of Stage* Stores*, Inc. and Specialty Retailers, Inc.* [Docket No. 518];

f.      filed, on July 1, 2020, the *Joint Amended Chapter 11 Plan of Stage Stores, Inc. and Specialty Retailers, Inc. [Solicitation Version]* [Docket No. 536] and the *Disclosure Statement for the Joint Chapter 11 Plan of Stage* Stores*, Inc. and Specialty Retailers, Inc. [Solicitation Version]* [Docket No. 535];

g.      filed, on July 1, 2020, the revised *Order Approving (I) the Adequacy Of the Disclosure Statement, (II) Solicitation and Notice Procedures, (III) Forms of Ballots and Notices in Connection Therewith, and (IV) Certain Dates With Respect Thereto* [Docket No. 537];

h.      filed, on July 1, 2020, the further revised *Order Approving (I) the Adequacy Of the Disclosure Statement, (II) Solicitation and Notice Procedures, (III) Forms of Ballots and Notices in Connection Therewith, and (IV) Certain Dates With Respect Thereto* [Docket No. 539];

i.      obtained, on July 1, 2020, entry of the *Order Approving (I) the Adequacy Of the Disclosure Statement, (II) Solicitation and Notice Procedures, (III) Forms of Ballots and Notices in Connection Therewith, and (IV) Certain Dates With Respect Thereto* [Docket No. 540] (the "Disclosure Statement Order") approving the Disclosure Statement, voting and solicitation procedures (the "Solicitation Procedures"), and related notices, forms, and ballots (collectively, the "Solicitation Packages") and related dates and deadlines;

j.      caused the Solicitation Packages and notice of the Confirmation Hearing and the deadline for objecting to confirmation of the Plan to be distributed on or about July 3, 2020, (collectively, the "Solicitation Date"), in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Disclosure Statement Order, and the Solicitation Procedures, as evidenced by, among other things, the *Certificate of Service re: Solicitation Materials* [Docket No. 595] (the "Solicitation Affidavit");

k.      caused, on July 7, 2020, notice of the Confirmation Hearing (the "Confirmation Hearing Notice") to be published in *The New York Times*, as evidenced by the *Affidavit of Publication* [Docket No. 564] (the "Publication Affidavit");

l.      filed, on July 31, 2020, the *Notice of Filing of Plan Supplement for the Joint Amended Chapter 11 Plan of Stage Stores, Inc. and Specialty Retailers, Inc.* [Docket No. 638] (the "Plan Supplement");

m.      served, on or about July 1, 2020, the *Notice of Non-Voting Status and Opt Out Form to Holders of Impaired Claims and Equity Interests Deemed to Reject the Plans* [Docket No. 540] (the "Notice of Non-Voting Status and Opportunity to Opt Out" and, together with the Combined Notice, the "Notices") on all holders or potential

1

holders of Claims or Interests in non-voting Classes other than Class 8, which informed recipients of (i) their status as holders or potential holders of Claims or Interests in non-voting classes, (ii) provided the full text of the release, exculpation, and injunction provisions set forth in the Plan, (iii) included a form by which holders could elect to opt out of the Third-Party Release by checking a prominently featured and clearly labeled box, and (iv) enclosed a postage prepaid, return-addressed envelope in which holders could return their opt out elections to the Solicitation Agent;

n.      filed, on August 12, 2020, the *Certification of P. Joseph Morrow IV With Respect to the Tabulation of Votes on the Joint Amended Chapter 11 Plan of Stage Stores, Inc. and Specialty Retailers, Inc.* [Docket No. 679], which accounts for ballots received up to the Voting Deadline (the "Voting Report"); and

o.      filed, on August 12, 2020, the *Debtors' Memorandum of Law in Support of Confirmation of the Joint Second Amended Chapter 11 Plan of Stage Stores, Inc. and Specialty Retailers, Inc.* [Docket No. 685] (the "Confirmation Brief");

p.      filed, on August 12, 2020, the *Declaration of Elaine Crowley in Support of Confirmation of the Joint Amended Chapter 11 Plan of Stage Stores, Inc. and Specialty Retailers, Inc.* [Docket No. 686] (the "Crowley Declaration");

q.      filed, on August 12, 2020, the *Joint Second Amended Chapter 11 Plan of Stage Stores, Inc. and Specialty Retailers, Inc.* [Docket No. 688];

r.      filed, on August 12, 2020, the *Proposed Order Confirming the Joint Amended Chapter 11 Plan of Stage Stores, Inc. and Specialty Retailers, Inc.* [Docket No. 687];

This Court having:

s.      entered the Disclosure Statement Order on July 1, 2020, 2020 [Docket No. 540];

t.      set August 7, 2020, at 4:00 p.m. (prevailing Central Time) as the deadline to vote on the Plan;

u.      set August 7, 2020, at 4:00 p.m. (prevailing Central Time) as the deadline to file objections to the Plan;

v.      set August 14, 2020, at 2:30 p.m. (prevailing Eastern Time) as the date and time for the commencement of the Confirmation Hearing in accordance with rules 3017 and 3018 of the Bankruptcy Rules and sections 1126, 1128, and 1129 of the Bankruptcy Code;

w.      reviewed the Plan, the Disclosure Statement, the Confirmation Brief, the Voting Report, and all pleadings, exhibits, statements, responses, and comments regarding Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of the Chapter 11 Cases;

x.      held the Confirmation Hearing;

y.      heard the statements and arguments made by counsel with respect to Confirmation;

z.      considered all oral representations, live testimony, written direct testimony, exhibits, documents, filings, and other evidence presented at the Confirmation Hearing;

aa.      entered rulings on the record at the Confirmation Hearing held on August 14, 2020 (the "Confirmation Ruling");

bb.      overruled any and all objections to the Plan and Confirmation, except as otherwise stated or indicated on the record, and all statements and reservations of rights not consensually resolved, agreed to, or withdrawn, unless otherwise indicated; and

cc.      taken judicial notice of all papers and pleadings filed in the Chapter 11 Cases.

NOW, THEREFORE, the Bankruptcy Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby; and the record of the Chapter 11 Cases and the legal and factual bases set forth in the documents filed in support of Confirmation and presented at the Confirmation Hearing including, without limitation, the Crowley Declaration establishes just cause for the relief granted in this Confirmation Order; and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court hereby makes and issues the following findings of fact, conclusions of law, and order:

## I.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY FOUND AND DETERMINED THAT:

**A.      Findings and Conclusions**

1.      The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the

extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

**B.      Jurisdiction and Venue**

2.      This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. § 1334.  Consideration of whether the Disclosure Statement and the Plan comply with the applicable provisions of the Bankruptcy Code constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).  This Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper in this district pursuant to sections 1408 and 1409 of title 28 of the United States Code.

**C.      Eligibility for Relief**

3.      The Debtors were and are entities eligible for relief under section 109 of the Bankruptcy Code.

**D.      Commencement and Joint Administration of the Chapter 11 Cases**

4.      On the Petition Date, each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.  In accordance with the *Order Directing Joint Administration of Chapter 11 Cases* [Docket No. 45], these Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015. Since the Petition Date, the Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.

**E.      Appointment of the Creditors' Committee**

5.      On May 20, 2020, the U.S. Trustee appointed the Official Committee of Unsecured Creditors (the "Creditors' Committee") to represent the interests of the unsecured creditors of the Debtors in the Chapter 11 Cases [Docket No. 274].

**F.      Plan Supplement**

6.      On July 31, 2020, the Debtors filed the Plan Supplement with the Bankruptcy Court.  The Plan Supplement complies with the terms of the Plan, and the Debtors provided good and proper notice of the filings in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Order, and the facts and circumstances of the Chapter 11 Cases.  No other or further notice is or will be required with respect to the Plan Supplement.  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.  Subject to the terms of the Plan, the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement before the Effective Date, subject to compliance with the Bankruptcy Code and the Bankruptcy Rules; *provided* that no such alteration, amendment, update, or modification shall be inconsistent with the terms of this Confirmation Order or the Plan.

**G.      Modifications to the Plan**

7.      Pursuant to section 1127 of the Bankruptcy Code, any modifications to the Plan since the commencement of Solicitation described or set forth herein constitute technical changes or changes with respect to particular Claims or Interests made pursuant to the agreement of the Holders of such Claims or Interests and do not materially and adversely affect the treatment of any Claims or Interests.  Pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that the Holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

8.      This Confirmation Order contains modifications to the Plan that were made to address objections and informal comments received from parties in interest.  Modifications to the Plan since entry of the Disclosure Statement Order, if any, are consistent with the provisions of the Bankruptcy Code.  The disclosure of any Plan modifications prior to or on the record at the

Confirmation Hearing constitutes due and sufficient notice of any and all Plan modifications. The Plan as modified shall constitute the Plan submitted for Confirmation.

**H.     Objections Overruled**

9.     Any resolution or disposition of objections to Confirmation explained or otherwise ruled upon by the Bankruptcy Court on the record at the Confirmation Hearing is hereby incorporated by reference. All unresolved objections, statements, and reservations of rights are hereby overruled on the merits.

**I.     Disclosure Statement Order and Notice of Adjournments**

10.     On July 1, 2020, the Bankruptcy Court entered the Disclosure Statement Order [Docket No. 540], which, among other things, fixed August 7, 2020, at 4:00 p.m. (prevailing Central Time) as the Plan Objection Deadline and the Voting Deadline and fixed August 14, 2020, at 2:30 p.m. (prevailing Central Time) as the date and time for the Confirmation Hearing.

**J.     Transmittal and Mailing of Materials; Notice**

11.     As evidenced by the Solicitation Affidavit, the Publication Affidavit, and the Voting Report, the Debtors provided due, adequate, and sufficient notice of the Plan, the Disclosure Statement, the Disclosure Statement Order, the Solicitation Packages, the Confirmation Hearing Notice, the Plan Supplement, the Notices, and all the other materials that the Debtors distributed in connection with the Confirmation of the Plan are in compliance with the Bankruptcy Rules, including Bankruptcy Rules 2002(b), 3017, 3019, and 3020(b), the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Local Rules"), and the procedures set forth in the Disclosure Statement Order. The Debtors provided due, adequate, and sufficient notice of the Voting and Plan Objection Deadline, the Confirmation Hearing (as may be continued from time to time), and any applicable bar dates and hearings described in the Disclosure Statement Order in compliance with the Bankruptcy Code, the

Bankruptcy Rules, the Bankruptcy Local Rules, and the Disclosure Statement Order.  No other or further notice is or shall be required.

**K.**     **Solicitation**

12.     The Debtors solicited votes for acceptance and rejection of the Plan in good faith, and the Solicitation Packages provided the opportunity for voting creditors to opt out of the releases.  Such solicitation complied with sections 1125 and 1126 and all other applicable sections of the Bankruptcy Code, rules 3017, 3018, and 3019 of the Bankruptcy Rules, the Disclosure Statement Order, the Bankruptcy Local Rules, and all other applicable rules, laws, and regulations.

**L.**     **Voting Report**

13.     Before the Confirmation Hearing, the Debtors filed the Voting Report.  The Voting Report was admitted into evidence during the Confirmation Hearing.  The procedures used to tabulate ballots were fair and conducted in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and all other applicable rules, laws, and regulations.

14.     As set forth in the Plan, Holders of Claims in Class 3 and Class 4 (collectively, the "Voting Classes") were eligible to vote on the Plan in accordance with the Solicitation Procedures.  Holders of Claims in Classes 1 and 2 (collectively, the "Presumed Accepting Classes") are Unimpaired and conclusively presumed to accept the Plan and, therefore, did not vote to accept or reject the Plan.  Holders of Interests in Class 5, Class 6, Class 7, and Class 8 (the "Deemed Rejecting Classes") are Impaired under the Plan and are entitled to no recovery under the Plan and are, therefore, deemed to have rejected the Plan.

15.     As evidenced by the Voting Report, Class 3 and Class 4 voted to accept the Plan in accordance with section 1126 of the Bankruptcy Code.

**M.     Bankruptcy Rule 3016**

16.     The Plan and all modifications thereto were dated and identified the entities submitting such modification, thus satisfying Bankruptcy Rule 3016(a).   The Debtors appropriately filed the Disclosure Statement and the Plan with the Bankruptcy Court, thereby satisfying Bankruptcy Rule 3016(b).   The injunction, release, and exculpation provisions in the Disclosure Statement and the Plan describe, in bold font and with specific and conspicuous language, all acts to be enjoined, released, and exculpated and identify the entities that will be subject to the injunction, releases, and exculpations, thereby satisfying Bankruptcy Rule 3016(c).

**N.     Burden of Proof**

17.     The Debtors, as proponents of the Plan, have met their burden of proving the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, the applicable evidentiary standard for Confirmation.   Further, the Debtors have proven the elements of sections 1129(a) and 1129(b) by clear and convincing evidence.   Each witness who testified on behalf of the Debtors in connection with Confirmation was credible, reliable, and qualified to testify as to the topics addressed in his or her testimony.

**O.     Compliance with the Requirements of Section 1129 of the Bankruptcy Code**

18.     The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code as follows:

**a.     Section 1129(a)(1)—Compliance of the Plan with Applicable Provisions of the Bankruptcy Code**

19.     The Plan complies with all applicable provisions of the Bankruptcy Code, including sections 1122 and 1123, as required by section 1129(a)(1) of the Bankruptcy Code.

i.      **Sections 1122 and 1123(a)(1)—Proper Classification**

20.      The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code.  In accordance with sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan provides for the separate classification of Claims and Interests into nine different Classes based on differences in the legal nature or priority of such Claims and Interests (other than Administrative Claims, DIP Claims, Professional Fee Claims, and Priority Tax Claims, which are addressed in Article II of the Plan and are not required to be designated as separate Classes by section 1123(a)(1) of the Bankruptcy Code).  Valid business, factual, and legal reasons exist for the separate classification of such Claims and Interests, such classifications were not implemented for any improper purpose and do not unfairly discriminate between or among Holders of Claims and Interests.

21.      In accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims or Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.  Accordingly, the Plan satisfies the requirements of sections 1122(a), 1122(b), and 1123(a)(1) of the Bankruptcy Code.

ii.      **Section 1123(a)(2)—Specification of Unimpaired Classes**

22.      Article III of the Plan specifies that Claims in Classes 1 and 2 are Unimpaired under the Plan, and Claims and Interests, as applicable, in Classes 3, 4, 5, 7, and 8 are Impaired.  In addition, Article II of the Plan specifies that each Holder of Administrative Claims or Allowed Priority Tax Claims against the Debtors shall be allowed and shall receive full and final satisfaction of its Administrative Claim in an amount of Cash equal to the amount of such Allowed Administrative Claim or Allowed Priority Tax Claim.  Accordingly, the Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

### iii.      Section 1123(a)(3)—Specification of Treatment of Impaired Classes

23.      Article III of the Plan specifies the treatment of each Impaired Class under the Plan. Accordingly, the Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

### iv.      Section 1123(a)(4)—No Discrimination

24.      Article III of the Plan provides the same treatment to each Claim or Interest in any particular Class, as the case may be, unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest.  Accordingly, the Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

### v.      Section 1123(a)(5)—Adequate Means for the Plan's Implementation

25.      The Plan and the various documents included in the Plan Supplement provide adequate and proper means for the Plan's execution and implementation, including:   (a) the Schedule of Assumed Executory Contracts and Unexpired Leases; (b) the Schedule of Retained Causes of Action; (c) the identity and terms of compensation of the Plan Administrator; (d) any transition services agreement between the Purchasers and the Debtors; and (e) any other necessary documentation related to the Sale Transaction Proceeds or other Restructuring Transactions. Accordingly, the Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

### vi.      Section 1123(a)(6)—Non-Voting Equity Securities

26.      The Plan does not provide for the issuance of new equity interests.  Accordingly, the Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

### vii.      Section 1123(a)(7)—Directors, Officers, and Trustees

27.      The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code. Article IV.D of the Plan discharges all of the Debtors' officers and managers from their duties effective as of the Effective Date without any further action.  In addition, Article IV.D provides that the Plan Administrator shall be appointed as the sole manager and sole officer of the

Wind-Down Debtors and shall succeed to the powers of the Wind-Down Debtors' managers and officers.  The manner for selection of the Plan Administrator is set forth in the Plan.  The selection of Steven Balasiano as the Plan Administrator and the process therefor is consistent with the interests of Holders of Claims and Interests and public policy.

   **b.**  **Section 1123(b)—Discretionary Contents of the Plan**

   28.  The Plan's discretionary provisions comply with section 1123(b) of the Bankruptcy Code and are not inconsistent with the applicable provisions of the Bankruptcy Code.  Thus, the Plan satisfies section 1123(b).

     **i.**  **Impairment/Unimpairment of Any Class of Claims or Interests**

   29.  Pursuant to the Plan, Article III of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims and Interests, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

     **ii.**  **Assumption and Rejection of Executory Contracts and Unexpired Leases**

   30.  Article V of the Plan provides that all Executory Contracts and Unexpired Leases are deemed rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code on the Effective Date, other than the following:  (1) is specifically described in the Plan as to be assumed in connection with confirmation of the Plan, is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan or the Plan Supplement, or otherwise is specifically described in the Plan to not be rejected; (2) is subject to a pending motion to assume such Unexpired Lease or Executory Contract as of the Confirmation Date (unless the counterparty to such Unexpired Lease or Executory Contract and the Debtors agree otherwise); (3) is to be assumed by the Debtors or assumed by the Debtors and assigned to another third party,

as applicable, in connection with the any sale transaction; or (4) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan.

31.     For the avoidance of doubt, nothing herein or in the Plan shall modify the terms of the Store Closing Order or preclude or otherwise prejudice the rights of parties, including counterparties to leases of non-residential real property, to recover payment in full of amounts and/or obligations provided for under the Store Closing Order and/or the Wind-Down Budget from the Debtors, the Wind-Down Debtors, the Plan Administrator and/or the Estates, as applicable.

32.     Therefore, the Plan satisfies section 1123(b)(2) of the Bankruptcy Code.

### iii.     Compromise and Settlement

33.     In accordance with section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided under the Plan and with the support of the various creditors, stakeholders, and other parties in interest, including the Committee, the provisions of the Plan constitute a good-faith compromise of all Claims, Interests, Causes of Action, as applicable, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan.  Those settlements and compromises are fair, equitable, and reasonable and approved as being in the best interests of the Debtors and their Estates.

### iv.     Debtor Release

34.     In accordance with section 1123(b)(3)(A) of the Bankruptcy Code, the releases of claims and Causes of Action by the Debtors described in Article VIII.C of the Plan (the "Debtor Release") represent a valid exercise of the Debtors' business judgment under Bankruptcy Rule 9019.  The Debtors' pursuit of any such claims against the Released Parties is not in the best interests of the Estates' various constituencies because the costs involved would likely outweigh any potential benefit from pursuing such claims.  The Debtor Release is fair and equitable and complies with the absolute priority rule.

35.     Creditors in Class 3 and Class 4 have voted in favor of the Plan, including the Debtor Release.  The Plan, including the Debtor Release, was negotiated at arm's-length and in good faith by sophisticated parties represented by able counsel and financial advisors.  Therefore, the Debtor Release is the result of an arm's-length negotiation process.

36.     The Debtor Release appropriately offers protection to parties that participated in the Debtors' restructuring process.  Specifically, the Released Parties under the Plan—including (a) the Prepetition Secured Parties; (b) the Committee and each of its members; (c) the Plan Administrator; (d) each Holder of an Administrative Claim, Priority Tax Claim, and Other Priority Claim that does not object to the Plan; (e) all Holders of Claims or Interests that vote to accept or are presumed to accept the Plan; (f) all Holders of Claims or Interests that abstain from voting on the Plan, who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable form indicating that they opt not to grant the releases provided in the Plan, and who do not object to the releases contained in the Plan; and (g) with respect to each of the Debtors, the Wind-Down Debtors, and each of the foregoing Entities in clauses (a) through (f), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, participants, successors, and assigns, subsidiaries, affiliates, managed accounts or funds, and each of their respective current and former equity holders, officers, directors, managers, principals, shareholders, members, management companies, fund advisors, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; *provided* that any Holder of a Claim or Interest that:  (a) opted out of the releases; or (b) objected to the releases contained in the Plan shall not be a "Released Party"—made

significant concessions and contributions to the Debtors' Chapter 11 Cases, including, as applicable, actively supporting the Plan and the Chapter 11 Cases, settling and compromising substantial rights and claims against the Debtors under the Plan, committing to funding pursuant to the Wind-Down Budget, and providing debtor in possession financing.

37.     The scope of the Debtor Release is appropriately tailored under the facts and circumstances of the Chapter 11 Cases.  In light of, among other things, the value provided by the Released Parties to the Debtors' Estates and the critical nature of the Debtor Release to the Plan, the Debtor Release is approved.

### v.     Release by Holders of Claims and Interests

38.     The release by the Releasing Parties (the "Third-Party Release"), set forth in Article VIII.D of the Plan, is an essential provision of the Plan.  The Third-Party Release is (a) consensual, (b) in exchange for the good and valuable consideration provided by the Released Parties, (c) a good-faith settlement and compromise of the claims and Causes of Action released by the Third-Party Release, (d) materially beneficial to and in the best interests of the Debtors, their Estates, and their stakeholders and is important to the overall objectives of the Plan to finally resolve certain Claims among or against certain parties in interest in the Chapter 11 Cases, (e) fair, equitable, and reasonable, (f) given and made after due notice and opportunity for hearing, (g) a bar to any of the Releasing Parties asserting any claim or Cause of Action released by the Third-Party Release against any of the Released Parties, and (h) consistent with sections 105, 524, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code.

39.     The Third-Party Release is an integral part of the Plan that is supported by many of the Debtors' creditors and provides a meaningful recovery under the facts and circumstances of these Chapter 11 Cases.  Like the Debtor Release, the Third-Party Release facilitated participation of the Released Parties in both the Plan and the chapter 11 processes generally.  The Third-Party

Release is instrumental to the Plan and was critical in incentivizing the Released Parties to support the Plan and preventing potentially significant and time-consuming litigation regarding the parties' respective rights and interests.  The Third-Party Release was instrumental in developing a plan that maximized value for all of the Debtors' stakeholders, preserved certain of the Debtors' businesses as a going concern, and allowed for the orderly wind down of these Chapter 11 Cases. The Third-Party Release is necessary to bringing these Chapter 11 Cases to a resolution.

40.     The Third-Party Release appropriately offers certain protections to parties who constructively participated in the Debtors' restructuring process, Unimpaired Creditors whose claims are being satisfied in full in cash or otherwise receiving a full recovery, or Holders of Claims or Interests that abstained from voting but did not opt out of the Third-Party Release (to the extent such holders of Claims or Interests were entitled to opt out of the Third-Party Release under the Plan).  And the Released Parties have made a substantial contribution to the Debtors' Chapter 11 Cases.  Furthermore, the Third-Party Release is consensual as the Releasing Parties were provided adequate notice of the chapter 11 proceedings, the Plan, and the deadline to object to confirmation of the Plan, voting creditors and interest holders were given the opportunity to opt out of the Third-Party Release, and the release provisions of the Plan were conspicuous, emphasized with boldface type in the Plan, the Disclosure Statement, and the ballots.

41.     There is an identity of interests between the Debtors and the entities that will benefit from the Third-Party Release.  Each of the Released Parties, as stakeholders and critical participants in the Debtors' Chapter 11 Cases and the Plan process, share a common goal with the Debtors in seeing the Plan succeed.

42.     The scope of the Third-Party Release is appropriately tailored to the facts and circumstances of the Chapter 11 Cases, and parties received due and adequate notice of the

Third-Party Release. Among other things, the Plan provides appropriate and specific disclosure with respect to the claims and Causes of Action that are subject to the Third-Party Release, and no other disclosure is necessary. The Debtors, as evidenced by the Solicitation Affidavit, provided sufficient notice of the Third-Party Release, and no further or other notice is necessary. The Third-Party Release is specific in language, integral to the Plan, and given for substantial consideration.

43.     In light of the foregoing, the Third-Party Release is approved.

### vi.     Exculpation

44.     The exculpation provisions set forth in Article VIII.E of the Plan are essential to the Plan. The record in the Chapter 11 Cases fully supports the exculpation and the exculpation provisions set forth in Article VIII.E of the Plan, which are appropriately tailored to protect the Exculpated Parties from unnecessary litigation and contain appropriate carve outs for gross negligence, actual fraud, and willful misconduct.

### vii.     Injunction

45.     The injunction provisions set forth in Article VIII.F of the Plan are essential to the Plan and are necessary to implement the Plan and to preserve and enforce the discharge the Debtor Release, the Third-Party Release, and the exculpation provisions in Article VIII of the Plan. Such injunction provisions are appropriately tailored to achieve those purposes.

### viii.     Preservation of Causes of Action

46.     Article IV.M of the Plan appropriately provides for the preservation by the Debtors of certain Causes of Action in accordance with section 1123(b)(3)(B) of the Bankruptcy Code.

47.     The Plan provides that all Causes of Action shall be conveyed to the Wind-Down Debtors, and the Plan and Plan Supplement provide meaningful disclosure with respect to the potential Causes of Action that the Wind-Down Debtors may retain, and all parties in interest

received adequate notice with respect to such Causes of Action.  The provisions regarding Causes of Action in the Plan are appropriate and in the best interests of the Debtors, their respective Estates, and Holders of Claims and Interests.  For the avoidance of doubt, except with respect to the Schedule of Retained Causes of Action and as otherwise provided in the Plan, Causes of Action released or exculpated under the Plan will not be retained by the Wind-Down Debtors.

### ix.     Lien Releases

48.     Except as otherwise provided in the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date and required to be satisfied pursuant to the Plan, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with Article III.B.1 of the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, compromised, and satisfied, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically to the applicable Debtor and its successors and assigns.  Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Wind-Down Debtors to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases.  The presentation or filing of this Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

### x.    Additional Plan Provisions

49.    The other discretionary provisions in the Plan, including the Plan Supplement, are appropriate and consistent with applicable provisions of the Bankruptcy Code, including, without limitation, provisions for the allowance of certain Claims and Interests, treatment of D&O Insurance Policies, and the retention of court jurisdiction.

### c.    Section 1123(d)—Cure of Defaults

50.    Article V.E of the Plan provides for the satisfaction of all Cure Obligations under each Executory Contract and Unexpired Lease to be assumed in accordance with section 365(b)(1) of the Bankruptcy Code.  Any monetary or non-monetary defaults under each Assumed Executory Contract or Unexpired Lease shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Obligation in Cash, subject to the limitations described in Article V.E of the Plan, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  Any dispute regarding Cure Obligation, the ability of the Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or any other matter pertaining to assumption will be determined in accordance with the terms set forth in Article V.E of the Plan and applicable bankruptcy and nonbankruptcy law. As such, the Plan provides that the Debtors will cure or provide adequate assurance that the Debtors will promptly cure defaults with respect to assumed Executory Contracts and Unexpired Leases in accordance with section 365(b)(1) of the Bankruptcy Code.  Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

d.    **Section 1129(a)(2)—Compliance of the Debtors and Others with the Applicable Provisions of the Bankruptcy Code**

51.    The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, 1128, and 1129, and with Bankruptcy Rules 2002, 3017, 3018, and 3019.

52.    The Debtors and their agents solicited votes to accept or reject the Plan after the Bankruptcy Court approved the adequacy of the Disclosure Statement, pursuant to section 1125(a) of the Bankruptcy Code and the Disclosure Statement Order.

53.    The Debtors and their agents have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly, in good faith within the meaning of section 1125(e), and in a manner consistent with the applicable provisions of the Disclosure Statement Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Article VIII.E of the Plan.

54.    The Debtors and their agents have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance, and distribution of recoveries under the Plan and, therefore, are not and, on account of such distributions, will not be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or distributions made pursuant to the Plan so long as such distributions are made consistent with and pursuant to the Plan.

**e.      Section 1129(a)(3)—Proposal of Plan in Good Faith**

55.      The Debtors have proposed the Plan in good faith and not by any means forbidden by law.  In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself, and the process leading to its formulation.  The Debtors' good faith is evident from the facts and the record of the Chapter 11 Cases, the Disclosure Statement, the hearing on the Disclosure Statement, and the record of the Confirmation Hearing and other proceedings held in the Chapter 11 Cases.

56.      The Plan is the product of good faith, arm's-length negotiations by and among the Debtors, the Debtors' directors, officers and managers, and the other constituencies involved in the Chapter 11 Cases.  The Plan itself and the process leading to its formulation provide independent evidence of the Debtors' and such other parties' good faith, serve the public interest, and assure fair treatment of holders of Claims and Interests.  Consistent with the overriding purpose of chapter 11, the Debtors filed the Chapter 11 Cases with the belief that the Debtors were in need of restructuring and the Plan was negotiated and proposed with the intention of maximizing stakeholder value and for no ulterior purpose.  Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

**f.      Section 1129(a)(4)—Court Approval of Certain Payments as Reasonable**

57.      Any payment made or to be made by the Debtors or by a person issuing securities or acquiring property under the Plan for services or costs and expenses in connection with the Chapter 11 Cases or the Plan and incident to the Chapter 11 Cases, as applicable, has been approved by or is subject to the approval of the Bankruptcy Court as reasonable.  Accordingly, the Plan satisfies the requirements of section 1129(a)(4).

**g.      Section 1129(a)(5)—Disclosure of Directors, Officers, and Managers and Consistency with the Interests of Creditors and Public Policy**

58.      Because the Plan provides for the liquidation of the Estates' assets and resignation of the Debtors' officers, directors, and managers, section 1129(a)(5) of the Bankruptcy Code does not apply.  To the extent section 1129(a)(5) of the Bankruptcy Code applies to the Wind-Down Debtors, the Debtors have satisfied the requirements of this provision by, among other things, disclosing the identity and terms of compensation of the Plan Administrator.

**h.      Section 1129(a)(6)—Rate Changes**

59.      The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and, accordingly, will not require governmental regulatory approval.  Therefore, section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

**i.      Section 1129(a)(7)—Best Interests of Holders of Claims and Interests**

60.      The evidence in support of the Plan that was proffered or adduced at the Confirmation Hearing, and the facts and circumstances of the Chapter 11 Cases, establishes that each Holder of Allowed Claims or Interests in each Class will recover as much or more value under the Plan on account of such Claim or Interest, as of the Effective Date, than the amount such holder would receive if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.  As a result, the Debtors have demonstrated that the Plan is in the best interests of their creditors and equity holders and the requirements of section 1129(a)(7) of the Bankruptcy Code are satisfied.

**j.      Section 1129(a)(8)—Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of the Plan by Certain Impaired Classes; Fairness of Plan with Respect to Deemed Rejecting Class**

61.      The Presumed Accepting Classes are Unimpaired under the Plan and are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Nevertheless,

because the Plan has not been accepted by the Deemed Rejecting Classes, the Debtors seek Confirmation under section 1129(b), solely with respect to the Deemed Rejecting Classes, rather than section 1129(a)(8), of the Bankruptcy Code.  Although section 1129(a)(8) has not been satisfied with respect to the Deemed Rejecting Class, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the Deemed Rejecting Class and, thus, satisfies section 1129(b) of the Bankruptcy Code with respect to such Class as described further below.

> **k.  Section 1129(a)(9)—Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code**

62.     The treatment of Administrative Claims and Priority Tax Claims under Article II of the Plan satisfies the requirements of and complies in all respects with section 1129(a)(9) of the Bankruptcy Code.

> **l.  Section 1129(a)(10)—Acceptance by at Least One Impaired Class**

63.     As set forth in the Voting Report, Holders of Claims in Class 3 and Class 4 voted to accept the Plan.  As such, with respect to each Debtor's Plan, there is either at least one class of Claims that is Impaired under the Plan and has accepted the Plan, which was determined without including any insiders' (as defined in the Bankruptcy Code) acceptance of the Plan.  Accordingly, the requirements of section 1129(a)(10) of the Bankruptcy Code are satisfied.

> **m.  Section 1129(a)(11)—Feasibility of the Plan**

64.     The Plan satisfies section 1129(a)(11) of the Bankruptcy Code.  The evidence supporting the Plan proffered or adduced by the Debtors at or before the Confirmation Hearing:  (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (b) has not been controverted by other persuasive evidence; (c) establishes that the Plan is feasible and Confirmation of the Plan is not likely to be followed by

liquidation (other than as contemplated by the Plan) or the need for further financial reorganization; and (d) establishes that the Debtors will have sufficient funds available to meet their obligations under the Plan.

      **n.**      **Section 1129(a)(12)—Payment of Statutory Fees**

65.      Article II.C of the Plan provides that the Debtors shall pay any outstanding U.S. Trustee Fees, pursuant to section 1930(a) of the Judicial Code, in full on the Effective Date and the Debtors or the Wind-Down Debtors, applicable shall continue to pay such fees until the Chapter 11 cases are converted, dismissed, or closed, whichever occurs first.  Accordingly, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

      **o.**      **Section 1129(a)(13), (14), (15), and (16)—Retiree Benefits, Domestic Support Obligations, Individuals, and Nonprofit Corporations**

66.      The Plan provides that all retirement benefits, including any supplemental executive retirement plan, as defined in section 1114 of the Bankruptcy Code, are terminated as of the Effective Date.  The Debtors are not required to pay domestic support obligations pursuant to a judicial or administrative order or statute as set forth in section 1129(a)(13) of the Bankruptcy Code.  The Debtors are not individuals under the Bankruptcy Code.  The Debtors are transferring property under the Plan in accordance with applicable nonbankruptcy law that governs the particular property.  Therefore, sections 1129(a)(13), 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code, respectively, have been complied with the Plan.

      **p.**      **Section 1129(b)—Confirmation of Plan Over Nonacceptance of Impaired Classes**

67.      Notwithstanding the fact that the Deemed Rejecting Classes have not accepted the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code because (a) Class 3 and Class 4 voted to accept the Plan and (b) the Plan does not discriminate unfairly and is fair and equitable with respect to the Interests in the Deemed Rejecting Classes.  As a result, the

Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code.  Thus, the Plan may be confirmed even though section 1129(a)(8) of the Bankruptcy Code is not satisfied.  After entry of this Confirmation Order and upon the occurrence of the Effective Date, the Plan shall be binding upon the members of the Deemed Rejecting Classes.

        q.        **Section 1129(c)—Only One Plan**

68.      The Plan is the only plan filed in the Chapter 11 Cases and, accordingly, section 1129(c) of the Bankruptcy Code is satisfied.

        r.        **Section 1129(d)—Principal Purpose of the Plan is Not Avoidance of Taxes or Section 5 of the Securities Act**

69.      No Governmental Unit has requested that the Bankruptcy Court refuse to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.  As evidenced by its terms, the principal purpose of the Plan is not such avoidance.  Accordingly, the requirements of section 1129(d) of the Bankruptcy Code have been satisfied.

        s.        **Section 1129(e)—Not Small Business Cases**

70.      The Chapter 11 Cases are not small business cases, and accordingly, section 1129(e) of the Bankruptcy Code does not apply to the Chapter 11 Cases.

        t.        **Satisfaction of Confirmation Requirements**

71.      Based upon the foregoing and all other pleadings and evidence proffered or adduced at or prior to the Confirmation Hearing, the Plan and the Debtors, as applicable, satisfy all the requirements for plan confirmation set forth in section 1129 of the Bankruptcy Code.

        u.        **Good Faith**

72.      The Debtors have proposed the Plan in good faith, with the legitimate and honest purpose of maximizing the value of the Debtors' Estates for the benefit of their stakeholders.  The

Plan is the product of extensive collaboration among the Debtors and key stakeholders and accomplishes this goal. Accordingly, the Debtors or the Wind-Down Debtors, as appropriate, have been, are, and will continue acting in good faith if they proceed to (a) consummate the Plan, the Restructuring Transactions, and the agreements, settlements, transactions, and transfers contemplated thereby and (b) take the actions authorized and directed or contemplated by this Confirmation Order. Therefore, the Plan has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code.

> **v.      Disclosure: Agreements and Other Documents**

73.      The Debtors have disclosed all material facts, to the extent applicable, regarding the following: (a) the identity, terms, and compensation of the Plan Administrator, the Monitor, and the Claims Administrator; (b) the method and manner of distributions under the Plan; (c) the adoption, execution, and implementation of the other matters provided for under the Plan, including those involving corporate action to be taken by or required of the Debtors or Wind-Down Debtors, as applicable; (d) the exemption under section 1146(a) of the Bankruptcy Code; (e) the retained Causes of Action; and (f) the adoption, execution, and delivery of all contracts, leases, instruments, securities, releases, indentures, and other agreements related to any of the foregoing.

> **w.      Conditions to Effective Date**

74.      The Plan shall not become effective unless and until the conditions set forth in Article IX.A of the Plan have been satisfied or waived pursuant to Article IX.B of the Plan.

> **x.      Implementation**

75.      All documents and agreements necessary to implement the transactions contemplated by the Plan, including those contained or summarized in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith and at arm's-length, are in the best interests of the Debtors, and shall, upon completion of documentation and execution,

be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law. The documents and agreements are essential elements of the Plan and entry into and consummation of the transactions contemplated by each such document or agreement is in the best interests of the Debtors, the estates, and the Holders of Claims and Interests. The Debtors have exercised reasonable business judgment in determining which documents and agreements to enter into and have provided sufficient and adequate notice of such documents and agreements. The Debtors are authorized to take any action reasonably necessary or appropriate to consummate such agreements and the transactions contemplated thereby.

### y.    Vesting of Assets

76.    Except as otherwise provided in this Confirmation Order, the Plan, or any other agreement, instrument, or other document incorporated therein or in the Plan Supplement, on the Effective Date, any Estate assets remaining shall vest in the Wind-Down Debtors for the purpose of liquidating the Estates and effecting Consummation of the Plan. Such assets shall be held free and clear of all liens, claims, charges, or other encumbrances unless expressly provided otherwise by the Plan or this Confirmation Order. Any distributions to be made under the Plan from such assets shall be made by the Plan Administrator or its designee. The Wind-Down Debtors and the Plan Administrator shall be deemed to be fully bound by the terms of the Plan and the Confirmation Order.

### z.    Treatment of Executory Contracts and Unexpired Leases.

77.    Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, the Plan provides for the assumption or rejection of certain Executory Contracts and Unexpired Leases, effective as of the Effective Date except as otherwise provided therein or another prior or pending notice and/or motion. The Debtors' determinations regarding the assumption or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the

Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, their Estates, Holders of Claims and Interests and other parties in interest in the Chapter 11 Cases.

### aa.    Objections

78.    All objections, responses, reservations, statements, and comments in opposition to the Plan, other than those resolved, adjourned, or withdrawn with prejudice prior to, or on the record at, the Confirmation Hearing are overruled on the merits in all respects.  All withdrawn objections, if any, are deemed withdrawn with prejudice.  All objections to Confirmation not filed and served prior to the deadline for filing objections to the Plan set forth in the Confirmation Hearing Notice, if any, are deemed waived and shall not be considered by the Court.

79.    All parties have had a full and fair opportunity to litigate all issues raised or might have been raised in the objections to Confirmation of the Plan, and the objections have been fully and fairly litigated or resolved, including by agreed-upon reservations of rights as set forth in this Confirmation Order.

## II.  ORDER

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

80.    This Confirmation Order confirms the Plan in its entirety as modified herein.

81.    This Confirmation Order approves the Plan Supplement, including the documents contained therein, as they may be amended through and including the Effective Date in accordance with and as permitted by the Plan.  The terms of the Plan, the Plan Supplement, and the exhibits thereto are incorporated herein by reference and are an integral part of this Confirmation Order; *provided* that, if there is any direct conflict between the terms of the Plan and the terms of this

Confirmation Order, the terms of this Confirmation Order shall control solely to the extent of such conflict.

82.      The terms of the Plan, the Plan Supplement, all exhibits thereto, and this Confirmation Order shall be effective and binding as of the Effective Date on all parties in interest, including, but not limited to, the following:  (a) the Debtors; (c) Holders of General Unsecured Claims; (d) the Prepetition Lenders; (e) the Committee; and (f) all holders of Claims and Interests.

83.      The failure to include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document, agreement, or exhibit does not impair the effectiveness of that article, section, or provision; it being the intent of the Bankruptcy Court that the Plan, the Plan Supplement, and any related document, agreement, or exhibit are approved in their entirety.

**A.      Objections**

84.      To the extent that any objections (including any reservations of rights contained therein) to Confirmation have not been withdrawn, waived, or settled before entry of this Confirmation Order, are not cured by the relief granted in this Confirmation Order, or have not been otherwise resolved as stated on the record of the Confirmation Hearing, all such objections (including any reservation of rights contained therein) are hereby overruled in their entirety and on their merits in all respects.

**B.      Plan Modifications**

85.      In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are presumed to accept the Plan, subject to modifications, if any.  No Holder of a Claim who has voted to accept the Plan shall be permitted to change its vote as a consequence of the Plan or Plan Supplement modifications.  All modifications to the Plan or Plan

Supplement made after the Voting Deadline are hereby approved pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

## C.      Findings of Fact and Conclusions of Law

86.      The findings of fact and the conclusions of law set forth in this Confirmation Order constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014.  All findings of fact and conclusions of law announced by the Bankruptcy Court at the Confirmation Hearing in relation to Confirmation, including the Confirmation Ruling, are hereby incorporated into this Confirmation Order.  To the extent that any of the following constitutes findings of fact or conclusions of law, they are adopted as such.  To the extent any finding of fact or conclusion of law set forth in this Confirmation Order (including any findings of fact or conclusions of law announced by the Bankruptcy Court at the Confirmation Hearing and incorporated herein) constitutes an order of this Court, it is adopted as such.

## D.      Post-Confirmation Modification of the Plan

87.      Subject to the limitations and terms contained in Article X.A and B of the Plan, the Debtors are hereby authorized to amend or modify the Plan at any time prior to the substantial consummation of the Plan, but only in accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, without further order of this Court, subject to the consent rights in the Plan.

## E.      Plan Classification Controlling

88.      The terms of the Plan shall solely govern the classification of Claims and Interests for purposes of the distributions to be made thereunder and the classifications set forth on the ballots tendered to or returned by the Holders of Claims or Interests in connection with voting on the Plan:  (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent and in no event shall be deemed to modify or otherwise affect the actual

classification of Claims and Interests under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtors except for voting purposes.

**F.     General Settlement of Claims and Interests**

89.     Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies resolved pursuant to the Plan.  All distributions made to Holders of Allowed Claims and Interests in any Class are intended to be and shall be final.

**G.     Restructuring Transactions**

90.     On the Effective Date, the applicable Debtors or the Wind-Down Debtors shall enter into any transaction and shall take any actions as may be necessary or appropriate to effect the transactions described herein, including, as applicable, the issuance of all securities, notes, instruments, certificates, and other documents required to be issued pursuant to the Plan, one or more intercompany mergers, consolidations, amalgamations, arrangements, continuances, restructurings, conversions, dispositions, dissolutions, transfers, liquidations, spinoffs, intercompany sales, purchases, or other corporate transactions (collectively, the "Restructuring Transactions").  The actions to implement the Restructuring Transactions may include:  (a) the execution and delivery of appropriate agreements or other documents of merger, consolidation, amalgamation, arrangement, continuance, restructuring, conversion, disposition, dissolution, transfer, liquidation, spinoff, sale, or purchase containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to

which the applicable Entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable Entities agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, formation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or provincial law; and (d) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with the Plan; *provided*, *however*, that no such restructuring transactions may violate the terms of any Executory Contract or Unexpired Lease assumed by the Debtors.

## H.    Corporate Action

91.    On the Effective Date, all actions contemplated under the Plan, regardless of whether taken before, on or after the Effective Date, shall be deemed authorized and approved in all respects, including:  (1) implementation of the Restructuring Transactions and (2) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date).  All matters provided for in the Plan or deemed necessary or desirable by the Debtors before, on, or after the Effective Date involving the corporate structure of the Debtors or the Wind-Down Debtors, and any corporate action required by the Debtors or the Wind-Down Debtors in connection with the Plan or corporate structure of the Debtors or Wind-Down Debtors shall be deemed to have occurred and shall be in effect on the Effective Date, without any requirement of further action by the security holders, directors, manages, or officers of the Debtors or the Wind-Down Debtors.  Before, on, or after the Effective Date, the appropriate officers of the Debtors or the Wind-Down Debtors, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or

desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Wind-Down Debtors.  The authorizations and approvals contemplated by this Article IV shall be effective notwithstanding any requirements under non-bankruptcy law.

**I.      Vesting of Assets in the Wind-Down Debtors and Continued Corporate Existence**

92.      Except as otherwise provided in the Plan, or any agreement, instrument, or other document incorporated herein or therein, on the Effective Date, the assets of the Debtors shall vest in the Wind-Down Debtors for the purpose of liquidating the Estates, free and clear of all Liens, Claims, charges, or other encumbrances.  On and after the Effective Date, the Debtors and the Wind-Down Debtors may (at the direction of the Plan Administrator) use, acquire, or dispose of property, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

93.      Except as otherwise provided in the Plan or this Confirmation Order, at least one Debtor shall continue in existence after the Effective Date as the Wind-Down Debtors for purposes of (a) winding down the Debtors' businesses and affairs as expeditiously as reasonably possible and liquidating any assets held by the Wind-Down Debtors after the Effective Date and after consummation of the Sale Transaction, (b) performing their obligations under the Purchase Agreement or any transition services agreement entered into on or after the Effective Date by and between the Wind-Down Debtors and the Purchasers, (c) resolving any Disputed Claims, (d) making distributions on account of Allowed Claims in accordance with the Plan, (e) filing appropriate tax returns, and (f) administering the Plan in an efficacious manner.  The Wind-Down Debtors shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (1) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court, and (2) all matters pending in any courts, tribunals, forums, or administrative proceedings

outside of the Bankruptcy Court, in each case without the need or requirement for the Plan Administrator to file motions or substitutions of parties or counsel in each such matter.

94.     On the Effective Date, any Estate non-Cash assets remaining shall vest in the Wind-Down Debtors for the purpose of liquidating the Estates and Consummating the Plan.  Such assets shall be held free and clear of all liens, claims, and interests of Holders of Claims and Interests, except as otherwise provided in the Plan.  Any distributions to be made under the Plan from such assets shall be made by the Plan Administrator or its designee.  The Wind-Down Debtors and the Plan Administrator shall be deemed to be fully bound by the terms of the Plan and the Confirmation Order.  Notwithstanding anything herein to the contrary, the Prepetition Secured Parties shall retain any valid and enforceable liens and/or security interests in any Prepetition Collateral and/or Postpetition Collateral.

**J.      Plan Administrator**

95.     The Plan Administrator shall retain and have all the rights, powers, and duties necessary to carry out his or her responsibilities under this Plan and as otherwise provided in the Confirmation Order.

96.     The Plan Administrator shall act for the Wind-Down Debtors in the same fiduciary capacity as applicable to a board of directors and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same).  On the Effective Date, the authority, power, and incumbency of the persons acting as directors and officers of the Wind-Down Debtors shall be deemed to have resigned, solely in their capacities as such, and a representative of the Plan Administrator shall be appointed as the sole manager and sole officer of the Wind-Down Debtors and shall succeed to the powers of the Wind-Down Debtors' directors and officers.  From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the

Wind-Down Debtors.  For the avoidance of doubt, the foregoing shall not limit the authority of the Wind-Down Debtors or the Plan Administrator, as applicable, to continue the employment any former manager or officer, including pursuant to the Purchase Agreement or any transition services agreement entered into on or after the Effective Date by and between the Wind-Down Debtors and the Purchasers.

## K.  Plan Implementation Authorization

97.     The Debtors, the Wind-Down Debtors, or the Plan Administrator, as the case may be, and their respective directors, officers, members, agents, and attorneys, financial advisors, and investment bankers are authorized and empowered from and after the date hereof to negotiate, execute, issue, deliver, implement, file, or record any contract, instrument, release, or other agreement or document related to the Plan, as the same may be modified, amended and supplemented, and to take any action necessary or appropriate to implement, effectuate, consummate, or further evidence the Plan in accordance with its terms and the terms hereof, or take any or all corporate actions authorized to be taken pursuant to the Plan or this Confirmation Order, whether or not specifically referred to in the Plan or any exhibit thereto, without further order of the Bankruptcy Court.  To the extent applicable, any or all such documents shall be accepted upon presentment by each of the respective state filing or recording offices and filed or recorded in accordance with applicable state law and shall become effective in accordance with their terms and the provisions of state law.  Pursuant to section 303 of the General Corporation Law of the State of Delaware and any comparable provision of the business corporation laws of any other state, as applicable, no action of the Debtors' boards of directors or the Wind-Down Debtors will be required to authorize the Debtors or the Wind-Down Debtors, as applicable, to enter into, execute and deliver, adopt or amend, as the case may be, any such contract, instrument, release, or other agreement or document related to the Plan, and following the Effective Date, each

of the Plan documents will be a legal, valid, and binding obligation of the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, enforceable against the Debtors, the Wind-Down Debtors, and the Plan Administrator, in accordance with the respective terms thereof.

## L.   Cancellation of Securities and Agreements

98.   Upon the Effective Date:  (a) the obligations of the Debtors under the Prepetition Financing Documents and any other certificate, Security, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are Reinstated pursuant to the Plan) shall be canceled solely as to the Debtors and their affiliates, and the Wind-Down Debtors shall not have any continuing obligations thereunder; and (b) the obligations of the Debtors and their affiliates pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically Reinstated pursuant to the Plan) shall be released.

## M.   Wind Down and Dissolution

99.   On and after the Effective Date, the Plan Administrator will be authorized to implement the Plan and any applicable orders of the Bankruptcy Court, and the Plan Administrator shall have the power and authority to take any action necessary to Wind Down and dissolve the Estates.  As soon as practicable after the Effective Date, the Plan Administrator shall cause the

Debtors to comply with, and abide by, the terms of the Purchase Agreement and take such other actions as the Plan Administrator may determine to be necessary or desirable to carry out the purposes of the Plan.  Except to the extent necessary to complete the Wind Down of any remaining assets or operations from and after the Effective Date the Debtors (1) for all purposes shall be deemed to have withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, (2) shall be deemed to have canceled pursuant to this Plan all Interests, and (3) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date.  The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Plan Administrator.

**N.     Approval of Consents and Authorization to Take Acts Necessary to Implement Plan**

100.    This Confirmation Order shall constitute all authority, approvals, and consents required, if any, by the laws, rules, and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, the Disclosure Statement, and any documents, instruments, securities, or agreements, and any amendments or modifications thereto.

**O.     The Releases, Injunction, Exculpation, and Related Provisions Under the Plan**

101.    As discussed in detail in the Disclosure Statement, the Plan, and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the

Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan.  The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates.  Subject to Article VI of the Plan, all distributions made to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

102.     The following releases, injunctions, exculpations, and related provisions set forth in Article VIII of the Plan are incorporated herein in their entirety, are hereby approved and authorized in all respects, are so ordered, and shall be immediately effective on the Effective Date without further order or action on the part of this Court or any other party:

     a.     *Release by the Debtors*

103.     **Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is deemed to be hereby conclusively, absolutely, irrevocably, and forever released by each and all of the Debtors, the Wind-Down Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever,**

including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Wind-Down Debtors, or their Estates, as applicable, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity, contract, tort or otherwise, that the Debtors, the Wind-Down Debtors, or their Estates or affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Wind-Down Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Debtors' capital structure, management, ownership, or operation thereof, the Prepetition Financing Documents or any draws thereunder, the Restructuring Transactions, the sale and marketing process, the Store Closing Sales, the Wind Down, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the Sale Transaction, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event,

or other occurrence taking place on or before the Effective Date or relating to any of the forgoing.

104.     Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this Article VIII by the Debtors, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this Article VIII is:   (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of such Claims; (c) in the best interests of the Debtors and all Holders of Claims and Interests;(d) fair, equitable, and reasonable;(e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors or Wind-Down Debtors or their respective Estates asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

b.     *Release of Liens*

105.     Except as otherwise provided in the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date and required to be satisfied pursuant to the Plan, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with Article III.B.1 of the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, compromised, and satisfied, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert

automatically to the applicable Debtor and its successors and assigns.  Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Wind-Down Debtors to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

   c. *Third-Party Release.*

   106. Except as otherwise expressly set forth in the Plan or this Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each of the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released each Debtor, Wind-Down Debtor, and Released Party from any and all any and all Claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity, contract, tort or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Wind-Down Debtors, or their Estates, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole

or in part, the Debtors, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Wind-Down Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Debtors' capital structure, management, ownership, or operation thereof, the Prepetition Financing Documents or any draws thereunder, the Restructuring Transactions, the sale and marketing process, the Store Closing Sales, the Wind Down, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the Sale Transaction, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date or relating to any of the forgoing.

107.    Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this Article VIII, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this Article VIII is:  (1) in exchange for the good and valuable consideration

provided by the Released Parties; (2) a good-faith settlement and compromise of such Claims; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) an absolute and complete bar to any of the Debtors or Wind-Down Debtors or their respective Estates conveying direct or derivative standing to any person or entity to pursue any claim, Causes of Action or liability against any Released Party, or asserting any claim, Causes of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

108.    Notwithstanding anything contained herein to the contrary, the foregoing release does not release (i) any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan, (ii) any claims related to any act or omission that is determined in a Final Order to have constituted willful misconduct, gross negligence, or actual fraud, (iii) the rights of the Debtors with respect to any confidentiality provisions or covenants restricting competition in favor of the Debtors under any employment agreement with a current or former employee of the Debtors, or (iv) the rights of Holders of Allowed Claims or Interests to receive distributions under the Plan.

d.    *Exculpation*

109.    Notwithstanding anything herein to the contrary, the Exculpated Parties shall neither have nor incur, and each Exculpated Party is released and exculpated from, any liability to any Holder of a Cause of Action, Claim, or Interest for any postpetition act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, consummation of the Sale Transaction, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document

created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan or the distribution of property under the Plan or any other related agreement (whether or not such issuance or distribution occurs following the Effective Date), negotiations regarding or concerning any of the foregoing, or the administration of the Plan or property to be distributed hereunder, except for actions determined by a Final Order to have constituted actual fraud or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

e.      *Injunction*

110.    **Except as otherwise provided in the Plan or this Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, Causes of Action, or liabilities that: (a) are subject to compromise and settlement pursuant to the terms of the Plan; (b) have been released by the Debtors pursuant to the Plan; (c) have been released by third parties pursuant to the Plan, (d) are subject to exculpation pursuant to the Plan; or (e) are otherwise discharged, satisfied, stayed or terminated pursuant to the terms of the Plan, are permanently enjoined and precluded, from and after the Effective Date, from taking any of**

the following actions against, as applicable, the Debtors, Wind-Down Debtors, the Released Parties, or the Exculpated Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action or liabilities; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action or liabilities; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or Estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action or liabilities; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action or liabilities unless such Entity has timely asserted such setoff right in a document filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action or liabilities discharged, released, exculpated, or settled pursuant to the Plan.  Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible

**to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article VIII.F of the Plan.**

**P.    Assumption and Cure of Executory Contracts and Unexpired Leases**

111.    The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article V of the Plan (including the procedures regarding the resolution of any and all disputes concerning the assumption or rejection, as applicable, of such Executory Contracts and Unexpired Leases) shall be and hereby are approved in their entirety.

112.    On the Effective Date, except as otherwise provided herein, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned, including any employee benefit plans (other than the Stage Stores Inc. Retirement Plan), severance plans, and other Executory Contracts under which employee obligations arise, shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease:  (1) is specifically described in the Plan as to be assumed in connection with confirmation of the Plan, is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan or the Plan Supplement, or otherwise is specifically described in the Plan to not be rejected; (2) is subject to a pending motion to assume such Unexpired Lease or Executory Contract as of the Confirmation Date (unless the counterparty to such Unexpired Lease or Executory Contract and the Debtors agree otherwise); (3) is to be assumed by the Debtors or assumed by the Debtors and assigned to another third party, as applicable, in connection with the any sale transaction; or (4) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions, assignments, and rejections, including the assumption of the Executory Contracts or Unexpired Leases as provided in the Plan

Supplement, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  For the avoidance of

doubt, such assumptions, assignments, and rejections will be effective on the Effective Date of the

Plan.

113.    The Stage Stores Inc. Retirement Plan will be terminated in accordance with

Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA"), unless it is assumed

by a third party.

## Q.    Provisions Governing Distributions

114.    The distribution provisions of Article VI of the Plan shall be and hereby are

approved in their entirety.  Except as otherwise set forth in the Plan or this Confirmation Order,

the Debtors or the Wind-Down Debtors, as applicable, shall make all distributions required under

the Plan.  The timing of distributions required under the Plan or this Confirmation Order shall be

made in accordance with and as set forth in the Plan or this Confirmation Order, as applicable.

## R.    Release of Liens

115.    Except as otherwise specifically provided in the Plan, this Confirmation Order, or

in any contract, instrument, release, or other agreement or document created pursuant to the Plan,

on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan,

all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the

Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder

of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the

Wind-Down Debtors and their successors and assigns, in each case, without any further approval

or order of the Bankruptcy Court and without any action or Filing being required to be made by

the Debtors or Wind-Down Debtors.   The Prepetition Agents shall execute and deliver all

documents reasonably requested by the Wind-Down Debtors or the Plan Administrator to evidence

the release of such mortgages, deeds of trust, Liens, pledges, and other security interests and shall

46

authorize the Wind-Down Debtors to file UCC-3 termination statements (to the extent applicable) with respect thereto.

**S.      Post-Confirmation Notices and Bar Dates**

116.     In accordance with Bankruptcy Rules 2002 and 3020(c), no later than ten (10) Business Days after the Effective Date, the Wind-Down Debtors or the Plan Administrator, as applicable, must cause notice of Confirmation and the occurrence of the Effective Date (the "Notice of Confirmation") to be filed on the docket and be served by United States mail, first-class postage prepaid, by hand, by overnight courier service, or by electronic service to all parties served with the Confirmation Hearing Notice; *provided* that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed a Confirmation Hearing Notice but received such notice returned marked as "undeliverable as addressed," "moved, left no forwarding address," "forwarding order expired," or similar language, unless such Entity has informed the Debtors in writing of or the Debtors are otherwise aware of such Entity's new address.  For those parties receiving electronic service, filing on the docket is deemed sufficient to satisfy such service and notice requirements.

117.     To supplement the notice procedures described in the preceding sentence, no later than ten (10) Business Days after the Effective Date, the Wind-Down Debtors must cause the Notice of Confirmation, modified for publication, to be published on one occasion in *The New York Times*.  Mailing and publication of the Notice of Confirmation in the time and manner set forth in this paragraph will be good, adequate, and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c). No further notice is necessary.

118.     The Notice of Confirmation will have the effect of an order of the Bankruptcy Court, will constitute sufficient notice of the entry of this Confirmation Order to filing and

recording officers, and will be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.

119.    Except as otherwise provided in the Plan, requests for payment of Administrative Claims must be Filed no later than the Administrative Claims Bar Date.  Holders of Administrative Claims that are required to File and serve a request for such payment of such Administrative Claims that do not file and serve such a request on or before the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, any purchasers of their assets, or their respective property, and such Administrative Claims shall be deemed compromised, settled, and released as of the Effective Date.

**T.      Notice of Subsequent Pleadings**

120.    Except as otherwise provided in the Plan or in this Confirmation Order, notice of all subsequent pleadings in the Chapter 11 Cases after the Effective Date will be limited to the following parties:  (a) the Wind-Down Debtors and their counsel; (b) the U.S. Trustee; (c) the Plan Administrator, (d) the Prepetition Lenders, (e) any party known to be directly affected by the relief sought by such pleadings; and (f) any party that specifically requests additional notice in writing to the Debtors or Wind-Down Debtors, as applicable, or files a request for notice under Bankruptcy Rule 2002 after the Effective Date.  The Notice and Claims Agent shall not be required to file updated service lists.

**U.      Section 1146 Exemption**

121.    To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto, including the issuance, transfer or exchange of any security under the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the

appropriate state or local governmental officials or agents shall forgo the collection of any such

tax or governmental assessment and accept for filing and recordation any of the foregoing

instruments or other documents pursuant to such transfers of property without the payment of any

such tax, recordation fee, or governmental assessment.

## V.     Preservation of Causes of Action

122.    Except as otherwise provided in the Plan or this Confirmation Order or in any

contract, instrument, release or other agreement entered into or delivered in connection with the

Plan, in accordance with section 1123(b)(3) of the Bankruptcy Code, the Wind-Down Debtors

shall have vested in them as of the Effective Date, and the Wind-Down Debtors shall retain and

may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action,

whether arising before or after the Petition Date, including any actions described in the Schedule

of Retained Causes of Action, and the Wind-Down Debtors' rights to commence, prosecute, or

settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective

Date, other than the Causes of Action released by the Debtors pursuant to the releases and

exculpations contained in the Plan, including as set forth in Article VIII thereof.

## W.     Reports

123.    Except as required under the Cash Collateral Order (in respect of the Prepetition

Secured Parties), after entry of this Confirmation Order, the Debtors or Wind-Down Debtors, as

applicable, shall have no obligation to file with the Court, serve on any parties, or otherwise

provide any party with any other report that the Debtors or Wind-Down Debtors, as applicable,

were obligated to provide under the Bankruptcy Code or an order of the Court, including

obligations to provide (a) any reports to any parties otherwise required under the "first" and

"second" day orders entered in these Chapter 11 Cases and (b) monthly operating reports (even

for those periods for which a monthly operating report was not filed before the Confirmation Date);

*provided* that the Debtors or Wind-Down Debtors, as applicable, will comply with the U.S. Trustee's quarterly reporting requirements.  The Wind-Down Debtors or the Plan Administrator, as applicable, shall no longer have the obligation to file quarterly reports with respect to a Debtor once such Debtor's case is converted, dismissed or a final decree has been entered by the Court.

## X.      Effectiveness of All Actions

124.    Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan shall be effective on, before, or after the Effective Date pursuant to this Confirmation Order, without further application to, or order of the Court, or further action by the Debtors, the Wind-Down Debtors, and/or the Plan Administrator and their respective directors, officers, members, or stockholders, and with the effect that such actions had been taken by unanimous action of such officers, directors, managers, members, or stockholders.

## Y.      Binding Effect

125.    On the date of and after entry of this Confirmation Order and subject to the occurrence of the Effective Date, the terms of the Plan, the final versions of the documents contained in the Plan Supplement, and this Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors and any and all Holders of Claims or Interests (irrespective of whether the Holders of such Claims or Interests accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunction described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims and Interests shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or Interest has voted on the Plan.

126.    Pursuant to section 1141 of the Bankruptcy Code, subject to the occurrence of the Effective Date and subject to the terms of the Plan and this Confirmation Order, all prior orders

entered in the Chapter 11 Cases, all documents and agreements executed by the Debtors as authorized and directed thereunder and all motions or requests for relief by the Debtors pending before this Court as of the Effective Date shall be binding upon and shall inure to the benefit of the Debtors, the Wind-Down Debtors, Plan Administrator, and each of their respective successors and assigns.

127.    The Plan, all documents and agreements executed by the Debtors in connection therewith, this Confirmation Order, and all prior orders of the Court in the Chapter 11 Cases shall be binding against and binding upon and shall not be subject to rejection or avoidance by any Chapter 7 or Chapter 11 trustee appointed in any of the Chapter 11 Cases and the Plan Administrator.

**Z.      Directors, Officers and Managers**

128.    As of the Effective Date, the existing boards of directors or boards of managers of the Debtors shall be dissolved without any further action required on the part of the Debtors or the Debtors' officers, directors, shareholders, and members and any all remaining officers, directors, managers, or managing members, with the exception of certain officers of each Debtor shall be dismissed without any further action required on the part of any such Debtor, the shareholders of such Debtor, the officers and directors of such Debtor, or the members of such Debtor, *provided that* the Wind-Down Debtors and the Plan Administrator, as applicable, may enter into agreements for the continued employment of certain employees on reasonable terms, if reasonably necessary to conduct their remaining business.

129.    The Debtors shall pay any outstanding U.S. Trustee Fees, pursuant to section 1930(a) of the Judicial Code, in full on the Effective Date, and the Wind-Down Debtors or the Plan Administrator shall continue to pay such fees until the Chapter 11 cases are converted, dismissed, or closed, whichever occurs first.

## AA. Claims Reconciliation Process

130.    The procedures and responsibilities for, and costs of, reconciling Disputed Claims shall be as set forth in the Plan or as otherwise ordered by the Court.

## BB. Professional Compensation and Reimbursement Claims and Professional Fee Escrow Account

131.    Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors or the Wind-Down Debtors. The Debtors and Wind-Down Debtors (as applicable) shall pay, within ten business days after submission of a detailed invoice to the Debtors or Wind-Down Debtors (as applicable), such reasonable claims for compensation or reimbursement of expenses incurred by the Professionals of the Debtors and Wind-Down Debtors (as applicable). If the Debtors or Wind-Down Debtors (as applicable) dispute the reasonableness of any such invoice, the Debtors or Wind-Down Debtors (as applicable) or the affected professional may submit such dispute to the Court for a determination of the reasonableness of any such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code or the Interim Compensation Order in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Court.

**CC.      Nonseverability of Plan Provisions upon Confirmation**

132.      Notwithstanding the possible applicability of Bankruptcy Rules 3020(e), 6004(g), 6004(h), 7062, 9014, or otherwise, the terms and conditions of this Confirmation Order will be effective and enforceable immediately upon its entry.  Each term and provision of the Plan, and the transactions related thereto as it heretofore may have been altered or interpreted by the Bankruptcy Court is (a) valid and enforceable pursuant to its terms, (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors, and (c) nonseverable and mutually dependent.

**DD.      Waiver or Estoppel**

133.      Except as otherwise set forth in the Plan or this Confirmation Order, each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court before the Confirmation Date.

**EE.      Authorization to Consummate**

134.      The Debtors are authorized to consummate the Plan, including the Restructuring Transactions contemplated thereby, at any time after the entry of this Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to Consummation set forth in Article IX of the Plan.  The substantial consummation of the Plan, within the meaning of sections 1101(2) and 1127 of the Bankruptcy Code, is deemed to occur on the first date, on or after the Effective Date, on which distributions are made in accordance with the terms of the Plan to Holders of any Allowed Claims or Interests (as applicable).

**FF.      Injunctions and Automatic Stay**

135.     Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order (including the Injunction) shall remain in full force and effect in accordance with their terms.

**GG.     NQDC Plan**

136.     The requirements and procedures for continuing the NQDC Plan established in the *Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs and (II) Granting Related Relief* (the "Wages Order") shall survive, and continue after, entry of this Confirmation Order.

137.     For the avoidance of doubt, the Disbursing Agent shall authorized and obligated to continue the NQDC Plan in the ordinary course of business on a post-confirmation basis, to remit all NQDC Plan amounts collected in the ordinary course of business and to access the funds in the rabbi trust for purposes of honoring their obligations under the NQDC Plans in the ordinary course of business, with Fidelity Investments hereby ordered to release the funds in the rabbi trust for such purpose.

**HH.     Comcast Provision**

138.     The requirements and procedures for returning equipment to Comcast established in the *Final Order (I) Authorizing the Debtors to Close Stores and Wind-Down Operations, (II) Authorizing the Debtors to Assume and Perform Under the Consulting Agreement Related to the Store Closings, (III) Approving Procedures for Store Closing Sales, (IV) Approving*

*Modifications to Certain Customer Programs, and (V) Granting Related Relief* (the "Store Closing

Order") shall survive, and continue after, entry of this Confirmation Order.

## II.     Mississippi Department of Revenue

139.    Notwithstanding anything to the contrary in the Plan or Confirmation Order, all

rights of the Mississippi Department of Revenue (the "MDOR") related to any claims filed by the

MDOR are reserved and all parties reserve all rights related thereto.  The MDOR shall not be

required to file any proof of claim, motion or request for payment in order to be paid any

Administrative Claims that arise in the ordinary course of the Debtors' business, including

postpetition taxes incurred by the Debtors after the Petition Date (in accordance with

section 503(b)(1)(B)-(D) of the Bankruptcy Code), which shall be paid in accordance with

section 1129(a)(9)(A) of the Bankruptcy Code or, if not due on the Effective Date, in the ordinary

course of business in accordance with applicable law.  The MDOR may amend its Claims in

accordance with applicable law with respect to (a) a pending audit, or (b) an audit that may be

performed, with respect to any pre or post-petition tax return.

## JJ.     Texas Tax Claims

140.    The following provision applies to those certain Texas taxing authorities identified

in Exhibit 2 of the Cash Collateral Order (collectively, the "Certain Texas Taxing Authorities").

141.    Notwithstanding anything in the Plan or this Confirmation Order to the contrary,

the Certain Texas Taxing Authorities shall retain their rights and the Wind-Down Debtors shall

fulfill their obligations as set forth in paragraph 31 of the Cash Collateral Order.  The liens securing

the Texas Taxing Authorities Claims in the Tax Account (as such term is identified in the Cash

Collateral Order) or in any assets not previously sold, shall not be released and/or discharged until

the Texas Taxing Authority Claims are paid in full.  The Debtors or the Wind Down Debtors, as

applicable, shall pay the Allowed Texas Taxing Authority Claims on the later of (i) the date the

Texas Taxing Authority Claims become due pursuant to the Texas Tax Code (subject to any applicable extensions, grace periods, or similar rights thereunder) and (ii) the Effective Date (or as soon as reasonably practicable thereafter). The Certain Texas Taxing Authorities may amend their respective Proofs of Claims in accordance with applicable law to reflect the results of the actual assessment of the current year's ad valorem taxes without agreement with the Wind-Down Debtors or approval of the Court. Further, nothing in the Plan or this Confirmation Order shall be construed as a determination as to whether the Certain Texas Taxing Authorities are entitled to interest on any prepetition or postpetition Claims, or the amount or rates of such interest. The Debtors and the Certain Texas Taxing Authorities reserve all rights with respect to any Claims for prepetition or postpetition interest on any Claims made by the Certain Texas Taxing Authorities.

**KK.    Texas Comptroller Claims**

142.    Notwithstanding anything to the contrary in the Plan or the Confirmation Order, all rights of the Texas Comptroller of Public Accounts (the "Texas Comptroller") related to any tax claims filed by the Texas Comptroller (including claims against any non-Debtor third parties) are reserved and all parties reserve all rights related thereto. The Texas Comptroller shall not be a Releasing Party. The Texas Comptroller shall not be required to file any proof of claim, motion or request for payment in order to be paid any Administrative Claims for taxes that arise in the ordinary course of the Debtors' business, including postpetition taxes incurred by the Debtors after the Petition Date (in accordance with section 503(b)(1)(B)-(D) of the Bankruptcy Code), which shall be paid in accordance with section 1129(a)(9)(A) of the Bankruptcy Code or, if not due on the Effective Date, in the ordinary course of business in accordance with applicable law. The Texas Comptroller's priority tax claims will be paid in cash, in full, upon allowance, or alternatively, in equal monthly installments in accordance with section 1129(a)(9)(C) over a period ending not later than May 12, 2025. The Texas Comptroller may amend its tax Claims in

accordance with applicable law to reflect the results of the actual assessment of tax liabilities without the consent of the Court or the Wind-Down Debtors.  Notwithstanding anything to the contrary in the Plan or Confirmation Order, the Debtors, the Wind-Down Debtors, and the Plan Administrator will retain documents for the four year inspection period set forth in Texas Tax Code § 111.0041(a) (or, for any pending audits, the later of four years or at the time any and all Claim(s) based on such audit are resolved).

143.    The following provisions of this Confirmation Order will govern the treatment of the Texas Comptroller concerning the duties and responsibilities of the Debtors and the Wind-Down Debtors relating to all unclaimed property presumed abandoned under Texas Property Code, Title 6, Chapters 72-76 and other applicable Texas laws (the "Texas Unclaimed Property" and such laws, the "Texas Unclaimed Property Laws"):

a.    On or within thirty (30) days after the Effective Date, the Debtors or the Wind-Down Debtors as applicable shall review their books and records and turn over to the Texas Comptroller any known Texas Unclaimed Property presumed abandoned before the Petition Date and reflected in property reports delivered by the Debtors to the Texas Comptroller under the Texas Unclaimed Property Laws (the "Reported Unclaimed Property").  With respect to such Reported Unclaimed Property, the Texas Comptroller will not seek payment of any interest or penalty by the Debtors or the Wind-Down Debtors as applicable.

b.    Notwithstanding section 362 of the Bankruptcy Code, after the Effective Date, the Texas Comptroller and its agents may commence an audit of the Debtors in accordance with the Texas Unclaimed Property Laws (the "Texas Unclaimed Property Audit") and pursue recovery of any unremitted Texas Unclaimed Property identified pursuant to the Texas Unclaimed Property Audit.  The Debtors or the Wind-Down Debtors as applicable shall cooperate with the auditors to enable them to accurately and timely perform the Texas Unclaimed Property Audit by making the entities' employees, professionals, books, and records available.  Upon completion of the Texas Unclaimed Property Audit, the Texas Comptroller will promptly inform the Debtors or the Wind-Down Debtors, as applicable, that such audit is complete, alleviating the Debtors and the Wind-Down Debtors of the requirement to retain records related to the Texas Unclaimed Property.

c.    The Debtors' and the Wind-Down Debtors' rights and defenses with respect to any allegations and claims asserted against the Debtors or the Wind-Down Debtors arising from or relating to the Texas Unclaimed Property Audit are hereby reserved;

*provided*, *however*, that upon agreement between the Debtors or the Wind-Down Debtors and the Texas Comptroller or a final nonappealable determination by a court or other tribunal with jurisdiction as to the amount of unremitted Texas Unclaimed Property, if any, that is due in connection with the Texas Unclaimed Property Audit, the Debtors or the Wind-Down Debtors shall turn over such unremitted Texas Unclaimed Property to the Texas Comptroller.

d.     The Texas Comptroller may file or amend any Proofs of Claim in these chapter 11 cases following the Effective Date as a result of the filing of any property reports or in the ordinary course of the Texas Unclaimed Property Audit.

**LL.    Chubb Companies' Insurance Contracts**

144.    For the avoidance of doubt, notwithstanding anything to the contrary in the Plan, the Plan Supplement, the Purchase Agreement, the Sale Order, the Confirmation Order, or any other document related to any of the foregoing, the following provisions shall apply to any insurance policies that have been issued by ACE American Insurance Company and Federal Insurance Company and each of their U.S.-based affiliates and successors (collectively, the <u>Chubb Companies</u>") to, or that provide coverage to, any of the Debtors at any time, and all agreements, letters of indemnity, documents or instruments relating thereto entered into by any of the Chubb Companies, including ESIS, Inc. (collectively, the "<u>Chubb Insurance Contracts</u>"):

a.    nothing shall permit or otherwise effect a sale, assignment or any other transfer of the Chubb Insurance Contracts and/or any rights, benefits, claims, rights to payments, or recoveries under or relating thereto without the prior express written consent of the Chubb Companies;

b.    nothing shall alter, modify, amend, affect, impair or prejudice the legal, equitable or contractual rights, obligations, and defenses of the Chubb Companies, the Debtors (or, after the Effective Date, the Wind-Down Debtors), or any other individual or entity, as applicable, under any of the Chubb Insurance Contracts and any such rights and obligations shall be determined under the Chubb Insurance Contracts and applicable non-bankruptcy law; and to the extent the Debtors seek coverage or payment under any Chubb Insurance Contracts, the Chubb Companies shall be entitled to payment or reimbursement in full from the applicable Debtor or Wind-Down Debtor, as applicable, to the extent required under the applicable Chubb Insurance Contract, in the ordinary course and without the need for the Chubb Companies to file a Proof of Claim, Administrative Claim or to object to any cure amount; provided that any and all rights of the Debtors to dispute such payments or reimbursements are expressly reserved except that any payments made to the Chubb Companies at any time shall not be subject

to avoidance under the bankruptcy code or applicable law; provided that the Chubb Companies shall not bring a cause of action against or otherwise directly pursue the Debtors' current or former directors, managers, officers, employees or Professionals for such payments or reimbursements arising under the Chubb Insurance Contracts, except for actions determined by Final Order to have constituted actual fraud or gross negligence or to the extent necessary with respect to subrogation or similar claims; and

c.   the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in Article VIII.F. of the Plan, if and to the extent applicable, shall be deemed lifted without further order of this Bankruptcy Court, solely to permit: (I) claimants with valid workers' compensation claims or direct action claims against the Chubb Companies under applicable non-bankruptcy law to proceed with their claims; (II) the Chubb Companies to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Bankruptcy Court, (A) workers' compensation claims, (B) claims where a claimant asserts a direct claim against the Chubb Companies under applicable non-bankruptcy law, or an order has been entered by this Bankruptcy Court granting a claimant relief from the automatic stay to proceed with its claim, and (C) all costs in relation to each of the foregoing; and (III) the Chubb Companies to cancel any Chubb Insurance Contracts, and take, in their sole discretion, other actions relating to the Chubb Insurance Contracts (including setting off amounts due by the Debtors or Wind-Down Debtors against any amounts due to the Debtors or Wind-Down Debtors or against (or otherwise applying) any collateral or security provided by the Debtors or Wind-Down Debtors, regardless of when any such amounts arise, become due or are provided), to the extent permissible under applicable non-bankruptcy law, and in accordance with the terms of the Chubb Insurance Contracts. Upon the Effective Date, based on the foregoing treatment, all Proofs of Claim on account of or in respect of the Chubb Insurance Contracts shall be deemed withdrawn automatically and without further notice to or action by the Court.

## MM.   Third-Party Release Opt Out

145.    For the avoidance of doubt and notwithstanding anything to the contrary contained herein or in the Plan, any party in interest that timely (including any extensions agreed by the Debtors) filed a pleading on the docket including an election to opt out of the Third-Party Release shall not be considered a Releasing Party pursuant to the Plan, irrespective of whether such party submitted a Ballot or form electing to opt out of the Third-Party Release.

## NN.   Certain Landlord Matters

146.    For the avoidance of doubt, the injunction of Article VIII.F of the Plan does not enjoin landlords that have opted out of the Third-Party Releases or objected to the Third-Party

Releases from pursuing claims against non-debtor persons or entities arising from the use or occupancy of the leased premises during Store Closing Sales or against applicable insurance providers even if the underlying claim may otherwise be released or enjoined as to the Debtors.

**OO.    LV Legion LLC and Silver City ETR Investors, LLC Provision**

147.    Notwithstanding anything herein to the contrary, on August 31, 2020, Debtors' leases with LV Legion, LLC and Silver City ETR Investors, LLC ("NM Leases"), (a) are rejected and terminated; and (b) the automatic stay is terminated as to the NM Leases and the leased premises described therein..

**PP.    LaSalle Shopping Center LLC Provision**

148.    Notwithstanding the Limited Objection to Plan of Reorganization filed by LaSalle Shopping Center LLC, which was withdrawn by announcement at the hearing on confirmation of the plan, LaSalle Shopping Center LLC is a Releasing Party and a Released Party to the extent provided for in the Plan and this Confirmation Order.  Withdrawal of the Limited Objection is without prejudice to LaSalle Shopping Center LLC seeking allowance of an administrative claim as provided for in the Plan and this Confirmation Order.

**QQ.    Dissolution of the Creditors' Committee**

149.    On the Effective Date, the Committee shall dissolve automatically and the members thereof shall be released and discharged from all rights, duties, responsibilities, and liabilities arising from, or related to, the Chapter 11 Cases and under the Bankruptcy Code, except for the limited purpose of prosecuting requests for payment of Professional Fee Claims for services and reimbursement of expenses incurred by the Committee and its Professionals.  The Wind-Down Debtors shall not be responsible for paying any fees or expenses incurred by the Committee Members or advisors to the Committee after the Effective Date except for the limited purposes identified above.

**RR.     Effect of Non-Occurrence of Conditions to the Effective Date**

150.     If the Effective Date of the Plan does not occur, (a) the Plan shall be null and void in all respects other than as set forth herein and (b) nothing contained in the Plan or the Disclosure Statement shall:  (i) constitute a waiver or release of any Claims by the Debtors, any Holders, or any other Entity; (ii) prejudice in any manner the rights of the Debtors, any Holders, or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders, or any other Entity in any respect.

**SS.     Effect of Conflict Between Plan, the Disclosure Statement, the Plan Supplement, and Confirmation Order**

151.     Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement or the Plan Supplement (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.

**TT.     Retention of Jurisdiction**

152.     This Court retains jurisdiction over the Chapter 11 Cases, all matters arising out of or related to the Chapter 11 Cases and the Plan, the matters set forth in Article XI and other applicable provisions of the Plan.

**UU.     Waiver of 14-Day Stay**

153.     Notwithstanding Bankruptcy Rule 3020(e), and to the extent applicable, Bankruptcy Rules 6004(h), 7062, and 9014, this Confirmation Order is effective immediately and not subject to any stay.

**VV.     Final Order**

154.     This Confirmation Order is a Final Order and the period in which an appeal must be filed will commence upon entry of this Confirmation Order.

**Signed:  August 14, 2020.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| STAGE STORES, INC., *et al.*,[1] | ) | Case No. 20-32564 (DRJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## JOINT SECOND AMENDED CHAPTER 11 PLAN OF
## STAGE STORES, INC. AND SPECIALTY RETAILERS, INC.

**JACKSON WALKER L.L.P.**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
Kristhy M. Peguero (TX Bar No. 24102776)
Veronica A. Polnick (TX Bar No. 24079148)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:    (713) 752-4200
Facsimile:    (713) 752-4221
Email:        mcavenaugh@jw.com
              jwertz@jw.com
              kpeguero@jw.com
              vpolnick@jw.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

Dated:  August 12, 2020

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Neil E. Herman (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        joshua.sussberg@kirkland.com
              neil.herman@kirkland.com

-and-

Joshua M. Altman (admitted *pro hac* vice)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        josh.altman@kirkland.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Stage Stores, Inc. (6900) and Specialty Retailers, Inc. (1900).  The Debtors' service address is:  2425 West Loop South, Houston, Texas 77027.

# TABLE OF CONTENTS

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW ........................................................................................................................ 1

    A.    Defined Terms ............................................................................................................. 1
    B.    Rules of Interpretation .............................................................................................. 10
    C.    Computation of Time ................................................................................................ 10
    D.    Governing Law .......................................................................................................... 11
    E.    Reference to Monetary Figures ................................................................................. 11
    F.    Reference to the Debtors or the Wind-Down Debtors .............................................. 11
    G.    Nonconsolidated Plan ................................................................................................ 11

ARTICLE II. ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, AND PRIORITY TAX CLAIMS .................................................................................................................................... 11

    A.    Administrative Claims and Priority Tax Claims. ...................................................... 11
    B.    Professional Fee Claims ............................................................................................ 12
    C.    Statutory Fees ............................................................................................................ 13

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ...................... 13

    A.    Classification of Claims and Interests ...................................................................... 13
    B.    Treatment of Claims and Interests ........................................................................... 14
    C.    Special Provision Governing Unimpaired Claims .................................................... 16
    D.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code ... 16
    E.    Subordinated Claims ................................................................................................. 17
    F.    Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes ...... 17
    G.    Controversy Concerning Impairment ....................................................................... 17

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN ........................................................ 17

    A.    Restructuring Transactions ....................................................................................... 17
    B.    Sale Transaction; Sources of Consideration for Plan Distributions ......................... 18
    C.    Wind-Down Debtors ................................................................................................. 18
    D.    Plan Administrator .................................................................................................... 18
    E.    Wind Down ............................................................................................................... 20
    F.    Plan Administrator Exculpation, Indemnification, Insurance, and Liability Limitation ... 20
    G.    Tax Returns ............................................................................................................... 20
    H.    Dissolution of the Debtors and Wind-Down Debtors .............................................. 20
    I.    Cancellation of Securities and Agreements .............................................................. 21
    J.    Corporate Action ....................................................................................................... 21
    K.    Effectuating Documents; Further Transactions ........................................................ 21
    L.    Section 1146 Exemption ........................................................................................... 21
    M.    Preservation of Causes of Action ............................................................................. 22
    N.    Closing the Chapter 11 Cases ................................................................................... 22

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .............. 23

    A.    Assumption (or Assumption and Assignment) and Rejection of Executory Contracts and Unexpired Leases .................................................................................................. 23
    B.    D&O Liability Insurance Policies ............................................................................. 23
    C.    Indemnification Obligations ...................................................................................... 23
    D.    Claims Based on Rejection of Executory Contracts or Unexpired Leases ............... 25
    E.    Cure of Defaults for Executory Contracts and Unexpired Leases Assumed (or Assumed and Assigned) ........................................................................................................... 25

F.     Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases............26
G.    Preservation of Fiduciary Liabilities Related to Stage Stores Inc. Retirement Plan ......................26
H.    Modifications, Amendments, Supplements, Restatements, or Other Agreements.........................26
I.     Reservation of Rights...................................................................................................................26
J.     Nonoccurrence of Effective Date.................................................................................................27

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS .................................................................27

A.    Timing and Calculation of Amounts to Be Distributed ...............................................................27
B.    Disbursing Agent .........................................................................................................................27
C.    Rights and Powers of Disbursing Agent ......................................................................................27
D.    Delivery of Distributions and Undeliverable or Unclaimed Distributions...................................28
E.    Compliance with Tax Requirements.............................................................................................28
F.     Allocations....................................................................................................................................29
G.    No Postpetition Interest on Claims. ..............................................................................................29
H.    Foreign Currency Exchange Rate. ................................................................................................29
I.     Setoffs and Recoupment ..............................................................................................................29
J.     Claims Paid or Payable by Third Parties......................................................................................29

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND
DISPUTED CLAIMS .................................................................................................................................30

A.    Allowance of Claims....................................................................................................................30
B.    Claims Administration Responsibilities.......................................................................................30
C.    Estimation of Claims ...................................................................................................................30
D.    Adjustment to Claims without Objection .....................................................................................31
E.    Time to File Objections to Claims ...............................................................................................31
F.     Disallowance of Claims ...............................................................................................................31
G.    Amendments to Claims ................................................................................................................31
H.    No Distributions Pending Allowance ...........................................................................................31
I.     Distributions after Allowance ......................................................................................................31
J.     Special Rules for Distributions to Holders of Disputed Claims ...................................................32

ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS ...........................32

A.    Settlement, Compromise, and Release of Claims and Interests ....................................................32
B.    **Release of Liens** .........................................................................................................................32
C.    **Release by the Debtors**................................................................................................................32
D.    **Third-Party Release** ....................................................................................................................33
E.    **Exculpation** ................................................................................................................................34
F.     **Injunction** ..................................................................................................................................35
G.    Preservation of Setoff Rights .......................................................................................................35
H.    Securities and Exchange Commission Considerations...................................................................35
I.     Protections against Discriminatory Treatment. .............................................................................35
J.     Document Retention. ....................................................................................................................36
K.    Reimbursement or Contribution. ..................................................................................................36
L.     Term of Injunctions or Stays........................................................................................................36

ARTICLE IX. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN..............................36

A.    Conditions Precedent ...................................................................................................................36
B.    Waiver of Conditions...................................................................................................................36
C.    Substantial Consummation ..........................................................................................................37
D.    Effect of Nonoccurrence to the Confirmation Date or Effective Date. .........................................37

ARTICLE X. MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN .........................37

A.    Modification and Amendments.....................................................................................................37

B.      Effect of Confirmation on Modifications ..................................................................37
C.      Revocation or Withdrawal of Plan ...........................................................................37

ARTICLE XI. RETENTION OF JURISDICTION ...............................................................................37

ARTICLE XII. MISCELLANEOUS PROVISIONS ...........................................................................39

A.      Immediate Binding Effect ........................................................................................39
B.      Additional Documents ..............................................................................................39
C.      Payment of Statutory Fees. ......................................................................................39
D.      Statutory Committee and Cessation of Fee and Expense Payment ..........................40
E.      Reservation of Rights ...............................................................................................40
F.      Successors and Assigns.............................................................................................40
G.      Notices ......................................................................................................................40
H.      Entire Agreement ......................................................................................................41
I.      Exhibits .....................................................................................................................41
J.      Non-Severability of Plan Provisions ........................................................................41
K.      Votes Solicited in Good Faith ..................................................................................42
L.      Waiver or Estoppel....................................................................................................42
M.      Conflicts....................................................................................................................42

**INTRODUCTION**

Stage Stores, Inc. and Specialty Retailers, Inc., ("Specialty Retailers") as debtors and debtors in possession (collectively, the "Debtors" or "Stage Stores"), in the above-captioned Chapter 11 Cases propose this joint plan pursuant to chapter 11 of the Bankruptcy Code.  The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of the Bankruptcy Court.  This Plan constitutes a separate chapter 11 plan for each Debtor and, unless otherwise set forth herein, the classifications and treatment of Claims and Interests apply to each individual Debtor.

Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, and historical financial information, projections, and future operations, as well as a summary and description of this Plan and certain related matters.  Each Debtor is a proponent of the Plan contained herein within the meaning of section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS AND INTERESTS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

**ARTICLE I.**
**DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME AND GOVERNING LAW**

A.      *Defined Terms*

As used in this Plan, capitalized terms have the meanings ascribed to them below.

1.      "*Administrative Agent*" means Wells Fargo Bank, National Association in its capacity as administrative agent and collateral agent under the Prepetition Credit Agreement.

2.      "*Administrative Claim*" means a Claim for the costs and expenses of administration of the Estates entitled to priority under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date of preserving the Estates and operating the businesses of the Debtors; and (b) Allowed Professional Fee Claims in the Chapter 11 Cases.

3.      "*Administrative Claim Bar Dates*" means the deadline for filing requests for payment of Administrative Claims, which shall be (a) 30 days after the Confirmation Date with respect to Claims that arose before the Confirmation Date; (b) 30 days after the Effective Date with respect to Claims that arose on or after the Confirmation Date but prior to the Effective Date; (c) the deadline for filing requests for payment of Administrative Claims arising under section 503(b)(9) of the Bankruptcy Code as set forth in that certain *Order (I) Setting Bar Dates for Filing Proofs of Claim Including Requests for Payment Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form and Manner for Filing Proofs of Claim, Including Section 503(b)(9) Requests, (IV) Approving Notice of Bar Dates, and (V) Granting Related Relief* [Docket No. 478]; and (d) any other date(s) established by the Bankruptcy Court by which such Claims must be Filed pursuant to court order.  For the avoidance of doubt, nothing in Article VIII.C-F shall preclude any party from asserting an Administrative Claim and the Debtors reserve all rights related thereto.

4.      "*Administrative and Priority Claims Recovery*" means Cash equal to the amount of such Allowed Administrative Claim as set forth in Article II.A herein.

5.      "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

6.      "*AIG Insurance Contracts*" shall mean all insurance policies that have been issued (or provided coverage) at any time by National Union Fire Insurance Company of Pittsburgh, Pa. and/or each of the affiliates and successors (collectively, "AIG") to any of the Debtors (or any of their predecessors) and any agreements, endorsements, addenda, schedules, documents or instruments relating thereto (the "AIG Insurance Contracts").

1

7.        "*Allowed*" means with respect to any Claim, except as otherwise provided in the Plan:  (a) a Claim that is evidenced by a Proof of Claim Filed by the Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or pursuant to a Final Order a Proof of Claim is not or shall not be required to be Filed); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim, as applicable, has been timely Filed; or (c) a Claim Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; *provided* that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that, with respect to such Claim, no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim, as applicable, shall have been Allowed by a Final Order.  Except as otherwise specified in the Plan or any Final Order, and except for any Claim that is Secured by property of a value in excess of the principal amount of such Claims, the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date.  For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim that the Debtors may hold against the Holder thereof, to the extent such Claim may be offset, recouped, or otherwise reduced under applicable law.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court.  Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor or Wind-Down Debtor, as applicable.  For the avoidance of doubt:  (x) a Proof of Claim Filed after the Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-filed Claim; and (y) the Debtors may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable non-bankruptcy law.  "Allow" and "Allowing" shall have correlative meanings.

8.        "*Avoidance Actions*" means any and all actual or potential Causes of Action to avoid a transfer of property or an obligation incurred by the Debtors pursuant to chapter five of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws.  For the avoidance of doubt, Avoidance Actions shall not include any claims transferred to the Purchasers pursuant to the Purchase Agreement.

9.        "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended from time to time.

10.        "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas, Houston Division or such other court having jurisdiction over the Chapter 11 Cases, including, to the extent of the withdrawal of reference under 28 U.S.C. § 157 and/or the General Order of the District Court pursuant to section 151 of title 28 of the United States Code, the United States District Court for the Southern District of Texas.

11.        "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

12.        "*Bar Date*" means, collectively, the dates established by the Bankruptcy Court by which Proofs of Claim must be Filed pursuant to the Bar Date Order.

13.        "*Bar Date Order*" means that certain *Order (A) Setting Bar Dates for Submitting Proofs of Claim, (B) Approving Procedures for Submitting Proofs of Claim, (C) Approving Notice Thereof, and (D) Granting Related Relief* [Docket No. 478].

14.        "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)(6)).

15.        "*Cash*" means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

16.        "*Cash Collateral Order*" means the *Agreed Final Order (I) Authorizing Use of Cash Collateral and Affording Adequate Protection, (II) Modifying the Automatic Stay, and (III) Granting Related Relief* [Docket No. 441].

17.     "*Causes of Action*" means any actions, claims, cross claims, third-party claims, interests, damages, controversies, remedies, causes of action, debts, judgments, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, affirmative defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable directly or derivatively, matured or unmatured, suspected or unsuspected, disputed or undisputed, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law or otherwise. Causes of Action also include: (a) any rights of setoff, counterclaim, or recoupment and any claims under contracts or for breaches of duties imposed by law or in equity; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claims or defenses, including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any Avoidance Action. For the avoidance of doubt, Causes of Action shall not include any claims transferred to the Purchasers pursuant to the Purchase Agreement.

18.     "*Chapter 11 Cases*" means, when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code, and when used with reference to all Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

19.     "*Chubb Companies*" means ACE American Insurance Company, Federal Insurance Company, ESIS Inc., and each of their U.S.-based affiliates and successors.

20.     "*Chubb Insurance Contracts*" shall mean any insurance policies that have been issued by the Chubb Companies to, or that provide coverage to, any of the Debtors at any time, and all agreements, letters of indemnity, documents or instruments relating thereto.

21.     "*Claim*" means any claim, as such term is defined in section 101(5) of the Bankruptcy Code, against a Debtor or a Debtor's Estate.

22.     "*Claims Objection Bar Date*" means the deadline for objecting to a Claim, which shall be on the date that is the later of (a) 120 days after the Effective Date (as may be extended by the Court upon the request of the Debtors or the Wind-Down Debtors) and (b) such other period of limitation as may be specifically fixed by the Debtors or the Wind-Down Debtors, as applicable, and by an order of the Bankruptcy Court for objecting to Claims.

23.     "*Claims Register*" means the official register of Claims maintained by the Notice, Claims, and Balloting Agent.

24.     "*Class*" means a class of Claims or Interests as set forth in Article III of the Plan in accordance with section 1122(a) of the Bankruptcy Code.

25.     "*Committee*" means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code on May 20, 2020 [Docket No. 274].

26.     "*Confirmation*" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

27.     "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

28.     "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to sections 1128 and 1129 of the Bankruptcy Code.

29.     "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

30.     "*Consummation*" means the occurrence of the Effective Date.

31.     "**_Cure Claim_**" means a monetary Claim based upon a Debtor's defaults under any Executory Contract or Unexpired Lease at the time such contract or lease is assumed by such Debtor pursuant to section 365 of the Bankruptcy Code.

32.     "**_Cure Obligations_**" means all (a) Cure Claims and (b) other obligations required to cure any non-monetary defaults (the performance required to cure such non-monetary defaults and the timing of such performance will be described in reasonable detail in a notice of proposed assumption and assignment) under any Executory Contract or Unexpired Lease that is to be assumed by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code.

33.     "**_D&O Liability Insurance Policies_**" means all insurance policies (including any "tail policy") of any of the Debtors for liability of any current or former directors, managers, officers, and members.

34.     "**_Debtors_**" means, collectively:  (a) Stage Stores, Inc. and (b) Specialty Retailers, Inc.

35.     "**_Deficiency Claim_**" means any portion of a Prepetition Secured Claim constituting a general unsecured claim under section 506(a) of the Bankruptcy Code.

36.     "**_Disbursing Agent_**" means the Debtors or the Plan Administrator (as applicable), or the Entity or Entities selected by the Debtors or the Plan Administrator to make or facilitate distributions contemplated under the Plan.

37.     "**_Disclosure Statement_**" means the _Disclosure Statement to the Joint Amended Chapter 11 Plan of Stage Stores, Inc. and Specialty Retailers, Inc._, as may be amended, supplemented or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law and approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

38.     "**_Disputed_**" means, with respect to any Claim or Interest, any Claim or Interest that is not yet Allowed.

39.     "**_Distributable Cash_**" means all Cash, if any, available after giving effect to the Reserves and the Prepetition Secured Claims Recovery, plus any excess Cash from any Reserves not used for the purposes of such Reserve after satisfaction of all claims contemplated by such Reserve (including for the avoidance of doubt, payment in full of Allowed Professional Fee Claims), plus any other Cash available in the Estates.

40.     "**_Distribution Record Date_**" means the record date for purposes of determining which Holders of Allowed Claims or Allowed Interests are eligible to receive distributions under the Plan, which date shall be the first day of the Confirmation Hearing or such other date as is designated in a Final Order of the Bankruptcy Court.

41.     "**_Effective Date_**" means the date that is the first Business Day after the Confirmation Date on which (a) the conditions to the occurrence of the Effective Date have been satisfied or waived pursuant to Article IX.B of the Plan, (b) no stay of the Confirmation Order is in effect, and (c) the Debtors declare the Plan effective.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

42.     "**_Entity_**" means an entity as such term is defined in section 101(15) of the Bankruptcy Code.

43.     "**_Estate_**" means, as to each Debtor, the estate created on the Petition Date for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code and all property (as defined in section 541 of the Bankruptcy Code) acquired by the Debtors after the Petition Date through the Effective Date.

44.     "**_Exculpated Party_**" means collectively, and in each case solely in its capacity as such:  (a) the Debtors; (b) the Committee and each of its members; (c) the Prepetition Secured Parties; (d) the Plan Administrator; and (e) with respect to each of the foregoing Entities in clauses (a) though (d), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers,

equity holders (regardless of whether such interests are held directly or indirectly), predecessors, participants, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

45.     "*Executory Contract*" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under section 365 or 1123 of the Bankruptcy Code.

46.     "*Existing Interests*" means the Interests in Stage Stores, Inc.

47.     "*Federal Judgment Rate*" means the federal judgment interest rate in effect as of the Petition Date calculated as set forth in section 1961 of the Judicial Code.

48.     "*File*" or "*Filed*" means file or filed with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases, or, with respect to the filing of a Proof of Claim or Proof of Interest, the Notice, Claims, and Balloting Agent.

49.     "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari, or move for reargument, reconsideration, or rehearing has expired and no appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing has been timely taken or filed, or as to which any appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice; *provided, however* that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure or any comparable rule of the Bankruptcy Rules may be filed relating to such order shall not cause such order to not be a Final Order.

50.     "*General Unsecured Claim*" means any Claim (including any Deficiency Claims) other than an Administrative Claim (including a Professional Fee Claim), an Other Secured Claim, a Prepetition Secured Claim, a Priority Tax Claim, an Other Priority Claim, or an Intercompany Claim.

51.     "*General Unsecured Claims Recovery*" means any Distributable Cash, if any, after all senior Classes of Claims are paid in full.

52.     "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

53.     "*Holder*" means an Entity holding a Claim or Interest, as applicable.

54.     "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

55.     "*Insurance Company*" means any company or other entity that issued an Insurance Contract, any third party administrator of or for any Insurance Contract, and any respective predecessors, successors and/or affiliates of any of the foregoing.

56.     "*Insurance Contracts*" means all insurance policies that have been issued at any time or provide coverage, benefits or proceeds to any of the Debtors (or their predecessors) and all agreements, letters of indemnity, documents or instruments relating thereto. For the avoidance of doubt, the term Insurance Contracts shall include, but are not limited to, D&O Liability Insurance Policies, insurance policies providing workers' compensation coverage and claims handling agreements.

57.     "*Intercompany Claim*" means any Claim held by a Debtor against another Debtor arising before the Petition Date.

5

58.     "*Intercompany Interest*" means an Interest in one Debtor held by another Debtor.

59.     "*Interest*" means any equity security (as defined in section 101(16) of the Bankruptcy Code) in any Debtor.

60.     "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

61.     "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

62.     "*Notice, Claims, and Balloting Agent*" means Kurtzman Carson Consultants LLC in its capacity as notice, claims, and balloting agent for the Debtors and any successor.

63.     "*Other Priority Claim*" means any Claim, to the extent such Claim has not already been paid during the Chapter 11 Cases, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

64.     "*Other Priority Claims Recovery*" means any Distributable Cash in excess of amounts necessary to satisfy all Allowed Administrative and Priority Claims and Other Secured Claims, if any, and after giving effect to the Administrative and Priority Claims Recovery and Other Secured Claims Recovery.

65.     "*Other Secured Claim*" means any Secured Claim that is not a Prepetition Secured Claim.

66.     "*Other Secured Claims Recovery*" means any Distributable Cash in excess of amounts necessary to satisfy all Allowed Administrative and Priority Claims, if any, and after giving effect to the Administrative and Priority Claims Recovery.

67.     "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

68.     "*Petition Date*" means May 10, 2020, the date on which each of the Debtors commenced the Chapter 11 Cases.

69.     "*Plan*" means this joint chapter 11 plan (as it may be amended or supplemented from time to time, including all exhibits, schedules, supplements, appendices, annexes and attachments hereto).

70.     "*Plan Administrator*" means the Person or Entity, or any successor thereto, designated by the Debtors in consultation with the Committee, who will be disclosed at or prior to the Confirmation Hearing, to have all powers and authorities set forth in Article IV.E of this Plan.

71.     "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed by the Debtors no later than fourteen days before the Confirmation Hearing or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, including the following, as applicable: (a) Schedule of Assumed Executory Contracts and Unexpired Leases; (b) Schedule of Retained Causes of Action; (c) the identity and terms of compensation of the Plan Administrator; (d) any transition services agreement between the Purchasers and the Debtors; and (e) any other necessary documentation related to the Sale Transaction or other Restructuring Transactions.

72.     "*Post Effective Date Reserve*" means a reserve established by the Plan Administrator in accordance with Article IV.D hereof in an amount to satisfy the Wind Down Budget.

73.     "*Prepetition Agents*" means the Administrative Agent together with the Term Agent.

74.     "*Postpetition Collateral*" has the meaning ascribed to it in the Cash Collateral Order.

6

75.    "*Prepetition Collateral*" has the meaning ascribed to it in the Cash Collateral Order.

76.    "*Prepetition Credit Agreement*" means: (a) that certain Second Amended and Restated Credit Agreement, first dated as of October 6, 2014 (as may be amended, modified, restated, or supplemented and in effect from time-to-time), by and among: (i) the Debtors that comprised the "Loan Parties" thereunder; (ii) Wells Fargo Bank, National Association, as administrative agent and collateral agent; (iii) the other "Revolving Loan Lenders" party thereto (as defined in the Prepetition Credit Agreement); (iv) Wells Fargo Bank, National Association, as the term loan agent; the term loan lenders party thereto; (v) the "Credit Parties" thereunder; and (b) the Prepetition Financing Documents.

77.    "*Prepetition Financing Documents*" means the all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of Prepetition Secured Parties, including, without limitation, control agreements, mortgages, security agreements, guaranties, and UCC financing statements and all other related agreements, documents, notes, certificates, and instruments executed and/or delivered in connection with or related to the Prepetition Credit Agreement.

78.    "*Prepetition Lenders*" means the Term Lenders and the Revolving Loan Lenders.

79.    "*Prepetition Secured Claims*" means any Claim of a Prepetition Secured Party arising under, derived from, secured by, or based on the Prepetition Financing Documents.  For the avoidance of doubt, the Prepetition Secured Claims shall include contingent, unliquidated indemnification obligations.

80.    "*Prepetition Secured Parties*" has the meaning ascribed to it in the Cash Collateral Order and includes the Prepetition Agents, the Prepetition Lenders, and the Credit Parties.

81.    "*Prepetition Secured Claims Recovery*" means Cash equal to the outstanding amount of all Allowed Prepetition Secured Claims.

82.    "*Priority Claims*" means collectively, Priority Tax Claims and Other Priority Claims.

83.    "*Priority Tax Claim*" means any Claim of a Governmental Unit against any of the Debtors of the kind specified in section 507(a)(8) of the Bankruptcy Code.

84.    "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class.

85.    "*Professional*" means an Entity retained pursuant to a Bankruptcy Court order in accordance with sections 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered and expenses incurred pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code.

86.    "*Professional Fee Claim*" means any Administrative Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 328, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

87.    "*Professional Fee Escrow Account*" means an interest-bearing escrow account to hold an amount of Cash equal to the Professional Fee Escrow Amount funded by the Wind-Down Debtors as described in Article II.B.2 hereof as soon as reasonably practicable after the Confirmation Date and no later than the Effective Date solely for the purpose of paying all remaining Allowed Professional Fee Claims.

88.    "*Professional Fee Escrow Amount*" means the total amount of Professional fees and expenses estimated pursuant to Article II.B.3 of the Plan and after taking into account any Cash that has been escrowed for a similar purpose as part of consummating the Sale Transaction.

89.     "***Proof of Claim***" means a written proof of claim Filed against any of the Debtors in the Chapter 11 Cases.

90.     "***Proof of Interest***" means a written proof of interest Filed against any of the Debtor in the Chapter 11 Cases.

91.     "***Purchase Agreement***" means the agreement(s) between the Debtors and a third-party Purchaser memorializing any Sale Transaction.

92.     "***Purchaser***" means a purchaser under a Purchase Agreement.

93.     "***Reinstate***," "***Reinstated***," or "***Reinstatement***" means with respect to Claims and Interests, that the Claim or Interest shall be rendered unimpaired in accordance with section 1124 of the Bankruptcy Code.

94.     "***Released Party***" means collectively, and in each case in its capacity as such:  (a) the Prepetition Secured Parties; (b) the Committee and each of its members; (c) the Plan Administrator; (d) each Holder of an Administrative Claim, Priority Tax Claim, and Other Priority Claim that does not object to the Plan; (e) all Holders of Claims or Interests that vote to accept or are presumed to accept the Plan; (f) all Holders of Claims or Interests that abstain from voting on the Plan, who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable form indicating that they opt not to grant the releases provided in the Plan, and who do not object to the releases contained in the Plan; and (g) with respect to each of the Debtors, the Wind-Down Debtors, and each of the foregoing Entities in clauses (a) through (f), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, participants, successors, and assigns, subsidiaries, affiliates, managed accounts or funds, and each of their respective current and former equity holders, officers, directors, managers, principals, shareholders, members, management companies, fund advisors, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; *provided* that any Holder of a Claim or Interest that: (a) opts out of the releases; or (b) objects to the releases contained in the Plan shall not be a "Released Party."

95.     "***Releasing Parties***" means, collectively, (a) the Prepetition Secured Parties; (b) the Committee and each of its members; (c) the Plan Administrator; (d) all Holders of Claims or Interests that vote to accept or are presumed to accept the Plan; (e) all Holders of Claims or Interests that abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable form indicating that they opt not to grant the releases provided in the Plan; (f) all Holders of Claims or Interests that vote to reject the Plan or are deemed to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable form indicating that they opt not to grant the releases provided in the Plan; and (g) with respect to each of the Debtors, the Wind-Down Debtors, and each of the foregoing Entities in clauses (a) through (f), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, affiliates, managed accounts or funds, and each of their respective current and former equity holders, officers, directors, managers, principals, shareholders, members, management companies, fund advisors, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such collectively.

96.     "***Reserves***" means, collectively the Post Effective Date Reserve and the Professional Fee Escrow Account.

97.     "***Restructuring Transactions***" means the transactions described in Article IV.A of the Plan.

98.     "***Revolving Loan Lenders***" means the revolving loan lenders under the Prepetition Credit Agreement in their capacity as such.

8

99.    "*Sale Order*" means, collectively, any order(s) of the Bankruptcy Court authorizing a Sale Transaction.

100.    "*Sale Transaction*" means the sale(s), either as a going-concern or otherwise, of some or all of the Debtors' assets to the Purchaser pursuant to a Purchase Agreement.

101.    "*Sale Transaction Cash Proceeds*" means all Cash proceeds of a Sale Transaction.

102.    "*Schedule of Assumed Executory Contracts and Unexpired Leases*" means the schedule of certain Executory Contracts and Unexpired Leases to be assumed (or assumed and assigned) by the Debtors pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time by the Debtors.

103.    "*Schedule of Rejected Executory Contracts and Unexpired Leases*" means any schedule filed in connection with the *Order (I) Authorizing and Approving Procedures to Reject Executory Contracts and Unexpired Leases, and (II) Granting Related Relief* [Docket No. 204].

104.    "*Schedule of Retained Causes of Action*" means the schedule of certain Causes of Action of the Debtors that are not released, waived, or transferred pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time by the Debtors.

105.    "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, as such schedules may be amended, modified, or supplemented from time to time.

106.    "*SEC*" means the United States Securities and Exchange Commission.

107.    "*Section 510(b) Claim*" means any Claim subject to subordination under section 510(b) of the Bankruptcy Code.

108.    "*Secured*" means when referring to a Claim:  (a) secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) Allowed pursuant to the Plan as a Secured Claim.

109.    "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

110.    "*Security*" means a security as defined in section 2(a)(1) of the Securities Act.

111.    "*Term Agent*" means Wells Fargo Bank, National Association, as term loan agent under the Prepetition Credit Agreement in its capacity as such.

112.    "*Term Lenders*" means the term loan lenders under the Prepetition Credit Agreement in their capacity as such.

113.    "*U.S. Trustee*" means the Office of the United States Trustee for the Southern District of Texas.

114.    "*Unexpired Lease*" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 or section 1123 of the Bankruptcy Code.

115.    "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

116.     "***Voting Deadline***" means 4:00 p.m. (prevailing Central Time) on August 7, 2020.

117.     "***Wind Down***" means the wind down and dissolution of the Debtors and final administration of the Estates following the Effective Date as set forth in Article IV.E.

118.     "***Wind Down Budget***" means that certain budget governing the fees, expenses, and disbursements required for the Wind Down.

119.     "***Wind-Down Debtors***" means the Debtors, or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date, including the Plan Administrator.

B.     *Rules of Interpretation*

For purposes of this Plan:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles of the Plan or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, applicable federal law, including the Bankruptcy Code and the Bankruptcy Rules, or, if no rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; and (13) any effectuating provisions may be interpreted by the Wind-Down Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall be conclusive; (14) any references herein to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter; (15) all references herein to consent, acceptance, or approval shall be deemed to include the requirement that such consent, acceptance, or approval be evidenced by a writing, which may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail (16) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

C.     *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

D.      *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided*, *however*, that corporate or limited liability company governance matters relating to the Debtors or the Wind-Down Debtors, as applicable, not incorporated in New York shall be governed by the laws of the state of incorporation or formulation of the applicable Debtor or the Wind-Down Debtors, as applicable.

E.      *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

F.      *Reference to the Debtors or the Wind-Down Debtors*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Wind-Down Debtors shall mean the Debtors and the Wind-Down Debtors, as applicable, to the extent the context requires.

G.      *Nonconsolidated Plan*

Although for purposes of administrative convenience and efficiency the Plan has been filed as a joint plan for each of the Debtors and presents together Classes of Claims against, and Interests in, the Debtors, the Plan does not provide for the substantive consolidation of any of the Debtors.

**ARTICLE II.**
**ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, AND PRIORITY TAX CLAIMS**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, Priority Tax Claims, have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

A.      *Administrative Claims and Priority Tax Claims.*

Except as otherwise provided in this Article II.A. and except with respect to Administrative Claims that are Professional Fee Claims or subject to 11 U.S.C. § 503(b)(1)(D), requests for payment of Allowed Administrative Claims must be Filed and served on the Debtors or the Wind-Down Debtors no later than the Administrative Claims Bar Date. **Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property, and such Administrative Claims shall be deemed satisfied, settled, and released as of the Effective Date**. Objections to such requests, if any, must be Filed and served on the Plan Administrator and/or Wind-Down Debtors and the requesting party.

Unless otherwise agreed to by the Holders of an Allowed Administrative Claim and the Debtors or the Reorganized Debtors, as applicable, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following:  (1) if an Administrative Claim is Allowed as of the Effective Date, on the Effective Date (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than sixty days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is

based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holders of such Allowed Administrative Claim; or (4) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

Except to the extent that a Holder of an Allowed Priority Tax Claim and the Debtors or Wind-Down Debtors against which such Allowed Priority Tax Claim is asserted agree to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code and, for the avoidance of doubt, Holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

B.     *Professional Fee Claims*

1.     <u>Final Fee Applications and Payment of Professional Fee Claims</u>

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be Filed no later than 45 days after the Effective Date.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior Bankruptcy Court orders.  The Plan Administrator and/or Wind-Down Debtors shall pay the amount of the Allowed Professional Fee Claims owing to the Professionals in Cash to such Professionals, including from funds held in the Professional Fee Escrow Account when such Professional Fee Claims are Allowed by entry of an order of the Bankruptcy Court.

2.     <u>Professional Fee Escrow Account</u>

As soon as is reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors shall fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount as follows: first from Pre-Carve Out Trigger Notice Reserves funded for Allowed Professional Fees as described in the Cash Collateral Order and, second, if such amount is insufficient to fund the Professional Fee Escrow Account, from Distributable Cash.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals and for no other Entities until all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court.  No Liens, claims, or interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way.  Funds held in the Professional Fee Escrow Account shall not be considered property of the Estates of the Debtors or the Wind-Down Debtors.

The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Plan Administrator or the Wind-Down Debtors, as applicable, from the funds held in the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed by an order of the Bankruptcy Court; *provided* that the Debtors' and the Wind-Down Debtors' obligations to pay Allowed Professional Fee Claims shall not be limited nor be deemed limited to funds held in the Professional Fee Escrow Account.  To the extent that funds held in the Professional Fee Escrow Account are insufficient to satisfy the amount of Allowed Professional Fee Claims owing to the Professionals, such Professionals shall have an Allowed Administrative Claim for any such deficiency, which Allowed Administrative Claim shall be satisfied in accordance with Article II.A of the Plan.

When all Allowed Professional Fee Claims have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court, any remaining funds held in the Professional Fee Escrow Account shall promptly be transferred to the Post Effective Date Reserve.

3.     <u>Professional Fee Escrow Amount</u>

The Professionals shall provide a reasonable and good-faith estimate of their fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date projected to be outstanding as of the Effective

Date, and shall deliver such estimate to the Debtors no later than five days before the anticipated Effective Date; *provided*, *however*, that such estimate shall not be considered or deemed an admission or limitation with respect to the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims and such Professionals are not bound to any extent by the estimates. If a Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional. The total aggregate amount so estimated as of the Effective Date shall be utilized by the Debtors to determine the amount to be funded to the Professional Fee Escrow Account.

                4.      <u>Post-Confirmation Fees and Expenses</u>

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors, or the Wind Down Debtors (as applicable) shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors or the Wind-Down Debtors. The Debtors and Wind-Down Debtors (as applicable) shall pay, within ten business days after submission of a detailed invoice to the Debtors or Wind-Down Debtors (as applicable), such reasonable claims for compensation or reimbursement of expenses incurred by the Retained Professionals of the Debtors and Wind-Down Debtors (as applicable). If the Debtors or Wind-Down Debtors (as applicable) dispute the reasonableness of any such invoice, the Debtors or Wind-Down Debtors (as applicable) or the affected professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of any such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

C.     *Statutory Fees*

All fees due and payable pursuant to section 1930 of Title 28 of the United States Code before the Effective Date shall be paid by the Debtors. On and after the Effective Date, to the extent applicable, the Plan Administrator and/or Wind-Down Debtors shall pay any and all such fees when due and payable, and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. Each Wind-Down Debtor shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of the applicable Debtor's Chapter 11 Case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

**ARTICLE III.**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

A.     *Classification of Claims and Interests*

Except for the Claims addressed in Article II of the Plan, all Claims and Interests are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and distributions pursuant to the Plan and in accordance with section 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims and Interests against each Debtor pursuant to the Plan is as set forth below. The Plan shall apply as a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors. All of the potential Classes for the Debtors are set forth herein. Certain of the Debtors may not have Holders of Claims or Interests in a particular Class or Classes, and such Claims shall be treated as set forth in Article III.F hereof.

| Class | Claim / Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | Prepetition Secured Claims | Impaired[2] | Entitled to Vote |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 6 | Intercompany Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 7 | Existing Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 8 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

B.      *Treatment of Claims and Interests*

Subject to Article VI hereof, each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, and release of, and in exchange for, such Holder's Allowed Claim or Allowed Interest, except to the extent less favorable treatment is agreed to by the Debtors and the Holder of such Allowed Claim or Allowed Interest, as applicable. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the later of the Effective Date and the date such Holder's Claim or Interest becomes an Allowed Claim or Allowed Interest or as soon as reasonably practicable thereafter.

1.      Class 1 - Other Secured Claims

   (a)      *Classification:*  Class 1 consists of all Other Secured Claims.

   (b)      *Treatment:*  Each Holder of an Allowed Other Secured Claim shall receive:

      (i)      payment in full in Cash of such Holder's Allowed Other Secured Claim;

      (ii)      the collateral securing such Holder's Allowed Other Secured Claim; or

      (iii)      such other treatment rendering such Holder's Allowed Other Secured Claim Unimpaired.

   (c)      *Voting:*  Class 1 is Unimpaired under the Plan.  Holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Such Holders are not entitled to vote to accept or reject the Plan.

2.      Class 2 - Other Priority Claims

   (a)      *Classification*:  Class 2 consists of all Other Priority Claims.

---

[2]      Current projections anticipate the payment of such Claims in full.  However, due to the uncertainty associated with store closings and the local, state, and national responses to COVID-19, the Debtors are soliciting such Holders in the event they do not receive payment in full.

(b)     *Treatment:*  Each Holder of an Allowed Other Priority Claim shall receive:

      (i)      payment in full in Cash of such Holder's Allowed Other Priority Claim; or

      (ii)     such other treatment rendering such Holder's Allowed Other Priority Claim Unimpaired.

(c)     *Voting:*  Class 2 is Unimpaired under the Plan.  Holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Such Holders are not entitled to vote to accept or reject the Plan.

3.      <u>Class 3 - Prepetition Secured Claims</u>

(a)     *Classification*:  Class 3 consists of all Prepetition Secured Claims.

(b)     *Allowance*:  Prepetition Secured Claims shall be Allowed as and to the extent set forth in the Prepetition Financing Documents, including interest, fees, and expenses.

(c)     *Treatment*:  Except as set forth herein, on the Effective Date, or as soon as reasonably practicable thereafter, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed Prepetition Secured Claim, to the extent not already indefeasibly paid in full in cash each Holder thereof shall receive:

      (i)      its Pro Rata share of the Prepetition Secured Claims Recovery, until paid in full;

      (ii)     to the extent the Prepetition Secured Claims Recovery is insufficient to pay all Prepetition Secured Claims in full, the residual unliquidated Prepetition Collateral and any available Postpetition Collateral; or

      (iii)    such other treatment as may be agreed upon by the Prepetition Agents and the Debtors.

(d)     *Voting*:  Class 3 is Impaired under the Plan.  Holders of Prepetition Secured Claims are entitled to vote to accept or reject the Plan.

4.      <u>Class 4 - General Unsecured Claims</u>

(a)     *Classification:*  Class 4 consists of all General Unsecured Claims.

(b)     *Treatment:*  On the Effective Date, or as soon as reasonably practicable, except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of the General Unsecured Claims Recovery until paid in full.

(c)     *Voting:*  Class 4 is Impaired under the Plan.  Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

5.      <u>Class 5 - Intercompany Claims</u>

(a)     *Classification:*  Class 5 consists of all Intercompany Claims.

(b)     *Treatment*: Each Allowed Intercompany Claim, unless otherwise provided for under the Plan, will be canceled and released.

(c)     *Voting*: Class 5 is deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Such Holders are not entitled to vote to accept or reject the Plan.

6.     Class 6 - Intercompany Interests

(a)     *Classification:*  Class 6 consists of all Intercompany Interests.

(b)     *Treatment*:  Each Intercompany Interests shall be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and Holders of Intercompany Interests will not receive any distribution on account of such Intercompany Interests.

(c)     *Voting*:  Class 6 is deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Such Holders are not entitled to vote to accept or reject the Plan.

7.     Class 7 - Existing Interests

(a)     *Classification*:  Class 7 consists of all Existing Interests.

(b)     *Treatment*:  Each Allowed Existing Interest shall be canceled, released, and extinguished, and will be of no further force or effect and no Holder of Existing Interests shall be entitled to any recovery or distribution under the Plan on account of such Interests.

(c)     *Voting*:  Class 7 is Impaired under the Plan.  Holders of Existing Interests are deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Such Holders are not entitled to vote to accept or reject the Plan.

8.     Class 8 - Section 510(b) Claims

(a)     *Classification:*  Class 8 consists of all Section 510(b) Claims.

(b)     *Allowance:*  Notwithstanding anything to the contrary herein, a Section 510(b) Claim, if any such Claim exists, may only become Allowed by a Final Order of the Bankruptcy Court.  The Debtors are not aware of any valid Section 510(b) Claim and believe that no such Section 510(b) Claim exists.

(c)     *Treatment*:  Allowed Section 510(b) Claims, if any, shall be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and Holders of Allowed Section 510(b) Claims will not receive any distribution on account of such Allowed Section 510(b) Claims.

(d)     *Voting:*  Class 8 is Impaired under the Plan.  Holders (if any) of Section 510(b) Claims are deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Such Holders (if any) are not entitled to vote to accept or reject the Plan.

C.     *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights in respect of any Claims that are Unimpaired, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Claims that are Unimpaired.  Unless otherwise Allowed, Claims that are Unimpaired shall remain Disputed Claims under the Plan.

D.     *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims.  The Debtors shall seek Confirmation of the Plan pursuant to

section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify the Plan in accordance with Article X of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

E.      *Subordinated Claims*

Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors and the Wind-Down Debtors reserve the right to reclassify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

F.      *Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Holders of such Claims or Interests in such Class shall be presumed to have accepted the Plan.

G.      *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.      *Restructuring Transactions*

On the Effective Date, to the extent not inconsistent with the Sale Transaction, the applicable Debtors or the Wind-Down Debtors shall enter into any transaction and shall take any actions as may be necessary or appropriate to effect the transactions described herein, including, as applicable, consummation of the Sale Transaction, the issuance of all securities, notes, instruments, certificates, and other documents required to be issued pursuant to the Plan, one or more intercompany mergers, consolidations, amalgamations, arrangements, continuances, restructurings, conversions, dispositions, dissolutions, transfers, liquidations, spinoffs, intercompany sales, purchases, or other corporate transactions. The actions to implement the Restructuring Transactions may include: (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, amalgamation, arrangement, continuance, restructuring, conversion, disposition, dissolution, transfer, liquidation, spinoff, sale, or purchase containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable Entities agree; (3) the filing of appropriate certificates or articles of incorporation, reincorporation, formation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or provincial law; and (4) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings

or recordings that may be required by applicable law in connection with the Plan; *provided*, *however*, that no such restructuring transactions may violate the terms of any Executory Contract or Unexpired Lease assumed by the Debtors.

B.      *Sale Transaction; Sources of Consideration for Plan Distributions*

The Plan Administrator and/or Wind-Down Debtors will fund distributions under the Plan with Cash held on the Effective Date by or for the benefit of the Debtors or Wind-Down Debtors, including the remaining Sale Transaction Cash Proceeds after giving effect to the wind down process contemplated under the Purchase Agreement and Sale Order, and the proceeds of any non-Cash assets held by the Wind-Down Debtors. Notwithstanding anything to the contrary in the Plan or in the Purchase Agreement, on the Effective Date, any Cause of Action not settled, released, enjoined or exculpated under Article VIII of the Plan on or prior to the Effective Date shall vest in the Wind-Down Debtors and shall be subject to administration by the Plan Administrator. The Debtors have also offered to grant certain releases to Holders of Claims that vote to accept or do not object to the Plan.

C.      *Wind-Down Debtors*

At least one Debtor (to be determined with the consent of the Prepetition Secured Parties, to the extent the Prepetition Secured Claims are not paid in full) shall continue in existence after the Effective Date as the Wind-Down Debtors for purposes of (1) winding down the Debtors' businesses and affairs as expeditiously as reasonably possible and liquidating any assets held by the Wind-Down Debtors after the Effective Date and after consummation of the Sale Transaction, (2) performing their obligations under the Purchase Agreement or any transition services agreement entered into on or after the Effective Date by and between the Wind-Down Debtors and the Purchasers, (3) resolving any Disputed Claims, (4) making distributions on account of Allowed Claims in accordance with the Plan, (5) filing appropriate tax returns, and (6) administering the Plan in an efficacious manner. The Wind-Down Debtors shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (1) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court, and (2) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Plan Administrator to file motions or substitutions of parties or counsel in each such matter.

On the Effective Date, any Estate non-Cash assets remaining shall vest in the Wind-Down Debtors for the purpose of liquidating the Estates and Consummating the Plan. Such assets shall be held free and clear of all liens, claims, and interests of Holders of Claims and Interests, except as otherwise provided in the Plan. Any distributions to be made under the Plan from such assets shall be made by the Plan Administrator or its designee. The Wind-Down Debtors and the Plan Administrator shall be deemed to be fully bound by the terms of the Plan and the Confirmation Order.

Notwithstanding anything herein to the contrary, the Prepetition Secured Parties shall retain any valid and enforceable liens and/or security interests in any Prepetition Collateral and/or Postpetition Collateral.

D.      *Plan Administrator*

The Plan Administrator shall act for the Wind-Down Debtors in the same fiduciary capacity as applicable to a board of directors and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same). On the Effective Date, the authority, power, and incumbency of the persons acting as directors and officers of the Wind-Down Debtors shall be deemed to have resigned, solely in their capacities as such, and a representative of the Plan Administrator shall be appointed as the sole manager and sole officer of the Wind-Down Debtors and shall succeed to the powers of the Wind-Down Debtors' directors and officers. From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Wind-Down Debtors. For the avoidance of doubt, the foregoing shall not limit the authority of the Wind-Down Debtors or the Plan Administrator, as applicable, to continue the employment any former manager or officer, including pursuant to the Purchase Agreement or any transition services agreement entered into on or after the Effective Date by and between the Wind-Down Debtors and the Purchasers.

The powers of the Plan Administrator shall include any and all powers and authority to implement the Plan and to make distributions thereunder and Wind Down the businesses and affairs of the Debtors and the Wind-Down Debtors, as applicable, including: (1) liquidating, receiving, holding, investing, supervising, and protecting the assets of the Wind-Down Debtors remaining after consummation of the Sale Transaction; (2) taking all steps to execute all instruments and documents necessary to effectuate the distributions to be made under the Plan; (3) making distributions as contemplated under the Plan; (4) establishing and maintaining bank accounts in the name of the Wind-Down Debtors; (5) subject to the terms set forth herein, employing, retaining, terminating, or replacing professionals to represent it with respect to its responsibilities or otherwise effectuating the Plan to the extent necessary; (6) paying all reasonable fees, expenses, debts, charges, and liabilities of the Wind-Down Debtors; (7) administering and paying taxes of the Wind-Down Debtors, including filing tax returns; (8) representing the interests of the Wind-Down Debtors before any taxing authority in all matters, including any action, suit, proceeding or audit; and (9) exercising such other powers as may be vested in it pursuant to order of the Bankruptcy Court or pursuant to the Plan, or as it reasonably deems to be necessary and proper to carry out the provisions of the Plan.

The Plan Administrator may resign at any time upon 30 days' written notice delivered to the Bankruptcy Court, *provided* that such resignation shall only become effective upon the appointment of a permanent or interim successor Plan Administrator. Upon its appointment, the successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor and all responsibilities of the predecessor Plan Administrator relating to the Wind-Down Debtors shall be terminated.

1.      Appointment of the Plan Administrator

The Plan Administrator shall be appointed by agreement of the Debtors and the Committee (and if the Prepetition Secured Claims are not paid in full by the Effective Date, the Prepetition Agents). The Plan Administrator shall retain and have all the rights, powers, and duties necessary to carry out his or her responsibilities under this Plan, and as otherwise provided in the Confirmation Order.

2.      Retention of Professionals

The Plan Administrator shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Plan Administrator, are necessary to assist the Plan Administrator in the performance of his or her duties. The reasonable fees and expenses of such professionals shall be paid by the Wind-Down Debtors, upon the monthly submission of statements to the Plan Administrator. The payment of the reasonable fees and expenses of the Plan Administrator's retained professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court.

3.      Compensation of the Plan Administrator

The Plan Administrator's compensation, on a post-Effective Date basis, shall be as described in the Plan Supplement.

4.      Funding of Reserves, including the Post Effective Date Reserve

The Plan Administrator shall be authorized to establish and fund each of the Reserves for the purposes of such Reserves as set forth herein. The Post Effective Date Reserve will be funded with an amount of Cash that the Plan Administrator deems necessary or appropriate to satisfy future costs and expenses necessary for the implementation of the Plan and discharge of its duties hereunder that will at least cover the costs of the Wind-Down Budget; *provided* that until the Prepetition Secured Claims are paid in full in cash, any use of Distributable Cash shall be subject to the consent of the Prepetition Agents (such consent not to be unreasonably withheld). The Post Effective Date Reserve shall be used by the Plan Administrator solely to satisfy the distributions set forth herein, the expenses of the Wind-Down Debtors and the Plan Administrator as set forth in the Plan; provided that all costs and expenses associated with the winding up of the Wind-Down Debtors and the storage of records and documents shall constitute expenses of the Wind-Down Debtors and shall be paid from the Post Effective Date Reserve. The Plan Administrator may create reserve-specific segregated accounts from the Post Effective Date Reserve in accordance with its business judgment, and may move Distributable Cash into the Post Effective Date Reserve at any time to the extent needed, in

the Plan Administrator's business judgement, to cover unanticipated costs of the Wind-Down.  In no event shall the Plan Administrator be required or permitted to use its personal funds or assets for such purposes.

To the extent any amounts in a Reserve are tied to Claims that become Disallowed, the Plan Administrator may, in its business judgment, remove the amount in such Reserve that was allocated to such Claim from the Reserve and move it to Distributable Cash.  Any amounts remaining in any Reserve after payment of all Claims contemplated by such Reserve in full shall promptly be transferred to the Post Effective Date Reserve and shall be distributed according to the priority set forth in Article III without any further action or order of the Court.

E.     *Wind Down*

On and after the Effective Date, the Plan Administrator will be authorized to implement the Plan and any applicable orders of the Bankruptcy Court, and the Plan Administrator shall have the power and authority to take any action necessary to Wind Down and dissolve the Estates.

As soon as practicable after the Effective Date, the Plan Administrator shall cause the Debtors to comply with, and abide by, the terms of the Purchase Agreement and take such other actions as the Plan Administrator may determine to be necessary or desirable to carry out the purposes of the Plan.  Except to the extent necessary to complete the Wind Down of any remaining assets or operations from and after the Effective Date the Debtors (1) for all purposes shall be deemed to have withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, (2) shall be deemed to have canceled pursuant to this Plan all Interests, and (3) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date.

The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Plan Administrator.

F.     *Plan Administrator Exculpation, Indemnification, Insurance, and Liability Limitation*

The Plan Administrator and all professionals retained by the Plan Administrator, each in their capacities as such, shall be deemed exculpated and indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by the Wind-Down Debtors.  The Plan Administrator may obtain, at the expense of the Wind-Down Debtors, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Wind-Down Debtors.  The Plan Administrator may rely upon written information previously generated by the Debtors.

On and after the Effective Date, the Wind-Down Debtors and/or the Plan Administrator shall be authorized to purchase D&O Liability Insurance Policies for the benefit of their respective directors, members, trustees, officers, managers, and any Scheduled Party (as defined in the D&O Liability Insurance Policies) in the ordinary course of business.

G.     *Tax Returns*

After the Effective Date, the Plan Administrator shall complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

H.     *Dissolution of the Debtors and Wind-Down Debtors*

On or after the Effective Date, the Plan Administrator may File a certification with the Bankruptcy Court that it has substantially administered the Plan for Debtor Stage Stores, Inc., and such Debtor shall be deemed dissolved without further order of the Bankruptcy Court or action by the Plan Administrator, including the filing of any documents with the secretary of state for the state in which such dissolved Debtor is formed or any other jurisdiction. With respect to Debtor Specialty Retailers, Inc., the Plan Administrator may File a certification with the Bankruptcy

Court that all distributions having been made and completion of all its duties under the Plan and entry of a final decree closing the last of the Chapter 11 Cases, upon which the Wind-Down Debtors shall be deemed to be dissolved without any further action by the Wind-Down Debtors, including the filing of any documents with the secretary of state for the state in which the Wind-Down Debtors are formed or any other jurisdiction or further court order.  The Plan Administrator is authorized to take all necessary or appropriate actions to dissolve the Wind-Down Debtors in and withdraw the Wind-Down Debtors from applicable states.

I.        *Cancellation of Securities and Agreements*

Upon the Effective Date:  (1) the obligations of the Debtors under the Prepetition Financing Documents and any other certificate, Security, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are Reinstated pursuant to the Plan) shall be canceled solely as to the Debtors and their affiliates, and the Wind-Down Debtors shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors and their affiliates pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically Reinstated pursuant to the Plan) shall be released.

J.        *Corporate Action*

Upon the Effective Date, all actions contemplated under the Plan, regardless of whether taken before, on or after the Effective Date, shall be deemed authorized and approved in all respects, including:  (1) implementation of the Restructuring Transactions and (2) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date).  All matters provided for in the Plan or deemed necessary or desirable by the Debtors before, on, or after the Effective Date involving the corporate structure of the Debtors or the Wind-Down Debtors, and any corporate action required by the Debtors or the Wind-Down Debtors in connection with the Plan or corporate structure of the Debtors or Wind-Down Debtors shall be deemed to have occurred and shall be in effect on the Effective Date, without any requirement of further action by the security holders, directors, directors, manages, or officers of the Debtors or the Wind-Down Debtors.  Before, on, or after the Effective Date, the appropriate officers of the Debtors or the Wind-Down Debtors, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Wind-Down Debtors.  The authorizations and approvals contemplated by this Article IV.J shall be effective notwithstanding any requirements under non-bankruptcy law.

K.        *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Plan Administrator is authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, the Restructuring Transactions, and the Securities issued pursuant to the Plan in the name of and on behalf of the Wind-Down Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

L.        *Section 1146 Exemption*

To the extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Wind-Down Debtor or to any other Person) of property under the Plan or pursuant to:  (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or the Wind-Down Debtors; (2) the Restructuring Transactions; (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (4) the making, assignment, or recording of any lease or sublease; or (5) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds,

bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.  All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forgo the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

M.    *Preservation of Causes of Action*

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article IX hereof, the Wind-Down Debtors, as applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Wind-Down Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article IX.

The Wind-Down Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Wind-Down Debtors.  **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Wind-Down Debtors, as applicable, will not pursue any and all available Causes of Action against it.  The Debtors or the Wind-Down Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan, including Article IX of the Plan.**  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Wind-Down Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Wind-Down Debtors reserve and shall retain such Causes of Action notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.  In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the Wind-Down Debtors, except as otherwise expressly provided in the Plan, including Article IX of the Plan.  The applicable Wind-Down Debtors, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.  The Wind-Down Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

N.    *Closing the Chapter 11 Cases*

Upon the occurrence of the Effective Date, all of the Chapter 11 Cases, except for the Chapter 11 Case of Debtor Specialty Retailers, Inc., shall be deemed closed, and all contested matters relating to each of the Debtors, including objections to Claims, shall be administered and heard in the Chapter 11 Case of Specialty Retailers, Inc.

When all Disputed Claims have become Allowed or disallowed and all remaining Cash has been distributed in accordance with the Plan, the Plan Administrator shall seek authority from the Bankruptcy Court to close the Chapter 11 Case of Debtor Specialty Retailers, Inc. in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.     *Assumption (or Assumption and Assignment) and Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided herein, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned, including any employee benefit plans (other than the Stage Stores Inc. Retirement Plan), severance plans, and other Executory Contracts under which employee obligations arise, shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease:  (1) is specifically described in the Plan as to be assumed in connection with confirmation of the Plan, is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan or the Plan Supplement, or otherwise is specifically described in the Plan to not be rejected; (2) is subject to a pending motion to assume such Unexpired Lease or Executory Contract as of the Confirmation Date (unless the counterparty to such Unexpired Lease or Executory Contract and the Debtors agree otherwise); (3) is to be assumed by the Debtors or assumed by the Debtors and assigned to another third party, as applicable, in connection with the any sale transaction; (4) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; or (5) is listed on a Schedule of Rejected Executory Contracts and Unexpired Leases as of the Confirmation Date for rejection effective on a date that occurs no later than the Effective Date.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions, assignments, and rejections, including the assumption of the Executory Contracts or Unexpired Leases as provided in the Plan Supplement, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  For the avoidance of doubt, such assumptions, assignments, and rejections will be effective on or prior to the Effective Date of the Plan.  The Debtors will not seek to extend or modify the rejection dates included on any Schedule of Rejected Executory Contracts and Unexpired Leases, without the consent of the applicable landlord.

The Stage Stores Inc. Retirement Plan will be terminated in accordance with Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA"), unless it is assumed by a third party.

B.     *D&O Liability Insurance Policies*

Notwithstanding anything in the Plan to the contrary, the D&O Liability Insurance Policies shall be treated as and deemed to be Executory Contracts under the Plan. On the Effective Date, the Debtors shall be deemed to have assumed all D&O Liability Insurance Policies pursuant to sections 105 and 365 of the Bankruptcy Code in their entirety. The Wind-Down Debtors shall maintain all D&O Liability Insurance Policies for the benefit of the Debtors' directors, members, trustees, officers, managers, and any Scheduled Party (as defined in the D&O Liability Insurance Policies), which coverage shall be through the Effective Date of the Plan, and all such directors, members, trustees, officers, managers, and any Scheduled Party (as defined in the D&O Liability Insurance Policies) of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such directors and officers remain in such positions after the Effective Date, subject in all respects to the terms of the D&O Liability Insurance Policies.

C.     *AIG Insurance Contracts*

Notwithstanding anything to the contrary in the Disclosure Statement, the Plan, the Plan Supplement, the Confirmation Order, any cure notice, any other document related to any of the foregoing, or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening, grants an injunction or release, confers Bankruptcy Court jurisdiction, or requires a party to opt out of any releases):

The automatic stay of the Bankruptcy Code section 362(a), if and to the extent applicable, shall be deemed lifted without further order of the Bankruptcy Court, solely to permit: (i) claimants with covered workers' compensation claims or direct actions claims against AIG under applicable non- bankruptcy law to proceed with their claims in connection with the AIG Insurance Contracts; (ii) AIG and third party administrators to administer, handle, defend, settle, and/or pay, in the ordinary course of business, in accordance with the AIG Insurance Contracts and without further order of the Bankruptcy Court(A) workers' compensation claims, (B) claims where a claimant asserts a direct claim against AIG under applicable non-bankruptcy law, or an order has been entered by the Bankruptcy Court granting a claimant relief from the automatic stay to proceed with its claims, and (C) all fees, costs and expenses

in relation to each of the foregoing; (iii) AIG to draw against any or all of the collateral or security provided by or on behalf of the Debtors (or the Wind Down Debtors, as applicable) at any time and to hold the proceeds thereof as security for the obligations of the Debtors (and the Wind Down Debtors, as applicable) and/or apply such proceeds to the obligations of the Debtors (and the Wind Down Debtors, as applicable) under the applicable AIG Insurance Contracts, in such order as AIG may determine  To the extent that AIG is owed any amounts in excess of the collateral or security provided by or on behalf of the Debtors (or the Wind Down Debtors, as applicable), such amounts shall constitute a General Unsecured Claim and AIG shall have the right to assert such claim and other parties shall have the right to object thereto.  For the avoidance of doubt, all parties' rights are reserved regarding the enforceability of the arbitration provisions under the AIG Insurance Contracts.

D.      *Chubb Companies' Insurance Contracts.*

For the avoidance of doubt, notwithstanding anything to the contrary in the Plan, the Plan Supplement, the Purchase Agreement, the Sale Order, the Confirmation Order, or any other document related to any of the foregoing, the following provisions shall apply to the Chubb Insurance Contracts:

(i) nothing shall permit or otherwise effect a sale, assignment or any other transfer of the Chubb Insurance Contracts and/or any rights, benefits, claims, rights to payments, or recoveries under or relating thereto without the prior express written consent of the Chubb Companies;

(ii) nothing shall alter, modify, amend, affect, impair or prejudice the legal, equitable or contractual rights, obligations, and defenses of the Chubb Companies, the Debtors (or, after the Effective Date, the Wind-Down Debtors), or any other individual or entity, as applicable, under any of the Chubb Insurance Contracts and any such rights and obligations shall be determined under the Chubb Insurance Contracts and applicable non-bankruptcy law; and to the extent the Debtors seek coverage or payment under any Chubb Insurance Contracts, the Chubb Companies shall be entitled to payment or reimbursement in full from the applicable Debtor or Wind-Down Debtor, as applicable, to the extent required under the applicable Chubb Insurance Contract, in the ordinary course and without the need for the Chubb Companies to file a Proof of Claim, Administrative Claim or to object to any cure amount; provided that any and all rights of the Debtors to dispute such payments or reimbursements are expressly reserved except that any payments made to the Chubb Companies at any time shall not be subject to avoidance under the bankruptcy code or applicable law; provided that the Chubb Companies shall not bring a cause of action against or otherwise directly pursue the Debtors' current or former directors, managers, officers, employees or Professionals for such payments or reimbursements arising under the Chubb Insurance Contracts, except for actions determined by Final Order to have constituted actual fraud or gross negligence or to the extent necessary with respect to subrogation or similar claims; and

(iii) the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in Article VIII.F. of the Plan, if and to the extent applicable, shall be deemed lifted without further order of this Bankruptcy Court, solely to permit: (I) claimants with valid workers' compensation claims or direct action claims against the Chubb Companies under applicable non-bankruptcy law to proceed with their claims; (II) the Chubb Companies to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Bankruptcy Court, (A) workers' compensation claims, (B) claims where a claimant asserts a direct claim against the Chubb Companies under applicable non-bankruptcy law, or an order has been entered by this Bankruptcy Court granting a claimant relief from the automatic stay to proceed with its claim, and (C) all costs in relation to each of the foregoing; and (III) the Chubb Companies to cancel any Chubb Insurance Contracts, and take, in their sole discretion, other actions relating to the Chubb Insurance Contracts (including setting off amounts due by the Debtors or Wind-Down Debtors against any amounts due to the Debtors or Wind-Down Debtors or against (or otherwise applying) any collateral or security provided by the Debtors or Wind-Down Debtors, regardless of when any such amounts arise, become due or are provided), to the extent permissible under applicable non-bankruptcy law, and in accordance with the terms of the Chubb Insurance Contracts.  Upon the Effective Date, based on the foregoing treatment, all Proofs of Claim on account of or in respect of the Chubb Insurance Contracts shall be deemed withdrawn automatically and without further notice to or action by the Court.

E.      *Indemnification Obligations*

Subject to the occurrence of the Effective Date, the obligations of the Debtors as of the Effective Date to indemnify, defend, reimburse, or limit the liability of the current and former directors, managers, officers, employees, attorneys, any Scheduled Party (as defined in the D&O Liability Insurance Policies), other professionals and agents of the Debtors, and such current and former directors', managers', and officers' respective Affiliates, respectively, against any Claims or Causes of Action under any indemnification provisions or applicable law, shall survive Confirmation, shall be assumed by the Debtors on behalf of the applicable Debtor and assigned to the Wind-Down Debtors which shall be deemed to have assumed the obligation, and will remain in effect after the Effective Date if such indemnification, defense, reimbursement, or limitation is owed in connection with an event occurring before the Effective Date; *provided* that, notwithstanding anything herein to the contrary, the Wind-Down Debtors' obligation to fund such indemnification obligations shall be limited to the extent of coverage available under any insurance policy assumed by the Debtors and assigned to the Wind-Down Debtors, including any D&O Liability Insurance Policies. For the avoidance of doubt, neither the Debtors nor the Estates shall have any obligation to reimburse such indemnity claims or expenses.

F.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within 30 days after the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, or (3) the Effective Date. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Wind-Down Debtors, the Estates, or their property without the need for any objection by the Wind-Down Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.** All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims.

G.      *Cure of Defaults for Executory Contracts and Unexpired Leases Assumed (or Assumed and Assigned)*

Any Cure Obligations under each Executory Contract and Unexpired Lease to be assumed (or assumed and assigned) pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by performance or payment of the default amount in Cash on or after the Effective Date, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (1) the Cure Obligation, (2) the ability of the Wind-Down Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed (or assumed and assigned), or (3) any other matter pertaining to assumption (or assumption and assignment), the Cure Obligations required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption (or assumption and assignment).

At least fourteen days prior to the Confirmation Hearing, the Debtors shall distribute, or cause to be distributed to the applicable counterparties and their known counsel, notices of proposed assumption (or assumption and assignment), proposed cure, procedures for objecting thereto, and procedures for resolution by the Bankruptcy Court of any related disputes. Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption (or assumption and assignment) or related cure amount must be Filed, served, and actually received by the Debtors at least three days prior to the Confirmation Hearing. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption (or assumption and assignment) or cure amount will be deemed to have assented to such assumption (or assumption and assignment) or cure. To the

extent that the Debtors seek to assume (or assume and assign) an Executory Contract or Unexpired Lease pursuant to the Plan, the Debtors will (in the applicable notice and/or Schedule): (a) identify the assignee; and (b) provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the applicable Executory Contract or Unexpired Lease to be assumed (or assumed and assigned), which adequate assurance information will be provided with the notices of proposed assumption (or assumption and assignment).

Subject to cure or adequate assurance of prompt cure, as set forth in section 365(b) of the Bankruptcy Code, assumption (or assumption and assignment) of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Cure Obligations or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed (or assumed and assigned) Executory Contract or Unexpired Lease at any time prior to the effective date of assumption (or assumption and assignment). **Subject to full satisfaction of Cure Obligations, any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed (or assumed and assigned) shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.**

The Debtors, the Wind-Down Debtors, or the Plan Administrator may settle any Cure dispute without any further notice to or action, order, or approval of the Bankruptcy Court; *provided* that notice of such settlement will be distributed to known counsel of the applicable counterparty by electronic mail.

H.      *Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases.*

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or the Wind-Down Debtors, as applicable, under such Executory Contracts or Unexpired Leases.  In particular, notwithstanding any non-bankruptcy law to the contrary, the Wind-Down Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the Debtors contracting from non-Debtor counterparties to rejected Executory Contracts or Unexpired Leases.

I.      *Preservation of Fiduciary Liabilities Related to Stage Stores Inc. Retirement Plan*

Subject to applicable provisions of the Bankruptcy Code, nothing in the Plan or the Confirmation Order shall be construed to discharge, release, limit, or relieve any party from liability for a fiduciary breach related to the Stage Stores Inc. Retirement Plan.  The Pension Benefit Guaranty Corporation and the Stage Stores Inc. Retirement Plan shall not be enjoined or precluded from enforcing such liability or responsibility by any of the provisions of the Plan or the Confirmation Order.

J.      *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed (or assumed and assigned) shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

K.      *Reservation of Rights*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Assumed Executory Contract and Unexpired Leases, nor anything contained in the Plan, shall constitute an admission

by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any of the Wind-Down Debtors has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Wind-Down Debtors, as applicable, shall have 30 days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease under the Plan.

*L.*     *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

# ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

*A.*     *Timing and Calculation of Amounts to Be Distributed*

Unless otherwise provided in the Plan, on the Effective Date (or if a Claim is not an Allowed Claim or Allowed Interest on the Effective Date, on the date that such Claim or Interest becomes an Allowed Claim or Allowed Interest, or as soon as reasonably practicable thereafter), or as soon as is reasonably practicable thereafter, each Holder of an Allowed Claim or Allowed Interests (as applicable) shall receive the full amount of the distributions that the Plan provides for Allowed Claims or Allowed Interests (as applicable) in the applicable Class. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims or Disputed Interests, distributions on account of any such Disputed Claims or Disputed Interests shall be made pursuant to the provisions set forth in Article VII hereof. Except as otherwise provided in the Plan, Holders of Claims or Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

*B.*     *Disbursing Agent*

Distributions under the Plan shall be made by the Disbursing Agent, which, for the avoidance of doubt, may be the Plan Administrator or the Wind-Down Debtors. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties.

*C.*     *Rights and Powers of Disbursing Agent*

1.     Powers of the Disbursing Agent

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

2.     Expenses Incurred on or after the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and out-of-pocket expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and out-of-pocket expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash in accordance with the Wind Down Budget.

D.      *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

     1.      <u>Record Date for Distribution</u>.

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record holders listed on the Claims Register as of the close of business on the Distribution Record Date.

     2.      <u>Delivery of Distributions</u>

Except as otherwise provided herein, the Plan Administrator shall make distributions to Holders of Allowed Claims and Allowed Interests on the Effective Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; *provided*, *however*, that the manner of such distributions shall be determined at the discretion of the Plan Administrator; *provided further*, *however*, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder.

     3.      <u>Minimum Distributions</u>

Notwithstanding any other provision of the Plan, the Disbursing Agent will not be required to make distributions of Cash less than $100 in value, and each such Claim to which this limitation applies shall be settled and enjoined pursuant to Article VIII and its Holder is forever barred pursuant to Article VIII from asserting that Claims against the Debtors, the Wind-Down Debtors, or their property.

     4.      <u>Undeliverable Distributions and Unclaimed Property</u>

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided*, *however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date. After such date, all unclaimed property or interests in property shall revert to the Wind-Down Debtors automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or Interest in property shall be forever barred.

E.      *Compliance with Tax Requirements*

In connection with the Plan, to the extent applicable, the Debtors or the Wind-Down Debtors, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Debtors and Wind-Down Debtors, as applicable, reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

Property deposited into the various Claim distribution accounts described elsewhere in the Plan (including, to the extent applicable, the Reserves (other than the Professional Fee Escrow Account) and the Administrative and Priority Claims Recovery) will be subject to disputed ownership fund treatment under section 1.468B-9 of the United States Treasury Regulations. All corresponding elections with respect to such accounts shall be made, and such treatment shall be applied to the extent possible for state, local, and non-U.S. tax purposes. Under such treatment, a separate federal income tax return shall be filed with the IRS with respect to such accounts, any taxes (including with respect to interest, if any, or appreciation in property between the Effective Date and date of distribution) imposed on such

accounts shall be paid out of the assets of such accounts (and reductions shall be made to amounts disbursed from such accounts to account for the need to pay such taxes).

F.      *Allocations*

        Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

G.      *No Postpetition Interest on Claims.*

        Unless otherwise specifically provided for in the Cash Collateral Order, the Plan, or the Confirmation Order, or required by applicable bankruptcy and non-bankruptcy law, postpetition interest shall not accrue or be paid on any prepetition Claims against the Debtors, and no Holder of a prepetition Claim against the Debtors shall be entitled to interest accruing on or after the Petition Date on any such prepetition Claim.

H.      *Foreign Currency Exchange Rate.*

        Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition, on the Effective Date.

I.      *Setoffs and Recoupment*

        Except as expressly provided in this Plan, each Wind Down Debtor may, pursuant to sections 553 and 558 of the Bankruptcy Code, set off and/or recoup against any Plan distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that such Wind Down Debtor may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the relevant Wind Down Debtor(s) and Holder of Allowed Claim or (2) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided*, *however*, that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by a Wind Down Debtor or its successor of any and all claims, rights, and Causes of Action that such Wind Down Debtor or its successor may possess against the applicable Holder.  In no event shall any Holder of Claims against, or Interests in, the Debtors be entitled to recoup any such Claim or Interest against any claim, right, or Cause of Action of the Debtors or the Wind-Down Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors in accordance with Article XII.G of the Plan on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

J.      *Claims Paid or Payable by Third Parties*

        1.      <u>Claims Paid by Third Parties</u>

        The Debtors or the Wind-Down Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or the Wind-Down Debtors.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or the Wind-Down Debtors on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution to the applicable Debtor or the Wind-Down Debtors, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Debtor or the Wind-Down Debtors annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the two-week grace period specified above until the amount is repaid.

29

2.       <u>Claims Payable by Third Parties</u>

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' Insurance Contracts until the Holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Contract. To the extent that one or more of the Debtors' Insurance Companies agrees to pay, in full or in part, a Claim (if and to the extent adjudicated by a court of competent jurisdiction or otherwise settled), then immediately upon such Insurance Companies' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.       <u>Applicability of Insurance Policies</u>

Except as otherwise provided in the Plan, payments to Holders of Claims covered by Insurance Contracts shall be in accordance with the provisions of any applicable Insurance Contract. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including Insurance Companies under any Insurance Contracts, nor shall anything contained herein constitute or be deemed a waiver by such Insurance Companies of any defenses, including coverage defenses, held by such Insurance Companies.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS

A.     *Allowance of Claims*

After the Effective Date, the Wind-Down Debtors or the Plan Administrator, as applicable, shall have and retain any and all rights and defenses such Debtor or its Estate had with respect to any Claim or Interest immediately before the Effective Date, including, but not limited to, defenses under section 558 of the Bankruptcy Code.

B.     *Claims Administration Responsibilities*

Except as otherwise specifically provided in the Plan, after the Effective Date, the Plan Administrator shall have the authority:  (1) to File, withdraw, or litigate to judgment objections to Claims or Interests; (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

C.     *Estimation of Claims*

Before or after the Effective Date, the Debtors or the Plan Administrator, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection.  Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the relevant Wind-Down Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

D.       *Adjustment to Claims without Objection*

Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, canceled or otherwise expunged (including pursuant to the Plan), may be adjusted or expunged (including on the Claims Register, to the extent applicable) by the Wind-Down Debtors without a Claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

E.       *Time to File Objections to Claims*

Any objections to Claims shall be Filed on or before the Claims Objection Bar Date.

F.       *Disallowance of Claims*

All Claims Filed on account of an indemnification obligation to a director, officer, or employee shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

Pursuant to the terms of the Bar Date Order, if Proofs of Claim are not received by the Claims and Noticing Agent on or before the Claims Bar Date or the Governmental Bar Date, as applicable, and except in the case of certain exceptions explicitly set forth in the Bar Date Order, the Holders of the underlying Claims shall be barred from asserting such claims against the Debtors and precluded from voting on any plans of reorganization filed in these chapter 11 cases and/or receiving distributions from the Debtors on account of such claims in these chapter 11 cases.  The Debtors or the Wind Down Debtors, as applicable, shall be authorized to update the Claims Register to remove any claims not received by the Claims and Noticing Agent before the Bar Date or the Governmental Bar Date, as applicable, and not subject to an exception as set forth above; *provided* that the Debtors will provide notice to such Claimant at the address or email address on the Proof of Claim, to the extent such information is provided, informing such Claimant that its Claim will be removed from the Claims register as a result of being untimely filed.

G.       *Amendments to Claims*

On or after the applicable Bar Date, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Wind-Down Debtors.  Absent such authorization, any new or amended Claim Filed shall be deemed disallowed in full and expunged without any further action.

H.       *No Distributions Pending Allowance*

If an objection to a Claim or portion thereof is Filed as set forth in Article VII.B, no payment or distribution provided under the Plan shall be made on account of such Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim; *provided* that to the extent any Challenge (as defined in the Cash Collateral Order) is timely asserted against the Prepetition Agents or Prepetition Secured Parties, distributions shall be made on account of any undisputed portion of the applicable Prepetition Secured Claim or Deficiency Claim.

I.       *Distributions after Allowance*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim or Allowed Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Allowed Interest (as applicable) in accordance with the provisions of the Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Disputed Interest becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim or Interest the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim or Interest unless required under applicable bankruptcy law.

J.      *Special Rules for Distributions to Holders of Disputed Claims*

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by the Debtors, the Wind-Down Debtors, or the Plan Administrator, on the one hand, and the holder of a Disputed Claim or Interest, on the other hand, no partial payments and no partial distributions shall be made with respect to any Disputed Claim or Interest until the Disputed Claim or Interest has become an Allowed Claim or Interest, as applicable, or has otherwise been resolved by settlement or Final Order; *provided* that if the Debtors do not dispute a portion of an amount asserted pursuant to an otherwise Disputed Cure Claim, the holder of such Disputed Cure Claim shall be entitled to a distribution on account of that portion of such Cure Claim, if any, that is not Disputed at the time and in the manner that the Plan Administrator makes distributions to similarly-situated holders of Allowed Claims pursuant to the Plan; *provided*, *further*, that as set forth in Article VII.H herein, to the extent any Challenge (as defined in the Cash Collateral Order) is timely asserted against the Prepetition Agents or Prepetition Secured Parties, distributions shall be made on account of any undisputed portion of the applicable Prepetition Secured Claim or Deficiency Claim.

## ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS

A.      *Settlement, Compromise, and Release of Claims and Interests*

As discussed in detail in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan.  The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates.  Subject to Article VI hereof, all distributions made to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

B.      **Release of Liens**

**Except as otherwise provided in the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date and required to be satisfied pursuant to the Plan, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with Article III.B.1 hereof, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, compromised, and satisfied, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically to the applicable Debtor and its successors and assigns.  Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Wind-Down Debtors to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.**

C.      **Release by the Debtors**

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is deemed to be hereby conclusively, absolutely, irrevocably, and forever released by each and all of the Debtors, the Wind-Down Debtors, and their Estates, in each case on behalf of themselves and their respective successors,**

assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Wind-Down Debtors, or their Estates, as applicable, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity, contract, tort or otherwise, that the Debtors, the Wind-Down Debtors, or their Estates or affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Wind-Down Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Debtors' capital structure, management, ownership, or operation thereof, the Prepetition Financing Documents or any draws thereunder, the Restructuring Transactions, the sale and marketing process, the Store Closing Sales, the Wind Down, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the Sale Transaction, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date or relating to any of the forgoing.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this Article VIII. by the Debtors, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this Article VIII is: (1) in exchange for the good and valuable consideration provided by the Released Parties, (2) a good-faith settlement and compromise of such Claims; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors or Wind-Down Debtors or their respective Estates asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

Notwithstanding anything contained herein to the contrary, the foregoing release does not release (i) any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan, (ii) the rights of the Debtors with respect to any confidentiality provisions or covenants restricting competition in favor of the Debtors under any employment agreement with a current or former employee of the Debtors, or (iii) the rights of Holders of Allowed Claims or Interests to receive distributions under the Plan.

D.      *Third-Party Release*

Except as otherwise expressly set forth in the Plan or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each of the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released each Debtor, Wind-Down Debtor, and Released Party from any and all any and all Claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity, contract, tort or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Wind-Down Debtors, or their Estates, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Wind-Down Debtors, the subject matter of, or the

transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Debtors' capital structure, management, ownership, or operation thereof, the Prepetition Financing Documents or any draws thereunder, the Restructuring Transactions, the sale and marketing process, the Store Closing Sales, the Wind Down, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the Sale Transaction, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date or relating to any of the forgoing.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this Article VIII, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this Article VIII is:  (1) in exchange for the good and valuable consideration provided by the Released Parties, (2) a good-faith settlement and compromise of such Claims; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) an absolute and complete bar to any of the Debtors or Wind-Down Debtors or their respective Estates conveying direct or derivative standing to any person or entity to pursue any claim, Causes of Action or liability against any Released Party, or asserting any claim, Causes of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

Notwithstanding anything contained herein to the contrary, the foregoing release does not release (i) any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan, (ii) any claims related to any act or omission that is determined in a Final Order to have constituted willful misconduct, gross negligence, or actual fraud, (iii) the rights of the Debtors with respect to any confidentiality provisions or covenants restricting competition in favor of the Debtors under any employment agreement with a current or former employee of the Debtors, or (iv) the rights of Holders of Allowed Claims or Interests to receive distributions under the Plan.

E.      *Exculpation*

Notwithstanding anything herein to the contrary, the Exculpated Parties shall neither have nor incur, and each Exculpated Party is released and exculpated from, any liability to any Holder of a Cause of Action, Claim, or Interest for any postpetition act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, consummation of the Sale Transaction, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan or the distribution of property under the Plan or any other related agreement (whether or not such issuance or distribution occurs following the Effective Date), negotiations regarding or concerning any of the foregoing, or the administration of the Plan or property to be distributed hereunder, except for actions determined by a Final Order to have constituted actual fraud or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

*F.      Injunction*

**Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold claims or interests that have been released under the Plan, satisfied under the Plan, or are subject to exculpation under the Plan are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Wind-Down Debtors, the Exculpated Parties, or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article VIII.F of the Plan.**

*G.      Preservation of Setoff Rights*

Notwithstanding anything to the contrary, nothing shall modify the rights, if any, of any holder of Claims or any current or former party to an Executory Contract or Unexpired Lease, to assert any right of setoff or recoupment that such party may have under applicable bankruptcy or non-bankruptcy law, including, but not limited to, (i) the ability, if any, of such parties to setoff or recoup a security deposit held pursuant to the terms of their unexpired lease(s) with the Debtors, or any successors to the Debtors, under the Plan; (ii) assertion of rights of setoff or recoupment, if any, in connection with Claims reconciliation; or (iii) assertion of setoff or recoupment as a defense, if any, to any claim or action by the Debtors, the Wind-Down Debtors, or any successors of the Debtors.

*H.*      Securities and Exchange Commission Considerations

Notwithstanding any provision contained herein to the contrary, no provision of the Plan, or any order confirming the Plan, shall (i) release any non-debtor person or entity (including any Released Party) from any Claim or Causes of Action of the SEC; or, (ii) enjoin, limit, impair, or delay the SEC from commencing or continuing any Claims, Causes of Action, proceedings, or investigations against any non-debtor person or entity (including any Released Party) in any forum.

*I.      Protections against Discriminatory Treatment.*

To the extent provided by section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Wind-Down Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Wind-Down Debtors, or another Entity with whom the Wind-Down Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a release), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

*J.      Document Retention.*

On and after the Effective Date, the Wind-Down Debtors, or the Plan Administrator, as applicable, may maintain or dispose of documents in accordance with their discretion.

*K.      Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (1) such Claim has been adjudicated as non-contingent or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

*L.      Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

*A.      Conditions Precedent*

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been: satisfied; or waived pursuant to the provisions of Article IX.B hereof:

1.   the Bankruptcy Court shall have entered the Confirmation Order;

2.   the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

3.   The Prepetition Secured Claims shall have been paid in full in Cash.

4.   the Reserves shall have been established and funded as set forth herein;

5.   All going out of business sales at the Debtors' stores shall have been completed and all of the Debtors' stores have been vacated; and

6.   the Debtors shall have implemented the Restructuring Transactions and all transactions contemplated herein, in a manner consistent in all respects with the Plan, pursuant to documentation acceptable to the Debtors in their discretion.

*B.      Waiver of Conditions*

The conditions to Consummation set forth in Article IX.A may be waived by the Debtors, in consultation with the Committee, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan; *provided* that the condition that the Prepetition Secured Claims shall have been paid in full may only be waived by the Prepetition Agents in their sole discretion.

C.        *Substantial Consummation*

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. §§ 1101 and 1127, shall be deemed to occur on the Effective Date.

D.        *Effect of Nonoccurrence to the Confirmation Date or Effective Date.*

If the Confirmation or Consummation of the Plan does not occur, (1) the Plan shall be null and void in all respects other than as set forth herein, (2) the Plan shall be deemed a motion seeking dismissal of these Chapter 11 Cases in accordance with the applicable provisions and priority scheme of the Bankruptcy Code, and (3) nothing contained in the Plan or the Disclosure Statement shall:  (a) constitute a waiver or release of any Claims by the Debtors, any Holders, or any other Entity; (b) prejudice in any manner the rights of the Debtors, any Holders, or any other Entity; or (c) constitute an admission, acknowledgment, offer or undertaking by the Debtors, any Holders, or any other Entity in any respect.

## ARTICLE X.
## MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

A.        *Modification and Amendments*

Except as otherwise specifically provided in the Plan, the Debtors reserve the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not re-solicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), the Debtors expressly reserve their respective rights to revoke or withdraw, to alter, amend or modify the Plan with respect to such Debtor, one or more times, before or after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend or modify the Plan, or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

B.        *Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

C.        *Revocation or Withdrawal of Plan*

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent plans of reorganization.  If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of the Claims or Interests or Class of Claims or Interests), assumption (or assumption and assignment) or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (c) nothing contained in the Plan shall: (i) constitute a waiver or release of any Claims or Interests; (ii) prejudice in any manner the rights of such Debtor, any Holder, or any other Entity; or (iii) constitute an admission, acknowledgement, offer or undertaking of any sort by such Debtor, any Holder, or any other Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals (including accrued Professional Fee Claims) authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to:  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Obligations pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed (or assumed and assigned); (c) the Wind-Down Debtors amending, modifying or supplementing, after the Effective Date, pursuant to Article V, the Executory Contracts and Unexpired Leases to be assumed (or assumed and assigned) or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory, expired, or terminated;

4.      ensure that distributions to Holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, the Plan Supplement, or the Disclosure Statement;

8.      enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.      resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with Consummation, including interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

11.      resolve any cases, controversies, suits, disputes or Causes of Action with respect to the releases, injunctions and other provisions contained in Article VIII, and enter such orders as may be necessary or appropriate to implement such releases, injunctions and other provisions;

12.      resolve any cases, controversies, suits, disputes or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article VI.J.1;

13.      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14.      determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

15.      enter an order or Final Decree concluding or closing any of the Chapter 11 Cases;

16.      adjudicate any and all disputes arising from or relating to distributions under the Plan;

17.      consider any modifications of the Plan, to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18.      determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.      hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

20.      hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Restructuring Transactions, whether they occur before, on or after the Effective Date;

21.      hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

22.      hear and determine all disputes involving the existence, nature, scope, or enforcement of any settlements, exculpations, injunctions, and releases granted in connection with and under the Plan, including under Article VIII;

23.      hear and determine all disputes related to the Sale Transaction;

24.      enforce all orders previously entered by the Bankruptcy Court; and

25.      hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.     *Immediate Binding Effect*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Wind-Down Debtors, and any and all Holders of Claims or Interests (irrespective of whether their Claims or Interests are presumed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

B.     *Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or Wind-Down Debtors, as applicable, and all Holders receiving distributions pursuant to the Plan and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.     *Payment of Statutory Fees.*

All fees and applicable interest payable pursuant to section 1930(a) of the Judicial Code and 31 U.S.C. § 3717, as applicable, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the

Bankruptcy Code, shall be paid by each of the Wind-Down Debtors (or the Disbursing Agent on behalf of each of the Wind-Down Debtors) for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

D.      *Statutory Committee and Cessation of Fee and Expense Payment*

On the Effective Date, the Committee shall dissolve automatically and the members thereof shall be released and discharged from all rights, duties, responsibilities, and liabilities arising from, or related to, the Chapter 11 Cases and under the Bankruptcy Code, except for the limited purpose of prosecuting requests for payment of Professional Fee Claims for services and reimbursement of expenses incurred by the Committee and its Professionals.  The Wind-Down Debtors shall no longer be responsible for paying any fees or expenses incurred by the members of or advisors to the Committee after the Effective Date except as provided in the prior sentence.

E.      *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of the Plan, any statement or provision contained in the Plan or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders unless and until the Effective Date has occurred.

F.      *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

G.      *Notices*

To be effective, all notices, requests and demands to or upon the Debtors shall be in writing (including by facsimile transmission).  Unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed to the following:

Stage Stores, Inc.
2425 West Loop South
Houston, Texas 77027
Attention:   Office of the General Counsel
E-mail address:  legalnotices@stage.com

with copies (which shall not constitute notice) to:

Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Attention:  Joshua A. Sussberg, P.C. and Neil E. Herman
E-mail address:  joshua.sussberg@kirkland.com;
neil.herman@kirkland.com

- and -

Kirkland & Ellis LLP
300 North LaSalle
Chicago, Illinois 60654
Attention:  Joshua A. Altman
E-mail address:  josh.altman@kirkland.com

- and -

Jackson Walker L.L.P.
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Attn.:  Matthew D. Cavenaugh
E-mail address:  mcavenaugh@jw.com

After the Effective Date, the Wind-Down Debtors may notify Entities that, in order to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

H.    *Entire Agreement*Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

I.    *Exhibits*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the website of the Notice, Claims, and Balloting Agent at http://www.kccllc.net/stagestores or the Bankruptcy Court's website at www.txsb.uscourts.gov.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

J.    *Non-Severability of Plan Provisions*

The provisions of the Plan, including its release, injunction, exculpation and compromise provisions, are mutually dependent and non-severable.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or

modified without the consent of the Debtors and the Purchasers consistent with the terms set forth herein; and (3) non-severable and mutually dependent.

K.      *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan and, therefore, no such parties will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan or any previous plan.

L.      *Waiver or Estoppel*

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court before the Confirmation Date.

M.      *Conflicts*

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.  In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

*[Remainder of page intentionally left blank]*

42

Stage Stores, Inc. and Specialty Retailers, Inc.

August 12, 2020

By:       */s/ Elaine D. Crowley*
Name:   Elaine D. Crowley
Title:    Chief Restructuring Officer

COUNSEL:

**JACKSON WALKER L.L.P.**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
Kristhy M. Peguero (TX Bar No. 24102776)
Veronica A. Polnick (TX Bar No. 24079148)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:      (713) 752-4200
Facsimile:      (713) 752-4221
Email:           mcavenaugh@jw.com
                 jwertz@jw.com
                 kpeguero@jw.com
                 vpolnick@jw.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Neil E. Herman (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:           joshua.sussberg@kirkland.com
                 neil.herman@kirkland.com

-and-

Joshua M. Altman (admitted *pro hac* vice)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:           josh.altman@kirkland.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*