IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>STAGE STORES, INC., *et al.*,[1]<br><br>    Debtors. | Chapter 11<br><br>Case No. 20-32564-DRJ<br>(Jointly Administered) |
| STEVEN BALASIANO, AS PLAN ADMINISTRATOR OF STAGE STORES, INC., *et al.*,<br><br>    Plaintiff,<br><br>    v.<br><br>CERTAIN UNDERWRITERS AT LLOYD'S LONDON – BRIT SYNDICATE 2987 AND BRIT SYNDICATE 2988, EVEREST INDEMNITY INSURANCE COMPANY, and QBE SPECIALTY INSURANCE COMPANY,<br><br>    Defendants. | Adv. Pro. No. _____ |

**ADVERSARY COMPLAINT**

Steven Balasiano (the "Plaintiff"), in his capacity as the Plan Administrator of Stage Stores, Inc. ("Stage Stores") and Specialty Retailers, Inc. (together with Stage Stores, the "Debtors"), hereby submits this complaint (this "Complaint") against (i) certain Underwriters at Lloyd's, London – Brit Syndicate 2987 and Brit Syndicate 2988 ("Brit"), (ii) Everest Indemnity Insurance Company ("Everest"), and (iii) QBE Specialty Insurance Company ("QBE" and together with Brit

---

[1] The Debtors, along with the last four digits of each Debtor's federal tax identification number, are: Stage Stores, Inc. (6900) and Specialty Retailers, Inc. (1900).

and Everest, the "Defendants"), and alleges, based on knowledge, information and belief, as follows:

## NATURE OF THE ACTION

1. This dispute arises from Defendants' wrongful denial of, and refusal to pay, a portion of an insurance claim submitted by Stage Stores for damages to its retail stores and inventory caused by Hurricane Harvey in August 2017. Stage Stores suffered significant damages from Hurricane Harvey and reported its losses to Defendants and two other insurance carriers, Aspen Specialty Insurance Company and Interstate Fire & Casualty Company ("Aspen and Interstate" and together with Defendants, the "Carriers"), under their respective all-risk excess property insurance policies.

2. When evaluating the loss, the Carriers incorrectly applied a downward adjustment to Stage Stores' claim in the amount of $2,968,149.80 to account for conditional point of sale discounts and unincurred selling costs on the damaged merchandise (the "PoS Discount Amount").

3. The reduction of Stage Stores' claim by the PoS Discount Amount was improper and contrary to the express terms of the policies. The plain language of the policies' valuation clause allows the Carriers to take only those discounts that would have certainly applied to the merchandise (for example, permanent markdowns) – not conditional point of sale discounts that may or may not have been used by hypothetical customer(s) had the loss not occurred.

4. This reading of the valuation clause is consistent with the valuation methodology used to calculate the premiums payable under the policies. When reporting its total insured values to Defendants for purposes of calculating the premiums, Stage Stores *did not* apply any point of sale discounts to its inventory. Had Stage Stores applied point of sale discounts when calculating the total insurable values it reported to Defendants, the premiums payable by Stage Stores would

have been lower. Indeed, over the years, Stage Stores has paid Defendants substantial aggregate premiums predicated on inventory values that were not reduced by any point of sale discounts.

5. In light of the foregoing, Stage Stores disputed the downward adjustment and asserted a claim for the PoS Discount Amount against the Carriers. Notably, Aspen and Interstate agreed with Stage Stores' claim for the PoS Discount Amount and promptly paid their respective 10% participation shares in the aggregate amount of $593,629.80. Defendants, however, denied Stage Stores' claim for the PoS Discount Amount and allege that it is not payable under the policies' valuation clause.

6. The express terms of the policies require Defendants to pay their respective shares of the PoS Discount Amount. The fact that (i) Aspen and Interstate agreed with the claim and promptly paid their shares under the same valuation clause, and (ii) the policy premiums did not account for any point of sale discounts on the merchandise underscore that Stage Stores' interpretation of the valuation clause is the only reasonable interpretation. Under Defendants' interpretation of the valuation clause, Defendants reap the benefits of higher inventory values when charging premiums, but are permitted to take significant point of sale discounts on the inventory when paying any losses. Defendants' interpretation of the policies is unreasonable. At a minimum, however, the policies are ambiguous and must be construed in favor of coverage and against Defendants.

7. Defendants' wrongful denial of this element of the claim and their refusal to pay their respective shares of the PoS Discount Amount constitutes a breach of the applicable insurance policies. As a result of Defendants' breach, Stage Stores, its post-confirmation bankruptcy estate, and its creditors have suffered, and will continue to suffer, damages. Recovery of the remaining

$2,374,521.00 of the PoS Discount Amount owed, but wrongfully withheld, by Defendants will yield significant value to Stage Stores' creditors.

8. Accordingly, Plaintiff brings this action seeking (i) declaratory relief that the policies do not permit Defendants to discount the value of the inventory by any point of sale discounts in paying a loss; (ii) damages resulting from Defendants' breach of the applicable insurance policies; and (iii) turnover of Defendants' respective shares of the PoS Discount Amount to the Plaintiff and/or Stage Stores' post-confirmation bankruptcy estate.

## JURISDICTION AND VENUE

9. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(2), the Plan, and the Confirmation Order.

10. This matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court may enter final judgment on the merits of this case.

11. This adversary proceeding is commenced pursuant to Bankruptcy Code §§ 105, 108, and 542, and Federal Rule of Bankruptcy Procedure 7001, and 28 U.S.C. §§ 2201 and 2202.

12. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

13. Debtor Specialty Retailers, Inc. is a Texas corporation and Debtor Stage Stores, Inc. is a Nevada corporation. Prior their bankruptcy filing, the Debtors' principal place of business was Houston, Texas. The Debtors are chapter 11 debtors subject to the jurisdiction of this Court.

14. The Plaintiff, with a principal place of business in New York, New York, is the administrator of the Debtors' post-confirmation bankruptcy estates pursuant to this Court's order dated August 14, 2020 (the "Confirmation Order") [Docket No. 705] confirming the *Joint Second Amended Chapter 11 Plan of Stage Stores, Inc. and Specialty Retailers, Inc.* (the "Plan") [Docket

4

No. 694]. Pursuant to Article IV.D of the Plan, the Plaintiff is vested with the authority to bring claims on behalf of the Debtors' post-confirmation bankruptcy estates and their creditors.

15. Brit is an England and Wales company with its principal place of business in London, United Kingdom. Through the policy issued by Brit to Stage Stores, Brit consented to service of process on it through Mendes & Mount, 750 Seventh Avenue, New York, N.Y. 10019-6829.

16. Everest is a Delaware corporation with its principal place of business in Liberty Corner, New Jersey. Through the policy issued by Everest to Stage Stores, Everest consented to service of process on it through Everest Indemnity Insurance Company, Legal Department, PO Box 830, Liberty Corner, NJ 07938-0830.

17. QBE is a North Dakota corporation, with its principal place of business in Sun Prairie, Wisconsin.

## FACTS

**A. The Debtors' Chapter 11 Bankruptcy Cases and the Appointment of the Plan Administrator**

18. Prior to their bankruptcy filings, the Debtors were a leading retailer of moderately priced, name-brand apparel, accessories, cosmetics, footwear, and home goods in small and mid-size markets across the United States.

19. On May 10, 2020, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with this Court.

20. Despite running a robust sale process for their assets during the bankruptcy, no buyer for the Debtors' assets emerged and the Debtors ultimately ceased operations and liquidated their assets.

21. On August 14, 2020, the Court entered the order confirming the Plan.

22. The effective date of the Plan occurred on October 30, 2020 [Docket No. 898] (the "Effective Date").

23. On the Effective Date, the Plaintiff was appointed the sole representative of the Debtors' post-confirmation bankruptcy estates for the purpose of, *inter alia*, monetizing any remaining assets, making distributions to the Debtors' creditors as contemplated under the Plan, and winding-down and closing the bankruptcy cases. *See* Plan Art.IV.D.

24. Pursuant to 11 U.S.C. § 108, the Plaintiff has until two years after Petition Date (*i.e.*, May 10, 2022) to assert any claims or causes of action on behalf of the Debtors' post-confirmation bankruptcy estates.

**B.  The Insurance Policies**

25. Prior to its bankruptcy filing, Stage Stores routinely purchased insurance coverage from third-party carriers in the ordinary course of its business.

26. In 2017, Stage Stores purchased excess property coverage for the period of May 1, 2017 through and including May 1, 2018 (the "Coverage Period") from each of the Defendants. True and correct copies of Stage Stores' policies with (i) Brit (the "Brit Policy"), (ii) QBE (the "QBE Policy"), and (iii) Everest (the "Everest Policy," and together with the Brit Policy and QBE Policy, the "Policies") are attached hereto as **Exhibits A-C**, respectively.

27. Stage Stores also purchased property coverage for the Coverage Period from non-defendants Aspen and Interstate pursuant to two policies (the "Aspen and Interstate Policies"). True and correct copies of the Aspen and Interstate Policies are attached hereto as **Exhibit D-E**, respectively.

28. The Policies had a primary limit of liability of $10 million, and a first layer excess limit of $15 million, on a shared basis.

29. Subject to the limitations in the Policies, Defendants insured Stage Stores against all risks of direct physical loss or damage to the insured property incurred during the Coverage Period, including any damage caused by floods, wind, and/or earth movement.

30. The property insured under the Policies included all of Stage Stores' real and personal property located within the territorial limits of the Policies that was owned, used, or intended for use by Stage Stores, or acquired by Stage Stores, and property of others in Stage Stores' care, custody, or control.

31. A summary of the Policies is included below:

| Carrier | Policy No. | Coverage Period | Annual Premium | Limits of Liability and Underlying Amount |
|---|---|---|---|---|
| Brit | PD-10921-00 | 5/1/2017 – 5/1/2018 | $36,300 | $4,950,000 (33%) part of $15,000,000; excess of $10,000,000 |
| Everest | CA3X001135171 | 5/1/2017 – 5/1/2018 | $32,400 | $4,050,000 (27%) part of $15,000,000; excess of $10,000,000 |
| QBE | CFE3968001 | 5/1/2017 – 5/1/2018 | Layer 1: $106,250 Layer 2: $76,500 Layer 3: $42,500 | Layer 1: $3,000,000 (20%) part of $15,000,000; excess of $10,000,000<br><br>Layer 2: $10,000,000 (40%) part of $25,000,000; excess of $25,000,000<br><br>Layer 3: $25,000,000 (50%) part of $50,000,000, excess of $50,000,000 |

32. Stage Stores paid all annual premiums due under the Policies, which exceeded $250,000 in the aggregate for the Coverage Period.

33. Upon information and belief, in addition to the premiums paid to Defendants for the Coverage Period, Stage Stores paid Defendants substantial aggregate premiums on account of prior coverage years under previous policies.

34. Each of the Policies provide that the annual premium payable by Stage Stores was based on $1,326,404,593 of total insurable values reported by Stage Stores to Defendants.

35. When calculating the total insurable values it reported to Defendants, Stage Stores valued its inventory at the selling price, which included a permanent markdown of 20%.

36. When calculating the total insurable values that it reported to Defendants, Stage Stores did not reduce the value of its inventory by any point of sale discounts. This was known to Defendants.

37. Had Stage Stores applied point of sale discounts to the inventory values it reported to Defendants, the annual premiums charged by Defendants under the Policies would have been lower.

38. Because the annual premiums charged by Defendants were based on the value of Stage Stores' inventory *without* application of any point of sale discounts, Stage Stores reasonably believed that Defendants would pay losses for damaged inventory without application of any point of sale discounts.

39. Further, the plain language of the Policies does not allow Defendants to apply a discount for any conditional or hypothetical point of sale discounts.

40. Each of the Policies contained the following valuation clause (the "Valuation Clause"):

> 8. Valuation
>
> At time of loss, the basis of adjustment shall be as follows:
> …
> **F. Finished Stock** and other merchandise not manufactured by the Insured but held for sale, at the Insured's selling price less discounts to which the goods ***would*** have been subject had no loss occurred, and labor (internal or 3rd party) at the cost to restock. Any obsolete inventory is a deduction to the inventory at the time of loss only, and not a percentage applied to the total inventory loss.

(emphasis added); see **Exhibits A-C**, Art.III.8.

41. The Aspen and Interstate Policies contain the same Valuation Clause.

8

42. In calculating the amount of a loss for damaged inventory, the Valuation Clause requires Defendants to pay Stage Stores the selling price of the goods less any discounts that the goods "would" have been subject to, plus the cost of labor to restock.

43. The use of the word "would" in the Valuation Clause clearly communicates that the only discounts that Defendants can take prior to paying a loss are those discounts that would have certainly been applied to, or used on, the merchandise. This is consistent with the fact that, during the underwriting process, Stage Stores' inventory valuation reflected the 20% markdown "to which the goods would have been subject had no loss occurred."

44. The Valuation Clause does not permit Defendants to discount the inventory by any conditional or hypothetical point of sale discounts that customers *could* have or *may* or *might* have used had the loss not occurred.

### C. The Hurricane Harvey Loss and Defendants' Wrongful Denial of the Point of Sale Discount Element of the Claim

45. On or about August 25, 2017, several of Stage Stores' stores and the inventory located therein were damaged by the winds and/or flooding caused by Hurricane Harvey.

46. Stage Stores reported its losses caused by Hurricane Harvey (the "Loss") to Defendants by and through their representative(s).

47. Stage Stores also reported the Loss to non-defendants Aspen and Interstate.

48. Defendants do not dispute that the damages sustained by Stage Stores in connection with Hurricane Harvey are covered under the Policies.

49. Instead, Defendants dispute the amount payable to Stage Stores under the Policies for the Loss.

50. When evaluating the claim, the Carriers determined that the net loss payable to Stage Stores was $11,979,191.39, calculated as follows:

9

| | |
|---|---|
| Inventory | $10,221,101.16 |
| Furniture, Fixtures and Equipment, and Improvements and Betterments | $4,100,616.23 |
| Capital Expenditures | $775,074.00 |
| Business Income | $158, 387.34 |
| Professional Fees | $249,166.04 |
| Sub Total | $15,504,344.77 |
| Applied Deductibles | ($756,697.38) |
| Rent Abatement | ($24,000.00) |
| Salvage Proceeds | ($1,744,456.00) |
| NFIP[2] Recovery | ($1,000,000.00) |
| **Net Loss** | **$11,979,191.39** |

51. The Carriers paid their respective shares of the $11,979,191.39 net loss amount to Stage Stores.

52. In calculating the $11,979,191.39 net loss amount, however, the Carriers applied a downward adjustment to Stage Stores' claim equal to the $2,968,149.80 PoS Discount Amount to account for point of sale discounts and certain unincurred selling costs on the damaged inventory.

53. The PoS Discount Amount was calculated by Defendants' forensic accountant as follows:

| | |
|---|---|
| Inventory Measure | $10,221,101.16 |
| Point of Sale Store Discounts | $2,864,578.78 |
| Unincurred Selling Costs | $108,710.02 |
| Additional Shrinkage Value | ($5,139.00) |
| Net | $13,189,249.96 |
| Measure to Date | ($10,221,100.16) |
| **Net** | **$2,968,149.80** |

54. Based on the plain language of the Policies, Stage Stores disputed the downward adjustment and submitted a claim for the $2,968,149.80 PoS Discount Amount to the Carriers.

---

[2] "NFIP" refers to the National Flood Insurance Program.

55. In a letter dated November 28, 2018 (the "November 2018 Sedgwick Letter"), claims adjuster Sedgwick Claim Services Management ("Sedgwick") confirmed that Aspen agreed with Stage Stores' claim for the PoS Discount Amount. A true and correct copy of the November 2018 Sedgwick Letter is attached hereto as **Exhibit F**.

56. In a letter dated December 18, 2018 (the "December 2018 Sedgwick Letter"), Sedgwick confirmed that Interstate agreed with Stage Stores' claim for the PoS Discount Amount. A true and correct copy of the December 2018 Sedgwick Letter is attached hereto as **Exhibit G**.

57. In addition to their respective shares of the $11,979,191.39 net loss amount, Aspen and Interstate each promptly paid Stage Stores $296,814.90 (for a total of $593,629.80), which amount was equal to Aspen and Interstate's respective 10% participation shares of the PoS Discount Amount payable under the Aspen and Interstate Policies.

58. Defendants, however, did not pay their respective participation shares of the PoS Discount Amount as follows:

| **Carrier** | **% Share Under Policy** | **$ Share Under Policy** |
|---|---|---|
| Brit | 33% | $979,490.00 |
| Everest | 27% | $801,401.00 |
| QBE | 20% | $593,630.00 |
| **Total** | 80% | $2,374,521.00 |

59. On or about June 6, 2019, Defendants denied Stage Stores' claim for the PoS Discount Amount.

60. In the denial letter dated June 6, 2019 (the "June 2019 Sedgwick Letter"), Sedgwick informed Stage Stores of Defendants' position that the PoS Discount Amount is not payable to Stage Stores under the Valuation Clause. A true and correct copy of the June 2019 Sedgwick Letter is attached hereto as **Exhibit H**.

11

61. Defendants' interpretation of the Valuation Clause is contrary to the plain language in the Policies which provides that the discounts Defendants can take prior to paying a loss are only those that the customer would actually use.

62. Defendants' interpretation of the Valuation Clause in the context of the Policies at large is unreasonable because it allows Defendants to pay out on losses based on inventory values calculated at a lower level, while allowing Defendants to charge premiums based on inventory values calculated at a higher level.

63. Defendants' denial of Stage Stores' claim for the PoS Discount Amount is contrary to the terms and conditions of the Polices and applicable law, which gives effect to plain language, construes ambiguity in favor of coverage, and narrowly construes exclusions, the applicability of which Defendants have the burden of proving.

64. Defendants' denial of Stage Stores' claim for the Pos Discount Amount breached their obligation and responsibility to provide coverage to Stage Stores for the Loss as required under the Policies.

65. As a result of Defendants' wrongful denial of Stage Stores' claim for the PoS Discount Amount and breach of the Policies, Stage Stores, its post-confirmation bankruptcy estate, and its creditors have suffered, and will continue to suffer, damages.

## CAUSES OF ACTION

### Count I
(Declaratory Judgment)

66. Plaintiff adopts and incorporates the preceding paragraph nos. 18 through 65 of the Complaint as if fully set forth herein.

67. Pursuant to 28 U.S.C. §§ 2201 and 2202, Plaintiff requests this Court to determine Stage Stores' rights under the Policies issued by Defendants.

68. Plaintiff seeks a declaration by this Court that:

   a. The Policies do not permit Defendants to discount the value of the inventory by point of sale discounts in paying a loss when the premiums charged were based on an inventory valuation that excluded any point of sale discount amount; and

   b. The PoS Discount Amount, to the extent not yet paid, is payable to Stage Stores under the Policies.

69. In the alternative, Plaintiff asserts that the operative wording of the Policies as set forth hereinabove are ambiguous and must be interpreted in favor of coverage and against Defendants.

## Count II
(Breach of Contract)

70. Plaintiff adopts and incorporates the preceding paragraph nos. 18 through 65 of the Complaint as fully set forth herein.

71. Stage Stores met all, or substantially all, of its contractual obligations under the Policies, including payment of all premiums due thereunder. The premiums charged were based on an inventory valuation that specifically excluded any point of sale discounts.

72. Defendants wrongfully denied Stage Stores' claim for the PoS Discount Amount and have refused to pay such amount to Stage Stores. Defendants' actions constitute a breach of the Policies, and Stage Stores, its post-confirmation bankruptcy estate, and its creditors have suffered damages proximately caused as a direct result of Defendants' breach.

73. As a result of Defendants' breach of the Policies, Stage Stores is entitled to recover:

   a. As to Defendant Brit, $979,490.00, which amount is equal to Brit's 33% participation share of the PoS Discount Amount;

   b. As to Defendant Everest, $801,401.00, which amount is equal to Everest's 27% participation share of the PoS Discount Amount;

   c. As to Defendant QBE, $593,630.00, which amount is equal to QBE's 20% participation share of the PoS Discount Amount; and

   d. As to all Defendants, Plaintiff's reasonable attorneys' fees and costs incurred in this matter.

## Count III
(Turnover)

74. Plaintiff adopts and incorporates the preceding paragraph nos. 18 through 65 of the Complaint as if fully set forth herein.

75. Section 542(a) of the Bankruptcy Code provides in pertinent part "an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under 363 of this title, or that the debtor may exempt under 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property . . . ." 11 U.S.C. § 542(a).

76. The PoS Discount Amount is property of Stage Stores' post-confirmation bankruptcy estate pursuant to section 541 of the Bankruptcy Code.

77. Accordingly, pursuant to section 542 of the Bankruptcy Code, Defendants must turn over to the Plaintiff and/or Stage Stores' post-confirmation bankruptcy estate their respective shares of the PoS Discount Amount, plus any and all related fees, costs, and/or damages awarded by this Court.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests this Court to enter judgment granting the following relief:

  i. On count one, a determination and declaration that (i) the Policies do not permit Defendants to discount the value of the inventory by point of sale discounts in paying a loss when the premiums charged were based on an inventory valuation that excluded any point of sale discount amount, (ii) the PoS Discount Amount is payable under the Policies, and (iii) a discretionary award of reasonable attorney's fees and costs incurred in securing this declaration;

  ii. On count two, an award for damages in the following amounts on account of Defendants' breach of contract:

      a. As to Defendant Brit, an amount equal to $979,490.00;

      b. As to Defendant Everest, an amount equal to $801,401.00; and

      c. As to Defendant QBE, and amount equal to $593,630.00;

iii. On count three, a judgement requiring Defendants to turn over their respective shares of the PoS Discount Amount to the Plaintiff and/or Stage Stores' post-confirmation bankruptcy estate pursuant to 11 U.S.C. § 542;

iv. An award for the costs and disbursements incurred by Plaintiff in this action;

v. An award for Plaintiff's reasonable attorneys' fees to the extent permitted by law; and

vi. Such other and further relief as the Court deems just and proper.

Dated: May 9, 2022

                            */s/ James W. Walker*
                            James W. Walker (TX Bar No. 20709600)
                            **COLE SCHOTZ P.C.**
                            901 Main Street, Suite 4120
                            Dallas, TX 75202
                            Telephone: (469) 557-9390
                            Facsimile: (469) 533-1587
                            Email: jwalker@coleschotz.com

                            *- and -*

                            Seth Van Aalten, Esq.
                            Sarah A. Carnes, Esq.
                            **COLE SCHOTZ P.C.**
                            1325 Avenue of the Americas, 19th Floor
                            New York, NY 10019
                            Telephone: (212) 752-8000
                            Facsimile: (212) 752-8393
                            Email: svanaalten@coleschotz.com
                                        scarnes@coleschotz.com